1  Richard D. McCune, Esq., State Bar No. 132124
   rdm@mccunewright.com
2  David C. Wright, Esq., State Bar No. 177468
   dcw@mccunewright.com
3  McCune Wright Arevalo, LLP
   3281 E. Guasti Road, Suite 100
4  Ontario, California 91761
   Telephone: (909) 557-1250
5  Facsimile: (909) 557-1275

6  BENEDICT O. KWON, State Bar No. 219052
   bkwon@sycr.com
7  STEPHEN L. RAM, State Bar No. 240769
   sram@sycr.com
8  STRADLING YOCCA CARLSON & RAUTH, P.C.
   660 Newport Center Drive, Suite 1600
9  Newport Beach, CA 92660-6422
   Telephone: (949) 725-4000
10 Facsimile: (949) 725-4100

11 Attorneys for Plaintiff JI CHANG SON, individually
   and on behalf of the Putative Class, and
12 Plaintiff K.M.S., a minor by and through his
   *Guardian ad Litem* YUN SOO OH

13

14

15                   UNITED STATES DISTRICT COURT

16           FOR THE CENTRAL DISTRICT OF CALIFORNIA

17

18 JI CHANG SON, individually and on      ) Case No.: 8:16-cv-2282
19 behalf of all others similarly situated, and )
   K.M.S., a minor by and through his     ) Judge Assigned:
20 *Guardian ad Litem* YUN SOO OH,        )
                                          ) **CLASS ACTION COMPLAINT**
21            Plaintiffs,                  )
                                          )
22        v.                               )  1. Violation of the California Consumer
                                          )     Legal Remedies Act, Cal. Civ. Code
23 TESLA MOTORS, INC.,                    )     § 1750, *et seq.*
                                          )  2. Violation of California Unfair
24            Defendants.                  )     Competition Law, Cal. Bus. & Prof.
                                          )     Code § 17200, *et seq.*
25                                         )  3. Violation of California False
                                          )     Advertising Law, Cal. Bus. & Prof.
26                                         )     Code § 17500, *et seq.*
                                          )  4. Breach of Express Warranty, Cal.
27                                         )     Com. Code § 2313
                                          )
28                                         )

-1-

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

1                                                        )

5. Breach of the Implied Warranty of Merchantability, Cal. Com. Code § 2314

6. Breach of Written Warranty Under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

7. Breach of Contract/Common Law Warranty

8. Violation of the Song-Beverly Consumer Warranty Act for Breach of Express Warranties, Cal. Civ. Code § 1793.2(d) & 1791.2

9. Violation of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability, Cal. Civ. Code § 1792 & 1791.1

10. Strict Product Liability

11. Strict Product Liability (Failure to Warn)

12. Negligence

**DEMAND FOR JURY TRIAL**

CLASS ACTION COMPLAINT
Case No.:  8:16-cv-2282

**TABLE OF CONTENTS**

*Page*

I    INTRODUCTION ...................................................................................1

    A.    Tesla Vehicles Are Computers on Wheels.......................................1

    B.    The Sudden Unintended Acceleration Problems with the Model X.............3

    C.    Cause of the SUA Events in the Model X........................................9

II    THE PARTIES ....................................................................................11

III   JURISDICTION AND VENUE .............................................................11

IV   FACTUAL BACKGROUND.................................................................12

    A.    Tesla's Development of the Model X ............................................12

    B.    Tesla's Markets the Safety of the Model X ...................................13

    C.    Tesla Is on Notice of SUA Complaints Shortly After the Model X's
          Introduction ...............................................................................15

          1.    Reports of SUA in the Model X Are 1,600% Higher Than Historical
               Rates of SUA ...................................................................21

    D.    Plaintiff Ji Chang Son's and Plaintiff Kyung Min Son's SUA Event .........22

    E.    Defects in the Model X ...............................................................23

    F.    Choice of Law Allegations...........................................................24

V    CLASS ALLEGATIONS ......................................................................25

VI   CAUSES OF ACTION.........................................................................28

    FIRST CAUSE OF ACTION:  VIOLATIONS OF CALIFORNIA'S
          CONSUMER LEGAL REMEDIES ACT ........................................28

    SECOND CAUSE OF ACTION:  VIOLATIONS OF THE CALIFORNIA
          UNFAIR COMPETITION LAW.....................................................31

    THIRD CAUSE OF ACTION:  VIOLATION OF CALIFORNIA FALSE
          ADVERTISING LAW......................................................................33

    FOURTH CAUSE OF ACTION:  BREACH OF EXPRESS WARRANTY.........35

    FIFTH CAUSE OF ACTION:  BREACH OF IMPLIED WARRANTY..............36

i

## TABLE OF CONTENTS (cont.)

*Page*

SIXTH CAUSE OF ACTION:  BREACH OF WRITTEN WARRANTY
UNDER THE MAGNUSON-MOSS WARRANTY ACT...........................38

SEVENTH CAUSE OF ACTION:  BREACH OF CONTRACT/COMMON
LAW WARRANTY......................................................................40

EIGHTH CAUSE OF ACTION:  Violation of the Song-Beverly Consumer
Warranty Act for Breach of Express Warranties ...........................................41

NINTH CAUSE OF ACTION:  VIOLATION OF THE SONG-BEVERLY
ACT – BREACH OF IMPLIED WARRANTY ...........................................42

TENTH CAUSE OF ACTION:  STRICT PRODUCT LIABILITY .....................44

ELEVENTH CAUSE OF ACTION:  NEGLIGENCE ...........................................45

TWELFTH CAUSE OF ACTION:  FAILURE TO WARN ...............................46

PRAYER FOR RELIEF ........................................................................47

JURY DEMAND ........................................................................48

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

Plaintiff Ji Chang Son, individually and on behalf of all others similarly situated, and Plaintiff K.M.S., a minor by and through his *Guardian ad Litem* Yun Soo Oh, herein allege as follows:

# I

# INTRODUCTION

## A.  Tesla Vehicles Are Computers on Wheels

1.     In 2008, Tesla Motors, Inc., ("Tesla") first entered the vehicle market with the production of the Tesla Roadster, an all-electric sports car.  In 2012, it began selling the Model S, an all-electric luxury sedan.  Following a series of delays, Tesla began selling the Model X,[1] an all-electric luxury crossover sports utility vehicle ("SUV") in the fourth quarter of 2015.

2.     Tesla is led by technology pioneer and visionary entrepreneur Elon Musk, who has parlayed his successes in Zip2 and PayPal, to transform the automobile industry with Tesla, and the private space industry with SpaceX.

3.     Elon Musk's strategy with Tesla was to enter the automotive market with a highly technical high-end and expensive vehicle that would appeal to environmentally conscious consumers who value cutting-edge technology, luxury, high-performance, and safety.

4.     The Tesla vehicles are like no other vehicles that have ever been mass produced.  As reported by the Los Angeles Times on March 19, 2015, Elon Musk said in connection with releasing software updates on the Model S, "We really designed the Model S to be a very sophisticated computer on wheels."  That is just as true with the Model X as the Model S.  Elon Musk went to on to say: "Tesla is a software company as much as it is a hardware company.  A huge part of what Tesla is, is a Silicon Valley software company."

_____

[1] Following the delivery of the 6 Founders' Series vehicles at the launching ceremony for the Model X, Tesla only sold approximately 206 Model X vehicles in the fourth quarter of 2015.  Sales really began in the first quarter of 2016.

1

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

5.      Part of the excitement that Elon Musk and Tesla have created in the automotive market segment is being a market and technology leader in the self-driving technology.  This technology allows the vehicle to operate on its own, and to make drivers' decisions for them.  Engineers are responsible to anticipate all of the different forseeable scenarios vehicles are expected to encounter, and to program the computer systems in the vehicle to anticipate and make decisions to safely operate the vehicle.  Part of the excitement around this technology is the potential for preventing driver errors in judgment under times of high stress.

6.      As reported by Electrek in December 2015, Elon Musk announced that the technology is so advanced that the Tesla has the ability to not only track the vehicle in front of it, but also the two vehicles in front of it.  It has the ability to see through rain, fog, snow, and dust to see and react to objects.  Elon Musk went on to proclaim that within two years Tesla would have a fully autonomous vehicle that could operate under in any condition and on any road.  In October 2016, Elon Musk stated that from now on, all new Tesla cars will have full self-driving capabilities.

7.      The highly-touted ability of the Tesla vehicle computers to understand their environment is futuristic.  The vehicle is programmed to remember where home is, to remember the preferred routes of going home, to open the garage door at home, and to raise the suspension when the driver gets home to better handle the slope of the driveway.  Astoundingly, the driver can exit the vehicle and the Tesla will open the garage door, enter the garage, park itself, and shut down without a driver operating the vehicle.  It also can be summoned by a driver with a cell phone – the vehicle, without a driver, will open the garage door, exit the garage, and drive itself to the driver who summoned the car.

8.      As is true for all computers, however, Tesla vehicles are only as good as the hardware, engineering, and programming of their onboard computers.  As even casual computer users know, even the most sophisticated and successful computer companies in history, such as Microsoft and Apple, regularly release computers and software with bugs, glitches, and unanticipated problems that cause their computers to unexpectedly

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

crash, malfunction, or work differently than intended.  These bugs have serious consequences for users of traditional computer products.  But for a computer that controls a 5,000 pound machine that can explosively accelerate from a standstill to 60 miles per hour in under 3 seconds, the consequences of a computer glitch can be catastrophic.  For that reason, there has to be zero-tolerance for any glitch, bug, or malfunction - a goal no computer company has ever been able to achieve.

9.     Tesla is no exception.  In a high-profile fatality accident in Florida where the vehicle's computer system failed to recognize the presence of a fixed object, Tesla's response, as reported by the New York Times, was to issue a statement stating that the use of this technology "requires explicit acknowledgement that the system is new technology."

10.    Part of the solution is that Tesla computers learn in order to carry out the driver's instructions, and to protect the driver while doing so.  As stated by Elon Musk, as reported in Wired on September 11, 2016, "We're adding 1.5 million miles per day on Autopilot," and all vehicles learn at once.  So just as with traditional computers, patches and software updates can be downloaded remotely to remedy glitches, bugs, and problems that were not anticipated by the programming engineers.

**B.     The Sudden Unintended Acceleration Problems with the Model X**

11.    The launch of the Model X was one of the most anticipated vehicle launch of all times.  A futuristic looking electric luxury high-performance crossover SUV, it had originally been slated for release in 2014.

//

//

//

//

//

//

//

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282



12.     But it was not until the very end of 2015, that it was actually released.  The delay was as a result of technological and mechanical challenges.   Following the release, problems arose almost immediately.  A lawsuit was filed, and later settled, that highlighted the electronic nature of the problems, including the electronically activated doors that opened and closed unpredictably, the electronic self-parking feature that failed to work, and other reported electronic problems with the vehicle, such as the electronically activated windows failing to open or close.  As reported by ABC News on April 5, 2016, Tesla's explanation for the electronic problems experienced by the Tesla X was "hubris in adding too much new technology to the Model X in version 1."

13.     Since the introduction of the Model X, Defendant Tesla Motors, Inc., has sold approximately 16,000 Model X vehicles throughout the United States.[2]  Model X vehicles operate with an electronic acceleration control system by which complex

_____

[2] Sales were reported at 2,400 in the first quarter of 2016, 4,638 in the second quarter of 2016, and 8,774 in the third quarter of 2016.

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

computer and sensor systems communicate an accelerator pedal's position to the vehicle's onboard computers, telling the vehicle how fast it should go.

14.     Able to accelerate from zero to sixty miles per hour in 2.9 to 3.8 seconds (depending on battery pack) and equipped with advanced safety features including Forward Collision Warning and Advanced Early Braking, Tesla proclaims that the Model X is "the safest, fastest and most capable sport utility vehicle in history."

15.     In press releases, sales literature, brochures, online statements, and other consumer-oriented documents, Tesla has consistently promoted "safety" as top priority in all its vehicles, generally, and in the Model X, specifically.

16.     What has quickly becoming evident, however, is that the Model X is susceptible to sudden unintended acceleration ("SUA"), in which the Model X will accelerate at full power even though the driver reports that they did not command the acceleration by pressing on the accelerator pedal, either at all or not to the degree that would call for the application of full power.

17.     In the first full year of production since the Model X was first introduced, Tesla has received, or is otherwise aware of, ten nearly identical instances in which drivers of the Model X experienced full power acceleration while either in the act of parking the Model X or while driving the Model X at slow speed, eight of which resulted in a crash of the vehicle, precisely like the Plaintiffs herein experienced as shown below, crashing through the wall that separated his garage from his living room.

//
//
//
//
//
//
//
//

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

18.     Eight of these are known to have been submitted to the National Highway Traffic Safety Administration's ("NHTSA") publicly available complaints database that, based on information and belief, is monitored by Tesla.  As illustrated by one of those instances, this picture shows a pattern similar to Plaintiffs accident.



19.     In addition, there are at least two additional SUA events, including Plaintiffs' and another experienced by a driver of a Model X that did not result in an accident.  That other SUA event, which mirrored the SUA incident experienced by Plaintiff – that did not result in a collision – was reported to Tesla, but Tesla took no action.  Based on that fact, there are likely other Model X SUA events that Tesla is aware of but not recorded in the NHTSA database.

20.     Sudden Unintended Acceleration ("SUA") is a well-known safety issue. Though relatively rare, the danger of a vehicle accelerating uncontrollably is obvious.

According to a study by NASA of unintended acceleration reports to the National Highway Traffic Administration from 2000 to 2010, there rate of SUA incidents was 1 per 100,000 vehicles per year.

21.     In 2010, the issue became very public when Toyota Motor Company was sued by hundreds of injured parties for claimed SUA events in their vehicles.  Toyota Motor Company paid hundreds of millions of dollars in settlement to victims and owners for the claim that there was an electrical defect in the Toyota vehicles that caused SUA events.  It also paid the United States government $1.2 billion for concealing this safety defect.  According to a December 2009 Consumer Reports[3] analysis of SUA event ratio for Toyota's 2008 model year vehicles, their reported events were 2 per 100,000 vehicles (1 per 50,000 vehicles), or double the average reported by NHTSA.

22.     By comparison, within the first year of Model X vehicles being on the road, and with only 16,000 Model X vehicles in use (the vast majority of which have been on the road significantly less than one year), there have been ten (10) reported incidents of sudden unintended acceleration -- a staggeringly high rate of SUA incidents of 62 per 100,000 vehicles per year.



---

[3] http://www.consumerreports.org/cro/news/2009/12/analysis-shows-over-40-percent-of-sudden-acceleration-complaints-involve-toyotas/index.htm (last viewed on December 29, 2016).

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

**C.** **Cause of the SUA Events in the Model X**

23.     There are different causes of SUA events.  They can be caused by a problem with the vehicle, by a driver error in pedal misapplication, or a combination of a problem with the vehicle causing pedal misapplication.  For the Model X, seven of the NHTSA reported SUA events reported sudden uncontrolled acceleration without accelerator pedal application, six of which resulted in colliding with fixed objects.  Significantly, all nine of the known Model X SUA incidents are eerily similar to the circumstances of the SUA event in which Plaintiffs were injured.

24.     Irrespective of whether the SUA events in the Model X are caused by mechanical issues with the accelerator pedal, an unknown failure in the electronic motor control system, a failure in other aspects of the electrical, mechanical, or computer systems, or some instances of pedal misapplication, the Model X is defective and unsafe.

25.     Despite its knowledge of the problem, Tesla has failed to properly disclose, explain, fix, or program safeguards to correct the underlying problem of unintended acceleration.  This leaves over sixteen thousand Model X owners with vehicles that could potentially accelerate out of control.

26.     Tesla's lack of response to this phenomenon is even more confounding when the vehicle is already equipped with the hardware necessary for the vehicle's computer to be able to intercede to prevent unintended acceleration into fixed objects such as walls, fences, and buildings.

27.     As set forth in more detail below, Tesla equips its Model X vehicles with Automatic Emergency Braking whereby the vehicle computer will use the forward looking camera and the radar sensor to determine the distance from objects in front of the vehicle.  When a frontal collision is considered unavoidable, Automatic Emergency Braking is designed to automatically apply the brakes to reduce the severity of the impact.  But Tesla has programmed the system to deactivate when it receives instructions from the accelerator pedal to drive full speed into a fixed object.  Tesla confirmed that when it stated that Automatic Emergency Braking will operates only when driving

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

between 5 mph (8 km/h) and 85 mph (140 km/h) but that the vehicle will not automatically apply the brakes, or will stop applying the brakes, "in situations where you are taking action to avoid a potential collision.  For example:

- You turn the steering wheel sharply.
- You press the accelerator pedal.
- You press and release the brake pedal.
- A vehicle, motorcycle, bicycle, or pedestrian, is no longer detected ahead."

28.    Apparently, this includes situations where the computer believes, rightly or wrongly, that the driver is commanding full power acceleration directly into fixed objects immediately in front of the vehicle.  Tesla has designed and manufactured a vehicle that is capable of accelerating from zero to 60 miles per hour in 2.9 seconds – acceleration that was previously achievable only in a select number of exotic sports cars – and equipped the vehicle with the ability to sense objects in its path and brake automatically to prevent or minimize frontal impacts, but Tesla has programmed these systems to allow the Model X to engage full power acceleration into fixed objects, such as walls, fences, and beams, that are in the direct path and immediate proximity of the vehicle.

29.    Despite repeated instances of Model X drivers reporting uncommanded full power acceleration while parking, Tesla has failed to develop and implement computer algorithms that would eliminate the danger of full power acceleration into fixed objects. This failure to provide a programming fix is especially confounding for a vehicle that knows when it is located at the driver's home and is being parked in the garage, yet carries out an instruction, regardless of whether through an error by the vehicle control systems or by driver pedal misapplication, to accelerate at full power into the garage wall.

30.    Further, not only has Tesla failed to fix the problems, it has chosen instead to follow in the footsteps of other automobile manufacturers and simply blame the driver. As Toyota Motor Company learned not long ago, blaming the driver for inexplicable and preventable instances of full power acceleration is no longer acceptable.  That is

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

especially true for a disruption company that seeks to use technology to make smart and safe vehicles.

## II

## THE PARTIES

31.     Plaintiff Ji Chang Son and his son, Plaintiff K.M.S., are citizens of the Republic of South Korea, who at all times relevant herein were residing in Orange County, California.  On or about August 5, 2016, Plaintiff Ji Chang Son and his wife, Yun Soo Oh, purchased a 2016 Model X from the Tesla Gallery located in Costa Mesa, California.  Plaintiff Ji Chang Son was the driver of the Model X when the vehicle experienced uncommanded full power acceleration while he was pulling into the garage of his home in Orange County, California, on September 10, 2016, causing the vehicle to crash through the interior wall of the garage of his home and come to rest in Plaintiff's living room, injuring Plaintiff Ji Chang Son and his son, Plaintiff K.M.S., who was a front seat passenger in the vehicle.

32.     Defendant Tesla Motors, Inc., is a Delaware corporation with its headquarters located at 3500 Deer Creek Road, Palo Alto, California 94304.

## III

## JURISDICTION AND VENUE

33.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative class members defined below; and there are numerous members of the proposed class who are citizens of a state different from Tesla.

34.     This Court has personal jurisdiction over Defendant Tesla because its corporate headquarters and primary manufacturing facility are located in California, it conducts substantial business in the District, and because a substantial part of the acts and omissions complained of occurred in the District.

11

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

35.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events, acts and omissions giving rise to these claims occurred in the Central District of California.

## IV

## FACTUAL BACKGROUND

**A.     Tesla's Development of the Model X**

36.     Defendant Tesla Motors, Inc. ("Tesla") designs, develops, manufactures, and sells electric vehicles and electric vehicle powertrain components. The company also provides services for the development and sale of electric powertrain systems and components, to other automotive manufacturers.  It markets and sells its vehicles through Tesla stores, as well as via the Internet.  As of October 2016, the company operated a network of 99 Tesla Stores and Galleries in the United States, of which 28 are located within California.  Tesla was founded in July 2003 and is headquartered in Palo Alto, California. Tesla claims to use proprietary technology and state-of-the-art manufacturing processes to create one of the safest vehicles on the road today.

37.     On February 9, 2012, Tesla announced the development of a full-sized, all electric, luxury crossover SUV called the Model X.  At that time, Tesla announced that "Tesla Model X Performance version will accelerate from 0 to 60 miles per hour in 4.4 seconds [making the] Model X faster than many sports cars, including the Porsche 911 Carrera."

38.     By the time Tesla began deliveries of the Model X to North American consumers, it had increased the power and performance of the Model X beyond Tesla's own projections.  At the time of its introduction, Tesla offered the Model X in two performance packages: 1) P90D that can accelerate from 0 to 60 M.P.H. in 3.8 seconds; and 2) the Ludicrous P90D that can accelerate from 0 to 60 M.P.H. in 3.2 seconds.  The Model X has a top speed of 155 m.p.h.

39.     Tesla now offers the Model with a 100 kWh battery that can accelerate the Model X "from zero to 60 miles per hour in as quick as 2.9 seconds."

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

**B.      Tesla's Markets the Safety of the Model X**

40.      Equal with its staggering performance, Tesla marketed the Model X as being "designed to be the safest car on the road," with every Model X coming "standard with automatic emergency braking and side collision avoidance to prevent accidents from happening in the first place."

41.      Every Model X is equipped with "a forward-looking camera, radar, and 360 degree sonar sensors to enable advanced autopilot features."



//
//
//
//
//

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282



Note: The exact detection zone may vary depending on environmental conditions.

42.     Tesla also promoted its "over-the-air software updates" allowing Tesla to "regularly improve the sophistication of these features, enabling increasingly capable safety and convenience features."

43.     Tesla equips the Model X with a pair of safety features called "Forward Collision Warning" and "Automatic Emergency Braking."  As described in the Model X Owner's Manual:

> [T]he following collision avoidance features are designed to increase the safety of you and your passengers:
>
> •     Forward Collision Warning provides visual and audible warnings in situations where there is a high risk of a frontal collision . . . .
>
> •     Automatic Emergency Braking automatically applies braking to reduce the impact of a frontal collision . . . .
>
> The forward looking camera and the radar sensor are designed to determine the distance from any object (vehicle, motorcycle, bicycle, or pedestrian) traveling in front of Model X.  When a frontal collision is considered unavoidable, Automatic Emergency Braking is designed to automatically apply the brakes to reduce the severity of the impact.

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

> When Automatic Emergency Braking applies the brakes, the instrument panel displays a visual warning and you'll hear a chime.  You may also notice abrupt downward movement of the brake pedal.  The brake lights turn on to alert other road users that you are slowing down.
>
> . . .
>
> Automatic Emergency Braking operates only when driving between 5 mph (8 km/h) and 85 mph (140 km/h).
>
> Automatic Emergency Braking does not apply the brakes, or stops applying the brakes, in situations where you are taking action to avoid a potential collision.  For example:
>
> - You turn the steering wheel sharply.
> - You press the accelerator pedal.
> - You press and release the brake pedal.
> - A vehicle, motorcycle, bicycle, or pedestrian, is no longer detected ahead.

44.     With these and other features, Tesla touts the Model X as being "the safest, fastest and most capable sport utility vehicle in history."

## C.     Tesla Is on Notice of SUA Complaints Shortly After the Model X's Introduction

45.     NHTSA maintains an online complaint database where consumers can file complaints regarding issues they are experiencing with their vehicle.  Complaints can be entered into the system via the internet, through a toll-free Safety Auto Hotline, by submitting a written vehicle owner questionnaire ("VOQ") or by mailing a letter.  The NHTSA consumer complaints database is considered one of NHTSA's most important sources of field data and is monitored by all major automobile manufacturers, including Tesla, for the purpose of ascertaining field data about the performance of their vehicles.

46.     On June 7, 2016, less than six months into the full scale distribution of the Model X, the first complaint of sudden unintended acceleration was registered in NHTSA's complaint database.  This would be the first of seven separate complaints that would be entered in the NHTSA complaint database in just the next four months.

47.     The following information was entered into the NHTSA complaint database, and therefore, was available to Tesla, in connection with these seven complaints:

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

**[Complaint #1]**

Date Complaint Filed: 06/07/2016
Date of Incident: 06/04/2016
Component(s): AIR BAGS , STRUCTURE , VEHICLE SPEED CONTROL
NHTSA ID Number: 10873117
Consumer Location: ANAHEIM, CA
All Products Associated with this Complaint
Details

0 Available Documents
- Crash:Yes
- Fire:No
- Number of Injuries:  1
- Number of Deaths:  0

Manufacturer: Tesla Motors, Inc.
Vehicle Identification No. (VIN): 5YJXCAE46GF...

SUMMARY:
OUR 5 DAY OLD TESLA X WHILE ENTERING A PARKING STALL
SUDDENLY AND UNEXPECTEDLY ACCELERATED AT HIGH SPEED ON
ITS OWN CLIMBING OVER GRASS AND CRASHED INTO A BUILDING.
THE AIRBAGS DEPLOYED AND MY WIFE'S ARMS HAVE BURN MARKS
AS A CONSEQUENCE.

**[Complaint #2]**

Date Complaint Filed: 08/04/2016
Date of Incident: 07/28/2016
Component(s): AIR BAGS , VEHICLE SPEED CONTROL
NHTSA ID Number: 10893066
Consumer Location: DANBURY, CT

All Products Associated with this Complaint expand
Details close
help 0 Available Documents
- Crash:Yes
- Fire:No
- Number of Injuries:0
- Number of Deaths:0

Manufacturer: Tesla Motors, Inc.
Vehicle Identification No. (VIN): 5YJXCAE29GF...

SUMMARY:
TL* THE CONTACT OWNS A 2016 TESLA MODEL X. WHILE
ATTEMPTING TO PARK, THE VEHICLE INDEPENDENTLY
ACCELERATED WITHOUT WARNING AND CRASHED INTO A WOOD
FENCE. THE AIR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES.
A POLICE REPORT WAS FILED. THE VEHICLE WAS NOT DIAGNOSED
OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE.
THE APPROXIMATE FAILURE MILEAGE WAS 49.

16

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

1

**[Complaint #3]**

2

Date Complaint Filed: 08/24/2016
Date of Incident: 07/08/2016

3

Component(s): FUEL/PROPULSION SYSTEM , STRUCTURE , VEHICLE SPEED
CONTROL

4

NHTSA ID Number: 10898260
Consumer Location: ORMOND BEACH, FL

5

All Products Associated with this Complaint expand

6

Details close
help 0 Available Documents

7

• Crash:Yes
• Fire:No

8

• Number of Injuries:0
• Number of Deaths:0

9

Manufacturer: Tesla Motors, Inc.
Vehicle Identification No. (VIN): 5YJXCBE21GF...

10

SUMMARY:

11

ON JULY 8TH 2016, AT 9:37 A.M., WHILE SLOWLY PULLING INTO A
PARKING SPACE AT CREEKWOOD DOG PARK IN BRADENTON

12

FLORIDA, MY TESLA MODEL X SUDDENLY ACCELERATED UNDER ITS
OWN VOLITION, DROVE OVER A PARKING STOP, OVER A FIVE INCH

13

CURB, AND THEN HIT AND KNOCKED OVER A CONCRETE LIGHT
POLE. ALL THIS HAPPENED IN A DISTANCE OF LESS THAN TWENTY

14

FEET. TESLA WAS NOTIFIED IMMEDIATELY AND THE CAR WAS
TAKEN TO DIMMITT COLLISION CENTER IN CLEARWATER, FLORIDA.

15

THE SERVICE MANAGER AT TESLA OF TAMPA, TOLD ME VERBALLY
THE LOG FROM THE EDR SAYS THE CAR WAS TRAVELING AT 6 MPH,

16

THEN THE ACCELERATOR WAS ADVANCED TO OVER 50% AND THEN
TO 87%. THE CAR ACCELERATED TO 20 MPH AND ABRUPTLY

17

STOPPED. I DENIED THIS SCENARIO AND ASKED FOR A SUPERVISOR.
TESLA'S SOUTHEAST REGIONAL MANAGER MET US AT THE BODY

18

SHOP. HE HANDED ME A LETTER THAT HAD DIFFERENT EDR
RESULTS-VEHICLE SPEED WAS 7 MPH, PEDAL POSITION WENT FROM

19

3.2% TO 15.6% TO 100% AND CAR WENT TO 14 MPH. THE FIRST REPAIR
ESTIMATE SHOWED ACTUAL MILEAGE AS 205 AND A SUBSEQUENT

20

REPAIR ESTIMATE SHOWS THE ACTUAL MILEAGE AS 1425. THESE
FIGURES ARE INACCURATE SINCE I HAD LOOKED AT THE ODOMETER

21

SEVERAL DAYS BEFORE THE ACCIDENT AND THE MILEAGE WAS
OVER 1800. I INFORMED TESLA THAT I AM POSITIVE BEYOND A

22

SHADOW OF DOUBT THAT THE CAR'S ELECTRONIC THROTTLE
COMPUTER WAS RESPONSIBLE FOR THE ACCIDENT WHICH THEY

23

DENY. THIS APPEARS TO BE THE INDUSTRY STANDARD SINCE
EXPERTS WILL TESTIFY THAT ALTHOUGH A CAR IS RESPONSIBLE

24

FOR UNINTENDED ACCELERATION THERE WILL BE NO TRACEABLE
EVIDENCE OF THAT RESPONSIBILITY AND THEREFORE THE

25

MANUFACTURER HAS PLAUSIBLE DENIABILITY. TESLAS ARE
UNDERGOING UNINTENDED ACCELERATION AT A RATE MORE

26

FREQUENT THAN 1/5,000 VEHICLES MANUFACTURED. THIS IS WAY
MORE FREQUENT THAN THE INDUSTRY STANDARD. GENERAL

27

MOTORS HAS AN EXTREMELY GOOD RATE OF 1/123,000 VEHICLES.

28

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

**[Complaint #4]**

Date Complaint Filed: 09/19/2016
Date of Incident: 05/23/2016
Component(s): UNKNOWN OR OTHER , VEHICLE SPEED CONTROL
NHTSA ID Number: 10908051
Consumer Location: BOSTON, MA

All Products Associated with this Complaint expand
Details close
help 0 Available Documents
  • Crash:Yes
  • Fire:No
  • Number of Injuries:0
  • Number of Deaths:0
Manufacturer: Tesla Motors, Inc.
Vehicle Identification No. (VIN): 5YJXCAE24GF...

SUMMARY:
WHILE TURNING LEFT TO ENTER A VERY NARROW GARAGE
ENTRANCE I NEEDED TO DETERMINE WHETHER OR NOT I HAD TO
STRAIGHTEN OUT BEFORE PULLING IN OR IF MY LEFT TURN WAS
TIGHT ENOUGH TO PULL IN WITHOUT REVERSING TO STRAIGHTEN
OUT. I SAW THAT I WAS IN THE POSITION THAT I COULD CONTINUE
INTO THE GARAGE AND LIGHTLY PRESSED THE ACCELERATOR TO
FINISH MY TURN INTO THE GARAGE. IT WAS AT THIS POINT THAT
THE CAR ACCELERATED WITH EXTREME FORCE AND WITHIN A
SECOND SLAMMED INTO A LARGE CONCRETE POLE THAT WAS JUST
INSIDE THE GARAGE TO THE LEFT. I NEVER FELT THE CAR SLOW IN
THAT MOMENT, ONLY SPEED UP AND I BELIEVE THE CAR SLAMMED
INTO THE POLE WHILE ACCELERATING AND WOULD HAVE
CONTINUED TO ACCELERATE IF NOT FOR THE LARGE POLE. I DID
NOT HAVE EITHER FOOT DEPRESSED ON EITHER PEDAL AT THE
MOMENT OF COLLISION. THE AIR BAGS DID NOT DEPLOY, BUT THERE
WAS VERY SEVERE DAMAGE TO THE FRONT END OF THE CAR THAT
WILL BE AT LEAST $25K. I WAS NOT ON THE PHONE OR DISTRACTED
IN ANY WAY. I WAS DRIVING CAREFULLY AND PAYING FULL
ATTENTION. THIS IS NOT A CASE OF MISTAKEN PEDAL BECAUSE I
WAS INTENDING TO ACCELERATE. AT FIRST TESLA TOLD US OVER
THE PHONE THAT THEIR LOGS SHOW THAT THE DRIVER PRESSED
THE PEDAL 100% AND THEN TAPPED THE BRAKE BEFORE IMPACT.
THIS EXPLANATION SOUNDED PHYSICALLY IMPOSSIBLE BECAUSE
THE DISTANCE COVERED WAS LESS THAN 3 CAR LENGTHS. A MONTH
LATER TESLA SENT A LETTER STATING THE DRIVER PRESSED THE
ACCELERATOR 100% UNTIL THE VEHICLE SENSED A CRASH. TESLA
DID NOT RESPOND TO OUR QUERY ABOUT WHY THEIR LOG STORY
HAD CHANGED. TESLA ALSO REFUSED TO PROVIDE DATA ABOUT
ACCELERATOR/BRAKE PERCENTAGE AND CAR SPEED FOR THE CAR
EARLIER IN THE DAY. IF A DRIVER IS PRESSING THE PEDAL 100% IT IS
A VERY DELIBERATE ACTION. THIS IS A FAILURE OF THE
ACCELERATOR AND THE AUTOMATIC BRAKING. THE CAR
ACCELERATED ON ITS OWN AND CRASHED FULL FORCE INTO A
LARGE CONCRETE POLE.

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

**[Complaint #5]**

Date Complaint Filed: 09/26/2016
Date of Incident: 09/22/2016
Component(s): VEHICLE SPEED CONTROL , WHEELS
NHTSA ID Number: 10909588
Consumer Location: LEXINGTON, MA

All Products Associated with this Complaint expand
Details close
help 0 Available Documents
- Crash:Yes
- Fire:No
- Number of Injuries:0
- Number of Deaths:0
Manufacturer: Tesla Motors, Inc.
Vehicle Identification No. (VIN): 5YJXCAE44GF...

SUMMARY:
I WAS GOING UP BY DRIVEWAY WAITING FOR MY GARAGE DOOR TO
OPEN. I TOOK MY FOOT OFF THE ACCELERATOR AND WAS SLOWING
DOWN WITHOUT HITTING THE BREAKS WAITING FOR THE GARAGE
DOOR TO OPEN. THE CAR TOOK OFF THROUGH THE GARAGE DOOR
AND HIT MY HUSBANDS CAR SITTING IN THE GARAGE.

**[Complaint #6]**

Date Complaint Filed: 09/30/2016
Date of Incident: 09/29/2016
Component(s): VEHICLE SPEED CONTROL
NHTSA ID Number: 10910701
Consumer Location: Unknown

All Products Associated with this Complaint expand
Details close
help 0 Available Documents
- Crash:No
- Fire:No
- Number of Injuries:0
- Number of Deaths:0
Manufacturer: Tesla Motors, Inc.
Vehicle Identification No. (VIN): UNKNOWN...

SUMMARY:
HERE IS A NEW COMPLAINT OF UNINTENDED ACCELERATION WHICH
SOUNDS HIGHLY CREDIBLE.
HTTPS://FORUMS.TESLA.COM/FORUM/FORUMS/NEAR-ACCIDENT-
WHILE-PARKING-JUST-NOW NEAR ACCIDENT WHILE PARKING JUST
NOW!! SUBMITTED BY HAMI05 ON SEPTEMBER 29, 2016 WOW GUYS
I'VE SEEN THOSE UNINTENDED ACCELERATION THREADS BEFORE
AND THOUGHT THAT THE PERSON MUST'VE ALWAYS DEFINITELY
BEEN PUNCHING THE ACCELERATOR, BUT I'M NOT SO SURE AFTER
WHAT JUST HAPPENED TO ME. PLEASE HEAR ME OUT, BECAUSE MY
SON AND I ARE FRANKLY QUITE SCARED RIGHT NOW. I WAS DRIVING
INTO A PARKING LOT AND I JUST LIGHTLY PRESSED THE

19

ACCELERATOR AS I WAS GOING UNDER 10 MPH AND ALL OF A SUDDEN MY X WENT FROM 10 TO OVER 40 MPH IN ABOUT 2 SECONDS! I DIDN'T EVEN KNOW THE THING COULD ACCELERATE THAT FAST! CAN ANYBODY EXPLAIN WHAT THE HECK MIGHT'VE HAPPENED? THANKFULLY I WAS ABOUT 100 FT AWAY FROM ANY OTHER CARS BEFORE IT TOOK OFF, SO I HAD TIME TO SLAM THE BRAKES WITHOUT PANICKING, OTHERWISE WHO KNOWS WHAT WOULD'VE HAPPENED... I'M CERTAIN THAT I DIDN'T ACCIDENTALLY ACTIVATE CRUISE CONTROL/AP, SO THERE'S NO WAY THAT COULD'VE CAUSED IT. MY THEORY IS THAT THE REGENERATIVE BRAKES MAY HAVE GIVEN ME A SUDDEN KICK OF ACCELERATION? I'M KIND OF WORRIED NOW, BECAUSE THIS IS ACTUALLY THE SECOND TIME SOMETHING LIKE THIS HAS HAPPENED TO ME, EXCEPT THE FIRST TIME WASN'T NEARLY AS BAD, SO I DIDN'T ASK YOU GUYS ABOUT IT. HAS ANYONE ELSE HAD THIS HAPPEN TO THEM? DO YOU GUYS THINK I NEED TO ASK MY TESLA TEAM ABOUT THIS? THIS HASN'T ONLY HAPPENED TO ME WHILE GETTING READY TO PARK, THE FIRST TIME I WAS JUST ACCELERATING UP TO 25 IN MY NEIGHBORHOOD AND IT SUDDENLY WENT TO 35 IN A SECOND BUT I WASN'T TOO BOTHERED ABOUT THAT, BECAUSE IT WAS JUST A 10MPH BURST, BUT THIS ONE THAT HAPPENED TO ME TODAY WAS THE CAR JUMPING 30 MPH... I'VE DRIVEN THIS CAR FOR 2000 MILES NOW AND IT'S THE ONLY CAR I'VE BEEN DRIVING REALLY OVER THE PAST MONTH.

[**Complaint #7**]

Date Complaint Filed: 10/12/2016
Date of Incident: 10/07/2016
Component(s): SERVICE BRAKES , VEHICLE SPEED CONTROL
NHTSA ID Number: 10915633
Consumer Location: SANTA CLARA, CA

All Products Associated with this Complaint expand
Details close
help 0 Available Documents
• Crash:Yes
• Fire:No
• Number of Injuries:0
• Number of Deaths:0
Manufacturer: Tesla Motors, Inc.
Vehicle Identification No. (VIN): 5YJXCBE22GF...

SUMMARY:
TL* THE CONTACT OWNS A 2016 TESLA MODEL X. WHILE PARKING THE VEHICLE, IT ACCELERATED WHILE DEPRESSING THE BRAKE PEDAL AND CRASHED INTO A FENCE. THERE WERE NO INJURIES AND A POLICE REPORT WAS NOT FILED. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURE WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 1,000.

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

[**Complaint #8**]

NHTSA ID Number: 10935272
Incident Date December 13, 2016
Consumer Location AMAGANSETT, NY
Vehicle Identification Number 5YJXCBE24GF****

Summary of Complaint

CRASH        Yes
FIRE         No
INJURIES     1
DEATHS       0

I HAD PULLED INTO A PARKING LOT, PROCEEDED TO PULL INTO A SPOT ADJACENT TO A CINDER BLOCK BUILDING. I HAD MY FOOT LIGHTLY ON THE GAS PEDAL, THEN AS I MADE THE TURN INTO THE SPOT, MY FOOT WAS ON THE BRAKE - THE CAR LURCHED FORWARD AND SPED UP AND THE BRAKES DID NOT STOP IT. I WENT RIGHT INTO THE CONCRETE BUILDING, HEAD ON - AIR BAGS DEPLOYED. THE FRONT END CRUSHED AND THE 2 AIRBAGS ON THE DRIVERS SIDE DEPLOYED AND WERE SMOKING. I READ ON LINE THAT THERE HAVE BEEN NUMEROUS INCIDENCES OF THIS HAPPENING WITH THE TESLA. SPONTANEOUS ACCELERATION WITH MY FOOT NOT ON THE GAS PEDAL. THE CAR WOULD NOT STOP BY THE BRAKES! I COULD HAVE BEEN SERIOUSLY INJURED OR HIT ANOTHER PERSONA OR VEHICLE. THE CAR HIT THE BUILDING AS WELL AS A NATURAL GAS PIPE THAT WAS RUNNING ALONG THE BUILDINGS SIDE AT THE LEVEL OF MY FRONT BUMPER. I FILED A POLICE REPORT.

1.    **Reports of SUA in the Model X Are 62 Times Higher Than Historical Rates of SUA**

48.    Tesla sold approximately 16,000 Model X vehicles in the United States from September 29, 2015, through the third quarter of 2016, broken down as follows:

| Model X U.S. Sales | |
|---|---|
| Quarter | Units Sold |
| 3Q 2015 | 6 |
| 4Q 2015 | 206 |
| 1Q 2016 | 2,400 |
| 2Q 2016 | 4,638 |
| 3Q 2016 | 8,774 |
| Total | 16,024 |

21

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

49.     The Model X having ten reported sudden unintended acceleration incidents in the first full year of production with only 16,000 vehicles on the road (each of which have been on the road significantly less than one year) results in a rate of 62 SUA events per 100,000 vehicles per year.

50.     In contrast, according to a study by NASA of unintended acceleration reports to the National Highway Traffic Administration from 2000 to 2010, from there was 1 SUA accident per 100,000 vehicles per year.  Accordingly, the Model X is reported to experience 62 times as many SUA events as the average number of reported SUA events for other manufacturers.

51.     Rather than correcting the defect through programmatic logic, Tesla's strategy in responding to SUA complaints has been to blame any report of SUA on driver error.  For example, Tesla was notified by the Model X owner of the first SUA incident registered in the NHTSA complaints database.  After performing an investigation, Tesla seized on a nearly identical conclusion that it reached in its investigation of Plaintiffs' incident, stating:

> "We analyzed the vehicle logs which confirm that this Model X was operating correctly under manual control and was never in Autopilot or cruise control at the time of the incident or in the minutes before. Data shows that the vehicle was traveling at 6 mph when the accelerator pedal was abruptly increased to 100%. Consistent with the driver's actions, the vehicle applied torque and accelerated as instructed. Safety is the top priority at Tesla and we engineer and build our cars with this foremost in mind. We are pleased that the driver is ok and ask our customers to exercise safe behavior when using our vehicles."

**D.     Plaintiff Ji Chang Son's and Plaintiff K.M.S.'s SUA Event**

52.     On September 10, 2016, Plaintiff Ji Chang Son was returning to his Orange County home in his Model X with his son, Plaintiff K.M.S.

53.     At approximately 8:00 p.m., Plaintiff Ji Chang Son slowed his vehicle to approximately 6 miles per hour and made a left turn easing into his driveway the garage after the door opened, just as he had done on countless prior occasions.

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

54.     Except that this time, as Plaintiff Ji Chang Son slowly pulled into his driveway, the vehicle spontaneously began to accelerate at full power, jerking forward and crashing through the interior wall of the garage, destroying several wooden support beams in the wall and a steel sewer pipe, among other things, and coming to rest in Plaintiffs' living room.  Plaintiffs were trapped inside the vehicle because the doors were pinned shut by wood support beams and other debris.

55.     Smoke began flooding the interior of the vehicle.  Plaintiff Ji Chang Son and Plaintiff K.M.S. feared that the Model X was about to explode and burst into flames and furiously sought other ways to escape the vehicle.

56.     Fortunately, Plaintiff K.M.S. managed to open a window and crawl out.  He ran to the other side of the Model X and struggled to force the window open on Plaintiff Ji Chang Son's side of the vehicle.  As the smoke continued to fill the Model X's interior and now the entire living room, Plaintiff K.M.S. courageously helped his father Plaintiff Ji Chang Son escape from the vehicle.

**E.     Defects in the Model X**

57.     The Model X – designed, manufactured, sold, and/or distributed by Tesla – is defective in that it is vulnerable to incidents of sudden full power unintended acceleration.  Regardless of the many root causes that may create this overarching defect, an effective automated emergency braking and/or automated torque control mechanism would serve as a fail-safe design feature to prevent and/or minimize the risk of injury, harm, or damage to Model X owners, occupants, and the general public form SUA events.

58.     Tesla has been aware that SUA events are occurring at a markedly high rate in the Model X, but has not, as of yet, explained the root cause of this dramatic increase in SUA events.  This made it critically important for Tesla to design and implement an adequate fail-safe system to prevent or mitigate the consequences of SUA.  Therefore, the Model X is defective for its lack of an adequate fail safe system as a result of the following:

a.   The inability of the Automated Emergency Braking system to be able to detect when full acceleration has not been commanded by the driver;

b.   The Automated Emergency Braking system's identification of 100% accelerator pedal input as an indicator of positive driver control that automatically renders the Automated Emergency Braking system inoperative;

c.   The lack of a proper fail-safe logic that will cut power and apply the brakes when the vehicle registers full power acceleration when there are fixed objects in the immediate path of the vehicle; and

d.   The lack of a proper fault detection system that would recognize an SUA event beyond the maximum design tolerance and respond by cutting or significantly reducing power.

59.   Finally, the faults and defects in Tesla's safety critical vehicle electronic systems described above show that Tesla has not properly tested or validated these systems individually or as a whole and, moreover, Tesla has failed to verify that all electronic vehicle systems capable of requesting torque are robust enough, and contain sufficient redundancies to prevent SUA events.

**F.   Choice of Law Allegations**

60.   Tesla is headquartered in Palo Alto, California.

61.   Tesla does substantial business in California, with a significant portion of the proposed Nationwide Class located in California.  For example, approximately 45% of all new Tesla Model S sales come from California, and it is expected a similar percentage of Model X sales are from California.

62.   Tesla's main automobile manufacturing facility is also located in California.

63.   In addition, the conduct that forms the basis for each and every class members' claims against Tesla emanated from Tesla's headquarters in California.

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

# V

## CLASS ALLEGATIONS

64.     Plaintiff Son brings this action on his own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure, Rules 23(a), 23(b)(2), and/or 23(b)(3).

### Nationwide Class:

All persons or entities in the United States who are current owners and/or lessees of a Tesla Model X.

65.     In the alternative to the Nationwide Class, and pursuant to Federal Rules of Civil Procedure, Rule 23(c)(5), Plaintiff Son seeks to represent the following state class only in the event that the Court declines to certify the Nationwide Class above. Specifically, the state classes consist of the following:

### California Class:

All persons or entities in California who are current owners and/or lessees of a Tesla Model X for primarily personal, family or household purposes, as defined by California Civil Code § 1791(a).

66.     Together, the Nationwide Class and the California Class shall be collectively referred to herein as the "Class."  Excluded from the Class are Defendant Tesla, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case.  Plaintiff Son reserves the right to modify, change, or expand the Class definitions based on discovery and further investigation.

67.     <u>Numerosity</u>:  Upon information and belief, the Class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff Son only through the discovery process, Plaintiff Son believes, and on that basis alleges, that thousands of Class Vehicles have been sold and leased in each of the States that are the subject of the Class.

68.   <u>Existence and Predominance of Common Questions of Fact and Law:</u>
Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class Members.  These common legal and factual questions include, but are not limited to, whether:

    a.  the Model X vehicles were sold or leased with a defect;

    b.  Tesla knew of the defect but failed to disclose the problem and its consequences to its customers;

    c.  Tesla misrepresented the safety of the Model X;

    d.  Tesla's misrepresentations and omissions regarding the safety of its vehicles were likely to deceive a reasonable person in violation of the CLRA;

    e.  Tesla violated the unlawful prong of the UCL by its violation of the CLRA;

    f.  Tesla violated the unlawful prong of the UCL by its violation of federal laws;

    g.  misrepresentations and omissions regarding the safety of its vehicles were likely to deceive a reasonable person in violation of the fraudulent prong of the UCL;

    h.  reasonable consumers would consider the defect or its consequences to be material;

    i.  Tesla breached its express warranties regarding the safety and quality of its vehicles;

    j.  Tesla breached the implied warranty of merchantability because its vehicles were not fit for their ordinary purpose due to their sudden acceleration defect;

    k.  Tesla has failed to provide free repairs as required by its New Vehicle Limited Warranty and/or Powertrain Warranty;

    l.  Tesla should be required to disclose the existence of the defect;

    m. Whether Plaintiff Son and Class Members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, and/or other relief; and

    n.  The amount and nature of such relief to be awarded to Plaintiff Son and the National Class.

69.   <u>Typicality</u>:  All of Plaintiff Sons' claims are typical of the claims of the Class inasmuch as Plaintiff Son purchased a Tesla Model X, and each member of the

26

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

class either purchased or leased a Tesla Model X.  Furthermore, Plaintiff Son and all members of the Class sustained the same monetary and economic injuries of being sold a vehicle with a safety defect that is still present in the vehicle, and the remedy sought for each is the same in which Plaintiff Son seeks a fix of the defect for himself and all absent Class Members.

70.  <u>Adequacy</u>:  Plaintiff Son is an adequate representative because his interests do not conflict with the interests of the Class that he seeks to represent, he has retained counsel competent and highly experienced in complex class action litigation, and he intends to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

71.  <u>Superiority</u>:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff Son and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant Tesla's conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

72.  Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

27

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

# VI

## CAUSES OF ACTION

## <u>FIRST CAUSE OF ACTION</u>

## VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA") (Cal. Civ. Code § 1750, *et seq.*)

## (By Plaintiff Son on Behalf of the Nationwide Class or, Alternatively, the California Class)

73.    Plaintiff Son and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

74.    Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the Nationwide Class.  Alternatively, Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the California Class.

75.    Tesla is a "person" as that term is defined in California Civil Code § 1761(c).

76.    Plaintiff Son and the Class are "consumers" as that term is defined in California Civil Code § 1761(d).

77.    Plaintiff Son filed concurrently herewith an affidavit that show venue in this District is proper, to the extent such an affidavit is required by California Civil Code § 1780(d).

78.    Tesla engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiff Son and Class Members that the Model X suffers from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem).  These acts and practices violate, at a minimum, the following sections of the CLRA:

> (a)(1) representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have
>
> (a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

28

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

79.     Tesla's unfair or deceptive acts or practices occurred repeatedly in Tesla's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

80.     Tesla knew that the Model X was defectively designed or manufactured, unsafe, and was not suitable for its intended use.

81.     Tesla knew that the Model X was defectively designed or manufactured, would fail without warning, and was not suitable for its intended use of regulating torque and vehicle speed based on driver commands. Tesla nevertheless failed to warn Plaintiff Son and the Class Members about these inherent dangers despite having a duty to do so.

82.     Tesla owed Plaintiff Son a duty to disclose the defective nature of Model X, including the dangerous risk of torque control failure and the lack of adequate fail-safe mechanisms, because they:

a.  Possessed exclusive knowledge of the defects rendering the Model X inherently more dangerous and unreliable than similar vehicles;

b.  Intentionally concealed the hazardous situation with Model X through its deceptive marketing campaign designed to hide the life-threatening problems from Plaintiff Son; and/or

c.  Made incomplete representations about the safety and reliability of the Model X generally, while purposefully withholding material facts from Plaintiff Son that contradicted these representations.

29

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

83.     The Model X vehicles pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to incidents of SUA.

84.     Whether or not a vehicle (a) accelerates only when commanded to do so; (b) accelerates when it knows will result in the collision with a fixed object; and (c) does not activate the automatic emergency braking when it receives instructions to accelerate 100% into a fixed object, are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.

85.     When Plaintiff Son bought his Model X for personal, family, and household purposes, he reasonably expected the vehicle would (a) not accelerate unless commanded to do so by application of the accelerator pedal or other driver controlled means; (b) would not accelerate when it knows will result in the collision with a fixed object; and (c) would not deactivate the automatic emergency braking when it receives instructions to accelerate 100% into a fixed object.

86.     Tesla's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Son, about the true safety and reliability of Defective Vehicles.

87.     As a result of its violations of the CLRA detailed above, Tesla caused actual damage to Plaintiff Son and, if not stopped, will continue to harm Plaintiff Son.  Plaintiff Son and the Class Members currently own or lease, or within the class period have owned or leased, a Model X that is defective and inherently unsafe.

88.     Plaintiff Son risks irreparable injury as a result of Tesla's acts and omissions in violation of the CLRA, and these violations present a continuing risk to Plaintiff Son as well as to the general public.

89.     The facts concealed or not disclosed by Tesla to Plaintiff Son and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Model X or pay a lesser price.  Had Plaintiff Son and the Class Members known about the defective nature of the Model X

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

and their engines, they would not have purchased the Model X or would have paid less for them.

90.     Plaintiff Son has provided Apple with notice of its violations of the CLRA pursuant to California Civil Code section 1782(a) and seeks injunctive relief.  After the 30-day notice period expires, Plaintiff Son will amend this complaint to seek monetary damages under the CLRA.

91.     Plaintiff Son's and the other Class Members' injuries were proximately caused by Tesla's fraudulent and deceptive business practices.

92.     Plaintiff Son seeks restitution and injunctive relief pursuant to California Civil Code § 1780.

## SECOND CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200)
### (By Plaintiff Son on Behalf of the Nationwide Class or, Alternatively, the California Class)

93.     Plaintiff Son and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

94.     Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the Nationwide Class against Tesla.  Alternatively, Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the California Class against Tesla.

95.     The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

96.     Tesla has violated the unlawful prong of section 17200 by its violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*., as set forth in Count I by the acts and practices set forth in this Complaint.

97. Tesla has violated the fraudulent prong of section 17200 because the misrepresentations and omissions regarding the safety and reliability of its vehicles as set forth in this Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

98. Tesla has violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint, including the manufacture and sale of vehicles with a sudden acceleration defect that lack effective fail-safe mechanism, and Tesla's failure to adequately investigate, disclose and remedy, offend established public policy, and because the harm they cause to consumers greatly outweighs any benefits associated with those practices.

99. Tesla's conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiff from making fully informed decisions about whether to purchase or lease Defective Vehicles and/or the price to be paid to purchase or lease Defective Vehicles.

100. Plaintiff Son has suffered an injury in fact, including the loss of money or property, as a result of Tesla's unfair, unlawful and/or deceptive practices. As set forth in the allegations concerning Plaintiff Son, in purchasing his vehicle, Plaintiff Son relied on the misrepresentations and/or omissions of Tesla with respect of the safety and reliability of the vehicles. Tesla's representations turned out not to be true because the vehicles can unexpectedly and dangerously accelerate out of the drivers' control. Had Plaintiff Son known this, he would not have purchased his Model X and/or paid as much for it.

101. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Tesla's business. Tesla's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

102. Plaintiff Son requests that this Court enter such orders or judgments as may be necessary to enjoin Tesla from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff Son and members of the Class any money Tesla

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in California Business & Professions Code section 17203 and California Civil Code section 3345; and for such other relief set forth below.

### THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (By Plaintiff Son on Behalf of the Nationwide Class or, Alternatively, the California Class)

103.    Plaintiff Son and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

104.    Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the Nationwide Class against Tesla.  Alternatively, Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the California Class against Tesla.

105.    California Business & Professions Code section 17500 states:  "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

106.    Tesla caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Tesla, to be untrue and misleading to consumers, including Plaintiff Son and the other Class Members.

107. Tesla has violated section 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of its Model X as set forth in this Complaint were material and likely to deceive a reasonable consumer.

108. Plaintiff Son and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Tesla's unfair, unlawful, and/or deceptive practices. In purchasing and/or leasing their Model X vehicles, Plaintiff Son and the other Class Members relied on the misrepresentations and/or omissions of Tesla with respect to the safety and reliability of the Model X. Tesla's representations turned out not to be true because the vehicles can unexpectedly and dangerously accelerate out of the driver's control; the vehicle implements a full acceleration instruction into a fixed object; and fails to use automatic emergency braking. Had Plaintiff Son and the other Class Members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, Plaintiff Son and the other Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

109. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Tesla's business. Tesla's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

110. Plaintiff Son, individually and on behalf of the other Class Members, requests that this Court enter such orders or judgments as may be necessary to enjoin Tesla from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff Son and the other Class Members any money Tesla acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

## FOURTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

**(By Plaintiff Son on Behalf of the Nationwide Class or, Alternatively,
the California Class)**

111.   Plaintiff Son and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

112.   Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the Nationwide Class against Tesla.  Alternatively, Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the California Class against Tesla.

113.   Tesla is and was at all relevant times a merchant with respect to motor vehicles under California Commercial Code section 2104.

114.   Tesla provided all purchasers and lessees of the Model X with the express warranties described herein, which became part of the basis of the bargain.  Accordingly, Tesla's warranties are express warranties under state law.

115.   In the course of selling its vehicles, Tesla expressly warranted in writing the Model X was covered by a Basic Warranty that provided: "the Basic Vehicle Limited Warranty covers the repair or replacement necessary to correct defects in the materials or workmanship of any parts manufactured or supplied by Tesla that occur under normal use for a period of 4 years or 50,000 miles (80,000 km), whichever comes first."

116.   The parts affected by the defect, including the accelerator control system and Automated Emergency Braking, were distributed by Tesla in the Model X and are covered by the warranties Tesla provided to all purchasers and lessors of Model X.

117.   Tesla breached these warranties by selling and leasing Class Vehicles with the defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

118.   Plaintiff Son notified Tesla of the breach within a reasonable time, and/or were not required to do so because affording Tesla a reasonable opportunity to cure its breach of written warranty would have been futile.  Tesla also knew of the defect and yet have chosen to conceal it and to fail to comply with their warranty obligations.

119.   As a direct and proximate cause of Tesla's breach, Plaintiff Son and the other Class Members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value.

120.   Tesla's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Tesla's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

121.   The time limits contained in Tesla's warranty period were also unconscionable and inadequate to protect Plaintiff Son and members of the Class. Among other things, Plaintiff Son and Class Members had no meaningful choice in determining these time limitations the terms of which unreasonably favored Tesla.  A gross disparity in bargaining power existed between Tesla and the Class Members, and Tesla knew or should have known that the Model X was defective at the time of sale and would fail well before its useful life.

122.   Plaintiff Son and the Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

### FIFTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY

**(By Plaintiff Son, Individually and on Behalf of the Nationwide Class or, Alternatively, the California Class, and by Plaintiff K.M.S., individually)**

123.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

124.   Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the Nationwide Class against Tesla.  Alternatively, Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the California Class against Tesla.  Plaintiff K.M.S. brings this claim on behalf of himself.

125.   Tesla was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Model X.  Tesla knew or had reason to know of the specific use for which the Model X vehicles were purchased.

126.   Tesla provided Plaintiffs and the other Class members with an implied warranty that the Model X and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Model X vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Model X in that there are defects in the vehicle control systems that permit sudden unintended acceleration to occur; the Model X does not have an adequate fail-safe to protect against such SUA events; and the accelerator control system was not adequately tested to prevent SUA events.

127.   Therefore, the Model X vehicles are not fit for their particular purpose of providing safe and reliable transportation.

128.   Tesla impliedly warranted that the Model X vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Model X vehicles manufactured, supplied, distributed, and/or sold by Tesla were safe and reliable for providing transportation and would not experience premature and catastrophic failure; and (ii) a warranty that the Model X would be fit for its intended use while being operated.

129.   Contrary to the applicable implied warranties, the Model X vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the other Class Members with reliable, durable, and safe transportation.  Instead, the Model X suffers from a defective design(s) and/or manufacturing defect(s).

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

130.   Tesla's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

131.   After Plaintiffs received the injuries complained of herein, notice was given by Plaintiffs to Defendants, by direct communication with Defendant Tesla as well as by the filing of this lawsuit in the time and in the manner and in the form prescribed by law, of the breach of said implied warranty.

132.   As a legal and proximate result of the breach of said implied warranty, Plaintiffs sustained the damages herein set forth.

133.   Plaintiffs and Class Members are, therefore, entitled to damages in an amount to be proven at the time of trial.

## SIXTH CAUSE OF ACTION

### BREACH OF WRITTEN WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. § 2301, *et seq.*)

### (By Plaintiff Son on Behalf of the Nationwide Class or, Alternatively, the California Class)

134.   Plaintiff Son and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

135.   Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the Nationwide Class against Tesla.  Alternatively, Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the California Class against Tesla.

136.   Plaintiff Son and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

137.   Defendant Tesla is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

138.   The Model X vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

139.   Tesla's 5 year/60,000 miles Basic Warranty and 10 year/100,000 miles Powertrain Warranty are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

140.   Tesla breached these warranties as described in more detail above, but generally by not repairing or adjusting the Defective Vehicles' materials and workmanship defects; providing Defective Vehicles not in merchantable condition and which present an unreasonable risk of sudden unintended acceleration and not fit for the ordinary purpose for which vehicles are used; providing Vehicles that were not fully operational, safe, or reliable; and not curing defects and nonconformities once they were identified.

141.   Plaintiff Son and Class Members have had sufficient direct dealings with either the Tesla or its agents to establish privity of contract between Plaintiff Son and the Class members.  However, privity is also not required because Plaintiff Son's and Class Members' Model X vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

142.   Plaintiff Son and the other Class Members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

143.   Defendant Tesla's breach of the express warranties has deprived Plaintiff Son and the other Class Members of the benefit of their bargain.

144.   The amount in controversy of Plaintiff Son's individual claims meets or exceeds the sum or value of $25.00.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

145.   Tesla has been afforded a reasonable opportunity to cure its breach of the written warranties and/or Plaintiff Son and the other Class Members were not required to do so because affording Tesla a reasonable opportunity to cure its breach of written warranties would have been futile.  Tesla was also on notice of the alleged defect from the complaints and service requests it received from Class Members, as well as from its own warranty claims, customer complaint data, and/or parts sales data.

146.   As a direct and proximate cause of Tesla's breach of the written warranties, Plaintiff Son and the other Class Members sustained damages and other losses in an amount to be determined at trial.  Defendant Tesla's conduct damaged Plaintiff Son and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

## SEVENTH CAUSE OF ACTION

### BREACH OF CONTRACT/COMMON LAW WARRANTY

**(By Plaintiff Son on Behalf of the Nationwide Class or, Alternatively, the California Class)**

147.   Plaintiff Son and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

148.   To the extent Tesla's repair or adjust commitment is deemed not to be a warranty under California's Commercial Code, Plaintiff Son pleads in the alternative under common law warranty and contract law.  Tesla limited the remedies available to Plaintiff Son and the Class Members to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Tesla and/or warranted the quality or nature of those services to Plaintiff Son.

149.   Tesla breached this warranty or contract obligation by failing to repair the Model X evidencing a sudden unintended acceleration problem or to replace them.

150.   As a direct and proximate result of Tesla's breach of contract of common law warranty, Plaintiff Son and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

# EIGHTH CAUSE OF ACTION

## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES

## (Cal. Civ. Code § 1793.2(d) & 1791.2)

### (By Plaintiff Son on Behalf of the Nationwide Class or, Alternatively, the California Class)

151.   Plaintiff Son and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

152.   Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the Nationwide Class.  Alternatively, Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the California Class.

153.   Plaintiff Son and the Class Members who purchased the Model X in California are "buyers" within the meaning of California Civil Code section 1791.

154.   The Tesla vehicles are "consumer goods" within the meaning of California Civil Code section 1791(a).

155.   Tesla is a "manufacturer" of the Model X within the meaning of California Civil Code section 1791(j).

156.   Plaintiff Son and the Class bought/leased new motor vehicles manufactured by Tesla.

157.   Tesla made express warranties to Plaintiff Son and the Class within the meaning of California Civil Code sections 1791.2 and 1793.2, both in its warranty manual and advertising, as described above.

158.   Tesla's Model X had and continues to have defects that were and continue to be covered by Tesla's express warranties and these defects substantially impair the use, value, and safety of Tesla's vehicles to reasonable consumers like Plaintiff Son and the Class.

159.   Plaintiff Son and the Class delivered their vehicles to Tesla or its authorized repair facility for repair of the defects and/or notified Tesla in writing of the need for

41

repair of the defects because they reasonably could not deliver the vehicles to Tesla or its authorized repair facility due to fear of unintended acceleration.

160.   Tesla and its authorized repair facilities failed and continue to fail to repair the vehicles to match Tesla's written warranties after a reasonable number of opportunities to do so.

161.   Plaintiff Son and the Class Members gave Tesla or its authorized repair facilities at least two opportunities to fix the defects unless only one repair attempt was possible because the vehicle was later destroyed or because Tesla or its authorized repair facility refused to attempt the repair.

162.   Tesla did not promptly replace or buy back the vehicles of Plaintiff Son and the Class.

163.   As a result of Tesla's breach of its express warranties, Plaintiff Son and the Class received goods whose dangerous condition substantially impairs their value to Plaintiff and the Class.  Plaintiff Son and the Class have been damaged as a result of the products' malfunctioning, and the nonuse of their vehicles.

164.   Pursuant to California Civil Code sections 1793.2 & 1794, Plaintiff Son and the Class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their vehicles, or the overpayment or diminution in value of their vehicles.

## NINTH CAUSE OF ACTION

### VIOLATION OF THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY

**(Cal. Civ. Code §§ 1792, 1791.1, *et seq.*)**

**(By Plaintiff Son on Behalf of the Nationwide Class or, Alternatively, the California Class)**

165.   Plaintiff Son and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

42

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

166.   Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the Nationwide Class.  Alternatively, Plaintiff Son brings this claim on behalf of himself and on behalf of the Members of the California Class.

167.   At all relevant times hereto, Tesla was the manufacturer, distributor, warrantor, and/or seller of the Model X.  Tesla knew or should have known of the specific use for which the Model X vehicles were purchased.

168.   Tesla provided Plaintiff Son and the Class Members with an implied warranty that the Model X vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold.  However, the Model X vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Model X in that there are defects in the vehicle control systems that permit sudden unintended acceleration to occur; the Model X does not have an adequate fail-safe to protect against such SUA events; and the accelerator control system was not adequately tested.

169.   The Model X vehicles are not fit for the purpose of providing safe and reliable transportation because of the defect.

170.   Tesla impliedly warranted that the Model X vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Model X vehicles manufactured, supplied, distributed, and/or sold by Tesla were safe and reliable for providing transportation and would not experience premature and catastrophic failure; and (ii) a warranty that the Model X would be fit for its intended use while being operated.

171.   Contrary to the applicable implied warranties, the Model X vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Son and the other Class Members with reliable, durable, and safe transportation.  Instead, the Model X suffers from a defective design(s) and/or manufacturing defect(s). Tesla's actions, as complained of herein, breached the implied

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code sections 1792 and 1791.1.

## TENTH CAUSE OF ACTION

## STRICT PRODUCT LIABILITY

### (By Plaintiffs Son and K.M.S., individually)

172.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

173.   Plaintiffs are informed and believes and based thereon alleges that Tesla designed, manufactured, researched, tested, assembled, installed, marketed, advertised, distributed, and sold a certain 2016 Tesla Model X, bearing Vehicle Identification Number 5YJXCBE27GF009026 (hereinafter referred to as the "subject vehicle").

174.   At all times relevant hereto, Tesla knew that the subject vehicle would be operated and inhabited by consumers without inspection for defects.

175.   At the time of the collision described above, the subject vehicle was being used in a manner and fashion that was foreseeable by Tesla, and in a manner in which it was intended to be used.

176.   Tesla designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold the subject vehicle and its component parts and constituents, which was intended by the Tesla to be used for the purpose of use as a passenger vehicle, and other related activities.

177.   The subject vehicle was unsafe for its intended use by reason of defects in its manufacture, design, testing, components and constituents, so that it would not safely serve its purpose, but would instead expose the users of said product, and others, to serious injuries because of the failure of Tesla to properly guard and protect the users of the subject vehicle, and others, from the defective design of said product.

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

178.   Tesla designed the subject vehicle defectively, causing it to fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

179.   The risks inherent in the design of the subject vehicle outweigh significantly any benefits of such design.

180.   Plaintiffs were not aware of the aforementioned defects.

181.   As a legal and proximate result of the aforementioned defects of the subject vehicle, Plaintiffs sustained the injuries and damages set forth herein.

182.   Plaintiffs are, therefore, entitled to damages in an amount to be proven at the time of trial.

## ELEVENTH CAUSE OF ACTION
## NEGLIGENCE
### (By Plaintiffs Son and K.M.S., individually)

183.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein

184.   At all times herein mentioned, Tesla designed, manufactured, assembled, analyzed, recommended, merchandised, advertised, promoted, distributed, supplied, and sold to distributors and retailers for sale, the subject vehicle and/or its component parts.

185.   Tesla owed Plaintiffs a duty to exercise reasonable care in the design, testing, manufacture, assembly, sale, distribution and servicing of the subject vehicle, including a duty to ensure that the subject vehicle did not cause Plaintiffs, other users, bystanders, or the public, unnecessary injuries or deaths.

186.   Tesla knew or should have known that the subject vehicle is defectively designed and inherently dangerous and has a propensity to suddenly accelerate, lose control, and cause injuries.

187.   Tesla knew or should have known that the subject vehicle was defectively designed and/or manufactured and was therefore prone to failure under normal driving conditions, potentially causing injuries and/or deaths.

188.   Tesla failed to exercise ordinary care and breached their duties by, among other things:

    a.   Failure to use due care in the manufacture, distribution, design, sale, testing, and servicing of the subject vehicle and its component parts in order to avoid the aforementioned risks to individuals;

    b.   Failure to provide adequate warning of the sudden acceleration problem and its propensity to cause and/or contribute to an accident;

    c.   Failure to incorporate within the vehicle and its design reasonable safeguards and protections against sudden acceleration and the consequences thereof;

    d.   Failure to make timely correction to the design of the subject vehicle to correct the sudden acceleration problems;

    e.   Failure to adequately identify and mitigate the hazards associated with sudden unintended acceleration in accordance with good engineering practices and other ways; and,

    f.   Were otherwise careless or negligent.

189.   The aforementioned negligent acts and omissions of Tesla were the direct and proximate cause of Plaintiff's damages.

190.   Plaintiffs are, therefore, entitled to damages in an amount to be proven at trial, together with interest thereon and costs.

## TWELFTH CAUSE OF ACTION

### FAILURE TO WARN

### (By Plaintiffs Son and K.M.S., individually)

191.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein

192.   Tesla knew that the subject vehicle, and its component parts, would be purchased and used without inspection for defects in the design of the vehicle.

46

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

193.   The subject vehicle was defective when it left the control of each of these Defendants.

194.   Tesla knew or should have known of the substantial dangers involved in the reasonably foreseeable use of these vehicles, whose defective design, manufacturing, and lack of sufficient warnings caused them to have an unreasonably dangerous propensity to suffer from sudden unintended acceleration and thereby cause injuries.

195.   Tesla failed to adequately warn of the substantial dangers known or knowable at the time of the defective vehicles' design, manufacture, and distribution.

196.   Tesla failed to provide adequate warnings, instructions, guidelines or admonitions to members of the consuming public, including Plaintiffs, of the defects, which Tesla knew, or in the exercise of reasonable care should have known, to have existed in the subject vehicle, and its component parts.

197.   Tesla knew that these substantial dangers are not readily recognizable to an ordinary consumer and that consumers would purchase and use these products without inspection.

198.   At the time of Plaintiffs' injuries, the subject vehicle was being used in the manner intended by Tesla, and in a manner that was reasonably foreseeable by Tesla as involving substantial danger that was not readily apparent to its users.

199.   Plaintiffs' damages were the legal and proximate result of the actions and inactions of Tesla, who owed a duty to Plaintiff in designing, manufacturing, warning about, and distributing the subject vehicle.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Son, on behalf of himself and members of the Class, and Plaintiff K.M.S. respectfully request that this Court:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282

1      B.  appoint Plaintiff Son as the representatives of the Class and their counsel as

2          Class counsel;

3      C.  award all actual, general, special, incidental, statutory, punitive, and

4          consequential damages and restitution to which Plaintiffs and the Class

5          Members are entitled (though such damages are expressly not currently sought

6          under the CLRA cause of action);

7      D.  award pre-judgment and post-judgment interest on such monetary relief;

8      E.  grant appropriate injunctive and/or declaratory relief, including, without

9          limitation, an order that requires Tesla to repair, recall, and/or replace the

10         Model X vehicles and to extend the applicable warranties to a reasonable period

11         of time, or, at a minimum, to provide Plaintiffs and Class Members with

12         appropriate curative notice regarding the existence and cause of sudden

13         unintended acceleration;

14     F.  award reasonable attorneys' fees and costs;

15     G.  grant such further relief that this Court deems appropriate.

16 Dated:  December 30, 2016        Respectfully submitted,

18                      By:   /s/ Richard D. McCune

19                          Richard D. McCune
                          MCCUNE WRIGHT AREVALO, LLP

20                          Attorneys for Plaintiffs

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  December 30, 2016        By:   /s/ Richard D. McCune

                          Richard D. McCune
                          MCCUNE WRIGHT AREVALO, LLP
                          Attorneys for Plaintiffs

CLASS ACTION COMPLAINT
Case No.: 8:16-cv-2282