Richard D. McCune, State Bar No. 132124
rdm@mccunewright.com
David C. Wright, State Bar No. 177468
dcw@mccunewright.com
MCCUNE WRIGHT AREVALO, LLP
3281 E. Guasti Road, Suite 100
Ontario, California  91761
Telephone:  (909) 557-1250
Facsimile:  (909) 557-1275

BENEDICT O. KWON, State Bar No. 219052
bkwon@sycr.com
STEPHEN L. RAM, State Bar No. 240769
sram@sycr.com
STRADLING YOCCA CARLSON & RAUTH, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone:  (949) 725-4000
Facsimile:  (949) 725-4100

Attorneys for Plaintiffs JI CHANG SON, GHODRAT
KHANSARI, MADHUSUDHANA SHASTRULA,
ALI JARRAHI, MICHAEL TOMKO, KENNETH
HELMAN, and BRIDGETTE WALDEMAR,
individually and on behalf of the Putative Class, and
Plaintiff K.M.S., a minor by and through his
*Guardian ad Litem* YUN SOO OH

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JI CHANG SON, GHODRAT KHANSARI, MADHUSUDHANA SHASTRULA, ALI JARRAHI, MICHAEL TOMKO, KENNETH HELMAN, and BRIDGETTE WALDEMAR, individually and on behalf of all others similarly situated, and K.M.S., a minor by and through his *Guardian ad Litem* YUN SOO OH,<br><br>          Plaintiffs,<br><br>     v.<br><br>TESLA, INC.,<br><br>          Defendant. | Case No.:  8:16-cv-02282-JVS-KES<br><br>Judge Assigned:  Hon. James V. Selna<br>Complaint filed: December 30, 2016<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>1.  Violation of the California Consumer Legal Remedies Act, Cal. Civ, Code § 1750, *et seq.*<br>2.  Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*<br>3.  Violation of California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* |

-1-

4.  Breach of Express Warranty, Cal.
    Com. Code § 2313
5.  Breach of the Implied Warranty of
    Merchantability, Cal. Com. Code
    § 2314
6.  Breach of Written Warranty under the
    Magnuson-Moss Warranty Act, 15
    U.S.C. § 2301, *et seq.*
7.  Breach of Contract/Common Law
    Warranty
8.  Violation of the Song-Beverly
    Consumer Warranty Act for Breach of
    Express Warranties, Cal. Civ. Code
    § 1793.2(d) & 1791.2
9.  Violation of the Song-Beverly
    Consumer Warranty Act for Breach of
    Implied Warranty of Merchantability,
    Cal. Civ. Code § 1792 & 1791.1
10. Strict Product Liability
11. Strict Product Liability (Failure to
    Warn)
12. Negligence
13. Violation of Georgia's Uniform
    Deceptive Trade Practices Act, Ga.
    Code Ann. § 10-1-370, *et seq.*
14. Breach of Express Warranty, Ga.
    Code Ann. § 11-2-313
15. Breach of the Implied Warranty of
    Merchantability, Ga. Code Ann. § 11-
    2-314
16. Breach of Contract/Common Law
    Warranty (Based on Georgia Law)
17. Unjust Enrichment (Based on Georgia
    Law)
18. Breach of the Implied Warranty of
    Merchantability, N.C. Gen. Stat. § 25-
    2-314
19. Breach of Contract/Common Law
    Warranty (Based On North Carolina
    Law)
20. Unjust Enrichment (Based on North
    Carolina Law)
21. Violation of Ohio Consumer Sales
    Practices Act, Ohio Rev. Code Ann.
    § 1345.01, *et seq.*
22. Breach of Express Warranty, Ohio
    Rev. Code Ann. § 1302.26, *et seq.*
    (U.C.C. § 2-313)
23. Ohio Breach of Implied Warranty of
    Merchantability - Strict Liability,
    Ohio Rev. Code Ann. § 1302.27
    (U.C.C. § 2-314)
24. Ohio Negligent Design, Engineering
    & Manufacture (Based on Ohio Law)

-2-

25. Unjust Enrichment (Based on Ohio Law)
26. Violation of New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*
27. Breach of Express Warranty, N.J. Stat. Ann. § 12A:2-313
28. Breach of the Implied Warranty of Merchantability, N.J. Stat. Ann. § 12A:2-314
29. Breach of Contract/Common Law Warranty (Based on New Jersey Law)
30. Unjust Enrichment (Based on New Jersey Law)
31. Violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203(7), *et seq.*
32. Breach of Express Warranty, Fla. Stat. § 672.313
33. Breach of the Implied Warranty of Merchantability, Fla. Stat. § 672.314
34. Breach of Contract/Common Law Warranty (Based on Florida Law)
35. Unjust Enrichment (Based on Florida Law)

**DEMAND FOR JURY TRIAL**

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.: 8:16-cv-02282-JVS-KES

1

**TABLE OF CONTENTS**

2
*Page*

3   I      INTRODUCTION ....................................................................1

4          A.    Tesla Vehicles Are Computers on Wheels.....................................1

5          B.    The Sudden Unintended Acceleration Problems With the Model X .............3

6          C.    Cause of the SUA Events in the Model X.......................................9

7   II     THE PARTIES ......................................................................11

8   III    JURISDICTION AND VENUE ....................................................15

9   IV     FACTUAL BACKGROUND......................................................16

10         A.    Tesla's Development of the Model S and Model X Vehicles ....................16

11         B.    Tesla's Markets the Safety of the Model S and Model X ..........................17

12         C.    Tesla Is on Notice of SUA Complaints Involving Both its Model S and

13               Model X Vehicles.....................................................................20

14               1.    Model S Reports of Sudden Unintended Acceleration to NHTSA ....21

15               2.    Model X Reports of Sudden Unintended Acceleration to NHTSA....33

16                     a.    Reports of SuddenUnintended Acceleration are 71 Times

17                           Higher Than Historical Rates for Other Vehicles ...................43

18         D.    Plaintiff Ji Chang Son's and Plaintiff Kyung Min Son's SUA Event ..........44

19         E.    Plaintiff Khansari's SUA Event ................................................46

20         F.    Plaintiff Jarrahi's Vehicle's SUA Event ......................................47

21         G.    Plaintiff Tomko's Vehicle's SUA Incidents ...................................47

22         H.    Plaintiff Shastrula's SUA Incident .............................................48

23         I.    Plaintiff Helman's Vehicle's SUA Incident....................................49

24         J.    Plaintiff Wildermar's SUA Incident ............................................49

25         K.    Defects in the Model S and Model X ...........................................50

26         L.    Choice of Law Allegations.....................................................51

27   V      CLASS ALLEGATIONS ........................................................51

28   VI     CAUSES OF ACTION............................................................55

i

**TABLE OF CONTENTS (cont.)**

*Page*

FIRST CAUSE OF ACTION:  VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ................................................................ 55

SECOND CAUSE OF ACTION:  VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW ............................................... 58

THIRD CAUSE OF ACTION:  VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW ................................................................. 60

FOURTH CAUSE OF ACTION:  BREACH OF EXPRESS WARRANTY ......... 62

FIFTH CAUSE OF ACTION:  BREACH OF IMPLIED WARRANTY .............. 64

SIXTH CAUSE OF ACTION:  BREACH OF WRITTEN WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT .......................................... 66

SEVENTH CAUSE OF ACTION:  BREACH OF CONTRACT/COMMON LAW WARRANTY ................................................................................ 68

EIGHTH CAUSE OF ACTION:  VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES ................................................................................ 69

NINTH CAUSE OF ACTION:  VIOLATION OF THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY ...................................................... 71

TENTH CAUSE OF ACTION:  STRICT PRODUCT LIABILITY ..................... 72

ELEVENTH CAUSE OF ACTION:  NEGLIGENCE ........................................... 73

TWELFTH CAUSE OF ACTION:  FAILURE TO WARN ................................. 75

THIRTEENTH CAUSE OF ACTION:  VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT ............................... 76

FOURTEENTH CAUSE OF ACTION:  BREACH OF EXPRESS WARRANTY ................................................................................... 78

FIFTEENTH CAUSE OF ACTION:  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY ................................................ 80

1

**TABLE OF CONTENTS (cont.)**

2                                                                                              *Page*

3    SIXTEENTH CAUSE OF ACTION:  BREACH OF

4        CONTRACT/COMMON LAW WARRANTY ...........................................81

5    SEVENTEENTH CAUSE OF ACTION:  UNJUST ENRICHMENT...................82

6    EIGHTEENTH CAUSE OF ACTION:  BREACH OF THE IMPLIED

7        WARRANTY OF MERCHANTABILITY ..................................................83

8    NINETEENTH CAUSE OF ACTION:  BREACH OF CONTRACT/COMMON

9        LAW WARRANTY.................................................................................84

10   TWENTIETH CAUSE OF ACTION:  UNJUST ENRICHMENT .......................85

11   TWENTY-FIRST CAUSE OF ACTION:  VIOLATION OF OHIO

12       CONSUMER SALES PRACTICES ACT ....................................................85

13   TWENTY-SECOND CAUSE OF ACTION:  BREACH OF EXPRESS

14       WARRANTY .........................................................................................88

15   TWENTY-THIRD CAUSE OF ACTION:  OHIO BREACH OF IMPLIED

16       WARRANTY OF MERCHANTABILITY - STRICT LIABILITY ............89

17   TWENTY-FOURTH CAUSE OF ACTION:  OHIO NEGLIGENT DESIGN,

18       ENGINEERING & MANUFACTURE ......................................................90

19   TWENTY-FIFTH CAUSE OF ACTION:  UNJUST ENRICHMENT .................91

20   TWENTY-SIXTH CAUSE OF ACTION:  VIOLATION OF NEW JERSEY

21       CONSUMER FRAUD ACT ....................................................................92

22   TWENTY-SEVENTH CAUSE OF ACTION:  BREACH OF EXPRESS

23       WARRANTY .........................................................................................95

24   TWENTY-EIGHTH CAUSE OF ACTION:  BREACH OF THE IMPLIED

25       WARRANTY OF MERCHANTABILITY ..................................................97

26   TWENTY-NINTH CAUSE OF ACTION:  BREACH OF

27       CONTRACT/COMMON LAW WARRANTY ...........................................99

28   THIRTIETH CAUSE OF ACTION:  UNJUST ENRICHMENT .......................100

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS (cont.)

*Page*

THIRTY-FIRST CAUSE OF ACTION: VIOLATION OF FLORIDA
    DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ....................... 101
THIRTY-SECOND CAUSE OF ACTION: BREACH OF EXPRESS
    WARRANTY .................................................................................. 103
THIRTY-THIRD CAUSE OF ACTION: BREACH OF THE IMPLIED
    WARRANTY OF MERCHANTABILITY ................................................ 105
THIRTY-FOURTH CAUSE OF ACTION: BREACH OF
    CONTRACT/COMMON LAW WARRANTY ......................................... 106
THIRTY-FIFTH CAUSE OF ACTION: UNJUST ENRICHMENT ................. 107
PRAYER FOR RELIEF ............................................................................. 108
JURY DEMAND ..................................................................................... 109

Plaintiffs Ji Chang Son, Ghodrat Khansari, Madhusudhana Shastrula, Ali Jarrahi, Michael Tomko, Kenneth Helman, and Bridgette Waldemar, individually and on behalf of all others similarly situated, and K.M.S., a minor by and through his *Guardian ad Litem* Yun Soo Oh, herein allege as follows:

# I

# INTRODUCTION

**A.   Tesla Vehicles Are Computers on Wheels**

1.      In 2008, Tesla, Inc., ("Tesla") first entered the vehicle market with the production of the Tesla Roadster, an all-electric sports car.  In 2012, it began selling the Model S, an all-electric luxury sedan.  Following a series of delays, Tesla began selling the Model X,[1] an all-electric luxury crossover sports utility vehicle ("SUV") in the fourth quarter of 2015.

2.      Tesla is led by technology pioneer and visionary entrepreneur Elon Musk, who has parlayed his successes in Zip2 and PayPal, to transform the automobile industry with Tesla, and the private space industry with SpaceX.

3.      Elon Musk's strategy with Tesla was to enter the automotive market with a highly technical high-end and expensive vehicle that would appeal to environmentally conscious consumers who value cutting-edge technology, luxury, high-performance, and safety.

4.      The Tesla vehicles are like no other vehicles that have ever been mass produced.  As reported by the Los Angeles Times on March 19, 2015, Elon Musk said in connection with releasing software updates on the Model S, "We really designed the Model S to be a very sophisticated computer on wheels."  That is just as true with the Model X as the Model S.  Elon Musk went to on to say: "Tesla is a software company as

---

[1] Following the delivery of the 6 Founders' Series vehicles at the launching ceremony for the Model X, Tesla only sold approximately 206 Model X vehicles in the fourth quarter of 2015.  Sales really began in the first quarter of 2016.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

much as it is a hardware company.  A huge part of what Tesla is, is a Silicon Valley software company."

5.    Part of the excitement that Elon Musk and Tesla have created in the automotive market segment is being a market and technology leader in the self-driving technology.  This technology allows the vehicle to operate on its own, and to make drivers' decisions for them.  Engineers are responsible to anticipate all of the different foreseeable scenarios vehicles are expected to encounter, and to program the computer systems in the vehicle to anticipate and make decisions to safely operate the vehicle.  Part of the excitement around this technology is the potential for preventing driver errors in judgment under times of high stress.

6.    As reported by Electrek in December 2015, Elon Musk announced that the technology is so advanced that the Tesla has the ability to not only track the vehicle in front of it, but also the two vehicles in front of it.  It has the ability to see through rain, fog, snow, and dust to see and react to objects.  Elon Musk went on to proclaim that within two years Tesla would have a fully autonomous vehicle that could operate in any condition and on any road.  In October 2016, Elon Musk stated that from now on, all new Tesla cars will have full self-driving capabilities.

7.    The highly-touted ability of the Tesla vehicle computers to understand their environment is futuristic.  The vehicle is programmed to remember where home is, to remember the preferred routes of going home, to open the garage door at home, and to raise the suspension when the driver gets home to better handle the slope of the driveway.  Astoundingly, the driver can exit the vehicle and the Tesla will open the garage door, enter the garage, park itself, and shut down without a driver operating the vehicle.  It also can be summoned by a driver with a cell phone – the vehicle, without a driver, will open the garage door, exit the garage, and drive itself to the driver who summoned the car.

8.    As is true for all computers, however, Tesla vehicles are only as good as the hardware, engineering, and programming of their onboard computers.  As even casual computer users know, even the most sophisticated and successful computer companies in

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1   history, such as Microsoft and Apple, regularly release computers and software with
2   bugs, glitches, and unanticipated problems that cause their computers to unexpectedly
3   crash, malfunction, or work differently than intended.  These bugs have serious
4   consequences for users of traditional computer products.  But for a computer that controls
5   a 5,000 pound machine that can explosively accelerate from a standstill to 60 miles per
6   hour in under 3 seconds, the consequences of a computer glitch can be catastrophic.  For
7   that reason, there has to be zero-tolerance for any glitch, bug, or malfunction - a goal no
8   computer company has ever been able to achieve.

9       9.     Tesla is no exception.  In a high-profile fatality accident in Florida where the
10  vehicle's computer system failed to recognize the presence of a fixed object, Tesla's
11  response, as reported by the New York Times, was to issue a statement stating that the
12  use of this technology "requires explicit acknowledgement that the system is new
13  technology."

14      10.    Part of the solution is that Tesla computers learn in order to carry out the
15  driver's instructions, and to protect the driver while doing so.  As stated by Elon Musk, as
16  reported in Wired on September 11, 2016, "We're adding 1.5 million miles per day on
17  Autopilot," and all vehicles learn at once.  So just as with traditional computers, patches
18  and software updates can be downloaded remotely to remedy glitches, bugs, and
19  problems that were not anticipated by the programming engineers.

20  **B.     The Sudden Unintended Acceleration Problems with Tesla Vehicles**

21      11.    Tesla first introduced its Model S sedan in 2012.  According to Tesla, the
22  "Model S is designed from the ground up to be the safest, most exhilarating sedan on the
23  road.  The Model S can accelerate from 0 to 60 miles per hour in as little as 2.5 seconds."

24      12.    Beginning in September 2014, all Tesla Model S vehicles were
25  manufactured with a camera mounted at the top of the windshield, forward looking radar,
26  and ultrasonic acoustic location sensors that provide the vehicle's computer with a 360-
27  degree view around the car.  This equipment allowed the Model S to detect road signs,
28  lane markings, obstacles, and other vehicles.  Beginning in October 2016, Tesla upgraded

3

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1  this hardware in all new Model S vehicles to include 8 surround cameras and 12
2  ultrasonic sensors.

3       13.   Model S vehicles operate with an electronic acceleration control system by
4  which complex computer and sensor systems communicate an accelerator pedal's
5  position to the vehicle's onboard computers, telling the vehicle how fast it should go.

6       14.   From the introduction of the Model S in 2012 through June 2016, Tesla has
7  sold approximately 75,000 Model S vehicles in the United States.

8       15.   The launch of the Model X was one of the most anticipated vehicle launches
9  of all times.  A futuristic looking electric luxury high-performance crossover SUV, it had
10 originally been slated for release in 2014.



25      16.   But it was not until the very end of 2015, that it was actually released.  The
26 delay was as a result of technological and mechanical challenges.  Following the release,
27 problems arose almost immediately.  A lawsuit was filed, and later settled, that
28 highlighted the electronic nature of the problems, including the electronically activated

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

doors that opened and closed unpredictably, the electronic self-parking feature that failed to work, and other reported electronic problems with the vehicle, such as the electronically activated windows failing to open or close.  As reported by ABC News on April 5, 2016, Tesla's explanation for the electronic problems experienced by the Tesla X was "hubris in adding too much new technology to the Model X in version 1."

17.     Since the introduction of the Model X in the fourth quarter of 2015 through the end of 2016, Defendant Tesla, Inc., has sold approximately 18,240 Model X vehicles throughout the United States.  Model X vehicles operate with an electronic acceleration control system by which complex computer and sensor systems communicate an accelerator pedal's position to the vehicle's onboard computers, telling the vehicle how fast it should go.

18.     Able to accelerate from zero to sixty miles per hour in 2.9 to 3.8 seconds (depending on battery pack) and equipped with advanced safety features including Forward Collision Warning and Advanced Early Braking, Tesla proclaims that the Model X is "the safest, fastest and most capable sport utility vehicle in history."

19.     In press releases, sales literature, brochures, online statements, and other consumer-oriented documents, Tesla has consistently promoted "safety" as top priority in all its vehicles, generally, and in the Model X, specifically.

20.     What has become evident, however, is that Tesla vehicles are susceptible to sudden unintended acceleration ("SUA"), in which the vehicles will accelerate at full power even though the driver reports that they did not command the acceleration by pressing on the accelerator pedal, either at all or not to the degree that would call for the application of full power.

21.     In the four years since the introduction of the Model S, there have been 13 reports to the National Highway Traffic Safety Administration in which Model S drivers report having experienced full power acceleration either while in the act of parking the Model S or while driving at slow speed, 12 of which resulted in a crash of the vehicle, just as both Plaintiff Khansari and Plaintiff Tomko's spouse experienced.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1        22.    In the first full year of production since the Model X was first introduced,

2   Tesla has received, or is otherwise aware of, thirteen nearly identical instances in which

3   drivers of the Model X experienced full power acceleration either while in the act of

4   parking the Model X or while driving the Model X at slow speed, ten of which resulted in

5   a crash of the vehicle, precisely like Plaintiff Son herein experienced as shown below,

6   crashing through the wall that separated his garage from his living room.



SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1
2
3
4
5
6
7
8
9
10
11
12



13    23.    Ten of these are known to have been submitted to the National Highway

14 Traffic Safety Administration's ("NHTSA") publicly available complaints database that,

15 based on information and belief, is monitored by Tesla.  As illustrated by one of those

16 instances, this picture shows a pattern similar to Plaintiffs' incidents.

17
18
19
20
21
22
23
24
25
26
27
28

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

24.     In addition to the ten reports to NHTSA, there are at least three additional SUA events, including Plaintiff Son's, Plaintiff Jarrahi's, and another experienced by a driver of a Model X that did not result in an accident.  That other SUA event, which mirrored the SUA incident experienced by Plaintiff Son – but did not result in a collision – was reported to Tesla, but Tesla took no action.  Based on that fact, there are likely other Model X SUA events that Tesla is aware of but not recorded in the NHTSA database.

25.     Sudden Unintended Acceleration ("SUA") is a well-known safety issue. Though relatively rare, the danger of a vehicle accelerating uncontrollably is obvious. According to a study by NASA of unintended acceleration reports to the National Highway Traffic Administration from 2000 to 2010, there rate of SUA incidents was 1 per 100,000 vehicles per year.

26.     In 2010, the issue became very public when Toyota Motor Company was sued by hundreds of injured parties for claimed SUA events in their vehicles.  Toyota Motor Company paid hundreds of millions of dollars in settlement to victims and owners for the claim that there was an electrical defect in the Toyota vehicles that caused SUA events.  It also paid the United States government $1.2 billion for concealing this safety defect.  According to a December 2009 Consumer Reports[2] analysis of SUA event ratio for Toyota's 2008 model year vehicles, their reported events were 2 per 100,000 vehicles (1 per 50,000 vehicles), or double the average reported by NHTSA.

27.     By comparison, within the first year of Model X vehicles being on the road, and with only 18,240 Model X vehicles in use (the vast majority of which have been on the road significantly less than one year), there have been thirteen (13) reported incidents of sudden unintended acceleration -- a staggeringly high rate of SUA incidents of 71 per 100,000 vehicles per year.

_____

[2] http://www.consumerreports.org/cro/news/2009/12/analysis-shows-over-40-percent-of-sudden-acceleration-complaints-involve-toyotas/index.htm (last viewed on December 29, 2016).

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES



C.     **Cause of the SUA Events**

28.     There are different causes of SUA events.  They can be caused by a problem with the vehicle, by a driver error in pedal misapplication, or a combination of a problem with the vehicle causing pedal misapplication.  For the Model S, of the 14 SUA events reported to NHTSA (one of the 13 reports actually reported two independent SUA events), nine of SUA events occurred while the driver was in the process of parking the vehicle, and all but one of 14 events resulted in a collision.  For the Model X, remarkably all ten of the reported SUA events occurred while the driver was in the process of parking the Model X, all but one of which resulted in a collision.  The reported Tesla SUA incidents are eerily similar to the circumstances of the SUA events experienced by Plaintiffs.

29.     Irrespective of whether the SUA events in the Tesla vehicles are caused by mechanical issues with the accelerator pedal, an unknown failure in the electronic motor control system, a failure in other aspects of the electrical, mechanical, or computer systems, or some instances of pedal misapplication, the Model S and Model X are defective and unsafe.

9

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

30.     Despite its knowledge of the problem, Tesla has failed to properly disclose, explain, fix, or program safeguards to correct the underlying problem of unintended acceleration.  This leaves tens of thousands of Tesla owners with vehicles that could potentially accelerate out of control.

31.     Tesla's lack of response to this phenomenon is even more confounding when the vehicle is already equipped with the hardware necessary for the vehicle's computer to be able to intercede to prevent unintended acceleration into fixed objects such as walls, fences, and buildings.

32.     As set forth in more detail below, Tesla equips all its Model X vehicles, and has equipped its Model S vehicles since March 2015, with Automatic Emergency Braking whereby the vehicle computer will use the forward looking camera and the radar sensor to determine the distance from objects in front of the vehicle.  When a frontal collision is considered unavoidable, Automatic Emergency Braking is designed to automatically apply the brakes to reduce the severity of the impact.  But Tesla has programmed the system to deactivate when it receives instructions from the accelerator pedal to drive full speed into a fixed object.  Tesla has stated that Automatic Emergency Braking will operate only when driving between 5 mph (8 km/h) and 85 mph (140 km/h), but the vehicle will not automatically apply the brakes, or will stop applying the brakes, "in situations where you are taking action to avoid a potential collision.  For example:

- You turn the steering wheel sharply.
- You press the accelerator pedal.
- You press and release the brake pedal.
- A vehicle, motorcycle, bicycle, or pedestrian, is no longer detected ahead."

33.     Apparently, this includes situations where the computer believes, rightly or wrongly, that the driver is commanding full throttle acceleration directly into fixed objects immediately in front of the vehicle.  Tesla has designed and manufactured a vehicle that is capable of accelerating from zero to 60 miles per hour in 2.9 seconds – acceleration that was previously achievable only in a select number of exotic sports cars –

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

and equipped the vehicle with the ability to sense objects in its path and brake automatically to prevent or minimize frontal impacts, but Tesla has programmed these systems to allow the Model S and Model X to engage full throttle acceleration into fixed objects, such as walls, fences, and beams, that are in the direct path and immediate proximity of the vehicle.

34.   Despite repeated instances of Tesla drivers reporting uncommanded full power acceleration while parking, Tesla has failed to develop and implement computer algorithms that would eliminate the danger of full power acceleration into fixed objects. This failure to provide a programming fix is especially confounding for a vehicle that knows when it is located at the driver's home and is being parked in the garage, yet carries out an instruction, regardless of whether through an error by the vehicle control systems or by driver pedal misapplication, to accelerate at full power into the garage wall.

35.   Further, not only has Tesla failed to fix the problems, it has chosen instead to follow in the footsteps of other automobile manufacturers and simply blame the driver. As Toyota Motor Company learned not long ago, blaming the driver for inexplicable and preventable instances of full throttle acceleration is no longer acceptable.  That is especially true for a disruption company that seeks to use technology to make smart and safe vehicles.

## II
## THE PARTIES

36.   Plaintiff Ji Chang Son and his son, Plaintiff K.M.S., are citizens of the Republic of South Korea, who at all times relevant herein were residing in Orange County, California.  On or about August 5, 2016, Plaintiff Ji Chang Son and his wife, Yun Soo Oh, purchased a 2016 Model X from the Tesla Gallery located in Costa Mesa, California.

37.   Prior to, and at the time of, the purchase of his 2016 Tesla Model X, Plaintiff Son was informed by Tesla sales personnel of the various safety features with which the Model X was equipped, including Forward Collision Alert and Emergency Automatic

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

Braking.  It was explained to Plaintiff Son that Automatic Emergency Braking was intended to prevent accidents from happening in the first place and that the collision avoidance features were designed to increase the safety of Model X.

38.     Plaintiff Ji Chang Son was the driver of the Model X when the vehicle experienced uncommanded full power acceleration while he was pulling into the garage of his home in Orange County, California, on September 10, 2016, causing the vehicle to crash through the interior wall of the garage of his home and come to rest in Plaintiff's living room, injuring Plaintiff Ji Chang Son and his son, Plaintiff K.M.S., who was a front seat passenger in the vehicle.

39.     Plaintiff Ghodrat Khansari is a resident of Dana Point, California.  In our about December, 2015, Plaintiff Khansari purchased a 2015 Model S from a Tesla retail store in Costa Mesa, California.

40.     Plaintiff Khansari extensively researched the Tesla Model S prior to his decision to purchase.  Plaintiff Khansari visited the Tesla Sales Center in The Shops at Mission Viejo several times to speak with Tesla sales personnel about the Model S prior to masking his purchase decision.  Plaintiff Khansari intentionally delayed his purchase of a Model S in order to wait for the 2015 Model S to be released because he was told it would be equipped with all the hardware necessary to support the autopilot and other driver-assist features.  The Tesla sales representatives described the Model S to Plaintiff Khansari as the safest car on the road and showed him marketing materials, including a video, demonstrating the safety features of the model S.

41.     Plaintiff Khansari was the driver of the Model S when the vehicle experienced uncommanded full power acceleration while pulling into a parking spot at a gas station on January 26, 2016, in Orange County, California, causing the vehicle to crash into a fixed steel post.

42.     Plaintiff Ali Jarrahi is a resident of Winston-Salem, North Carolina.  On or about October 22, 2016, Plaintiff Jarrahi purchased a 2016 Model X through a Tesla retail store in Charlotte, North Carolina.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

43.     Plaintiff Jarrahi researched the Model X for two years before purchasing the vehicle.  Plaintiff Jarrahi, together with his son, performed extensive research on the on the internet, including on Tesla's website.  Plaintiff Jarrahi also visited the Tesla Sales Center in Charlotte, North Carolina, several times where he was told about the safety of the Model X and its collision avoidance systems, including the Forward Collision Alert and Automatic Emergency Braking.  Plaintiff Jarrahi was exposed to statements in Tesla's online and print marketing materials, and by Tesla sales representatives that the Model X was "the safest, fastest and most capable sport utility vehicle in history and that it was designed to be the safest car on the road.  Plaintiff Jarrahi was on the reservation list for a Model X for 1 to 2 years and performed additional research prior to agree to make the purchase when his Model X became available.  Safety was the primary consideration for Plaintiff Jarrahi in deciding to purchase the Model X.

44.     On December 5, 2016, Plaintiff Jarrahi's wife was the driver of the Model X when the vehicle experienced uncommanded full power acceleration after she had come to a stop while waiting to make a right turn.  As a result of the full power acceleration, she could not negotiate the right hand turn and collided with a vehicle that was also stopped in the left hand turn lane of the road onto which she was attempting to turn.

45.     Plaintiff Michael Tomko is a resident of Columbus, Ohio.  On or about July 28, 2016, Plaintiff Tomko purchased a 2016 Model S from a Tesla retail store in Columbus, Ohio.

46.     Plaintiff Tomko also visited the Tesla retail store in Columbus, Ohio, multiple times while contemplating the purchase of a Model S vehicle, where he was informed about the safety of the Model S.  Safety was a significant consideration for Plaintiff Tomko in deciding to purchase the Model S.

47.     On October 15, 2016, Plaintiff Tomko's spouse was driving the Model S slowly in a parking lot and was preparing to stop when the vehicle experienced uncommanded acceleration, causing the vehicle to surge forward, out of the parking lot and into a wooded area.  On January 20, 2017, Plaintiff Tomko's spouse was again

13

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

driving the Model S in a parking lot and preparing to park when it again experienced uncommanded acceleration and surged forward, jumping a parking block and traveling 50 feet before she was able to bring the vehicle to a stop.

48.     Plaintiff Madhusudhana Shastrula is a resident of Marietta, Georgia.  On or about December 29, 2016, Plaintiff Shastrula leased a Model X through a Tesla retail store in Marietta, Georgia.

49.     Plaintiff Shastrula researched the Tesla Model X prior to his decision to purchase, both through the internet, including Tesla's own website, and by visiting a Tesla Sales Center.  Plaintiff Shastrula was exposed to Tesla statements online and through Tesla sales representatives that the Model X was "the safest, fastest and most capable sport utility vehicle in history" and that it was "designed to be the safest car on the road."  Plaintiff Shastrula was also exposed to Tesla statements online and through Tesla sales representatives that the Model X was equipped with Forward Collision Alert and Automatic Emergency Braking systems designed to prevent accidents from happening in the first place.  The advertised power and safety of the Model X were Plaintiff Shastrula's the primary considerations in deciding to lease the Model X.

50.     On February 27, 2017, Plaintiff Shastrula was driving his Model X in a parking structure at his office.  Plaintiff Shastrula slowed the vehicle and was making a left turn into a parking stall when his Model X experienced uncommanded full power acceleration and collided with a concrete wall.

51.     Plaintiff Kenneth Helman is a resident of Park Ridge, New Jersey.  On or about March 13, 2017, Plaintiff Helman purchased a Model S through a Tesla retail store in Paramus, New Jersey.

52.     Plaintiff Helman researched the Tesla Model S prior to his decision to purchase, both through the internet, including Tesla's own website, and by visiting a Tesla Sales Center.  Plaintiff Helman was exposed to Tesla statements online and through Tesla sales representatives that the Model S was designed to be the safest car on the road.

14

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

53.     On May 17, 2017, Plaintiff Helman's wife was driving his Model S returning home with their 8 year old son from a softball game.  Plaintiff Helman's wife was pulling into the driveway of their home and was about to back into their garage when the Model S experienced uncommanded full power acceleration, travelling approximately 60 feet before Plaintiff Helman's wife was able to bring the vehicle to a stop, feet away from colliding with their neighbor's home.

54.     Plaintiff Bridgette Waldemar is a resident of West Palm Beach, Florida.  On or about July 2015, Plaintiff Waldemar purchased a pre-owned 2014 Tesla Model S through a Tesla retail store in Tampa, Florida.

55.     Plaintiff Waldemar researched the Tesla Model S prior to her decision to purchase, both through the internet, including Tesla's own website, and by visiting a Tesla Sales Center in Palm Beach, Florida.  Plaintiff Waldemar was exposed to Tesla statements online and through Tesla sales representatives that the Model S was the safest car on the road.

56.     On February 14, 2017, Plaintiff Waldemar was driving her Model S while attempting to park her Model S at a Pet Smart in Lake Park, Florida.  Plaintiff Waldemar made a left turn into a parking spot and had her foot on the brake as the vehicle was creeping into the parking spot when she felt the vehicle surge forward.  She applied the break which prevented the car from propelling forward.  After she placed the car in park it jumped a curb, traveled up an embankment and struck a tree.

57.     Defendant Tesla, Inc., is a Delaware corporation with its headquarters located at 3500 Deer Creek Road, Palo Alto, California 94304.

### III

### JURISDICTION AND VENUE

58.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

more than 100 putative class members defined below; and there are numerous members of the proposed class who are citizens of a state different from Tesla.

59.    This Court has personal jurisdiction over Defendant Tesla because its corporate headquarters and primary manufacturing facility are located in California, it conducts substantial business in the District, and because a substantial part of the acts and omissions complained of occurred in the District.

60.    Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events, acts and omissions giving rise to these claims occurred in the Central District of California.

## IV

## FACTUAL BACKGROUND

### A.    Tesla's Development of the Model S and Model X Vehicles

61.    Defendant Tesla, Inc. ("Tesla") designs, develops, manufactures, and sells electric vehicles and electric vehicle powertrain components.  The company also provides services for the development and sale of electric powertrain systems and components, to other automotive manufacturers.  It markets and sells its vehicles through Tesla stores, as well as via the Internet.  As of October 2016, the company operated a network of 99 Tesla Stores and Galleries in the United States, of which 28 are located within California. Tesla was founded in July 2003 and is headquartered in Palo Alto, California.  Tesla claims to use proprietary technology and state-of-the-art manufacturing processes to create one of the safest vehicles on the road today.

62.    Tesla announced the development of the Model S four-door all electric sedan on June 30, 2008.  And on March 26, 2009, Tesla revealed the Model S prototype to the public for the first time.  The first Model S were delivered to buyers in June 2012. Only approximately 2,620 vehicles were delivered in the United States 2012.  In 2013, however, that number would jump to approximately 18,650.

63.    Tesla has also continued to increase the power and performance of the Model S.  In its Fourth Quarter & Full Year 2016 Update, Tesla announced that the

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1   Model S P100D had posted a record setting 0 to 60 miles per hour in 2.275 seconds – the
2   fastest vehicle acceleration ever recorded by Motor Trend, "including million dollar, two-
3   seat, gasoline-powered super cars with almost no cargo space."

4          64.     On February 9, 2012, Tesla announced the development of a full-sized, all
5   electric, luxury crossover SUV called the Model X.  At that time, Tesla announced that
6   "Tesla Model X Performance version will accelerate from 0 to 60 miles per hour in 4.4
7   seconds [making the] Model X faster than many sports cars, including the Porsche 911
8   Carrera."

9          65.     By the time Tesla began deliveries of the Model X to North American
10  consumers, it had increased the power and performance of the Model X beyond Tesla's
11  own projections.  At the time of its introduction, Tesla offered the Model X in two
12  performance packages: 1) P90D that can accelerate from 0 to 60 m.p.h. in 3.8 seconds;
13  and 2) the Ludicrous P90D that can accelerate from 0 to 60 m.p.h. in 3.2 seconds.  The
14  Model X has a top speed of 155 m.p.h.

15         66.     Tesla now offers the Model with a 100 kWh battery that can accelerate the
16  Model X "from zero to 60 miles per hour in as quick as 2.9 seconds."

17  **B.     Tesla Markets the Safety of the Model S and Model X**

18         67.     Tesla markets its Model S sedan as being "designed from the ground up to
19  be the safest car on the road."

20         68.     Beginning in September 2014, all Tesla Model S vehicles were
21  manufactured with a camera mounted at the top of the windshield, forward looking radar,
22  and ultrasonic acoustic location sensors that provide the vehicle's computer with a 360-
23  degree view around the car.  This equipment allowed the Model S to detect road signs,
24  lane markings, obstacles, and other vehicles.

25         69.     In March 2015, Tesla implemented Automatic Emergency Braking as parts
26  of its version 6.2 software update for the Model S.  As described in more detail below,
27  the Automated Emergency Braking was a feature marketed by Tesla as a new "Collision

28

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

Avoidance Assist" feature that automatically engages the brakes to reduce the impact of an unavoidable frontal collision.

70.    Beginning in October 2016, Tesla upgraded this hardware in all new Model S vehicles to include 8 surround cameras and 12 ultrasonic sensors.

71.    Equal with its staggering performance, Tesla marketed the Model X as being "designed to be the safest car on the road," with every Model X coming "standard with automatic emergency braking and side collision avoidance to prevent accidents from happening in the first place."

72.    Every Model X is equipped with "a forward-looking camera, radar, and 360 degree sonar sensors to enable advanced autopilot features."



Driver Assistance Components

A Model X equipped with Driver Assistance features includes the following components that actively monitor the surrounding roadway:

1.   Ultrasonic sensors are located near the front and rear bumpers.
2.   A forward looking camera is mounted on the windshield above the rear view mirror.
3.   Radar is mounted in the front grill.

Driver Assistance vehicles also include high precision electrically-assisted braking and steering systems.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



Note: The exact detection zone may vary depending on environmental conditions.

18    73.    Tesla also promoted its "over-the-air software updates" allowing Tesla to

19  "regularly improve the sophistication of these features, enabling increasingly capable

20  safety and convenience features."

21    74.    Tesla equips the Model X with a pair of safety features called "Forward

22  Collision Warning" and "Automatic Emergency Braking."  As described in the Model X

23  Owner's Manual:

24        [T]he following collision avoidance features are designed to
          increase the safety of you and your passengers:

25        •    Forward Collision Warning provides visual and audible
26             warnings in situations where there is a high risk of a
               frontal collision . . . .

27        •    Automatic Emergency Braking automatically applies
28             braking to reduce the impact of a frontal collision . . . .

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

> The forward looking camera and the radar sensor are designed to determine the distance from any object (vehicle, motorcycle, bicycle, or pedestrian) traveling in front of Model X.  When a frontal collision is considered unavoidable, Automatic Emergency Braking is designed to automatically apply the brakes to reduce the severity of the impact.
>
> When Automatic Emergency Braking applies the brakes, the instrument panel displays a visual warning and you'll hear a chime.  You may also notice abrupt downward movement of the brake pedal.  The brake lights turn on to alert other road users that you are slowing down.
>
> . . .
>
> Automatic Emergency Braking operates only when driving between 5 mph (8 km/h) and 85 mph (140 km/h).
>
> Automatic Emergency Braking does not apply the brakes, or stops applying the brakes, in situations where you are taking action to avoid a potential collision.  For example:
>
> - You turn the steering wheel sharply.
> - You press the accelerator pedal.
> - You press and release the brake pedal.
> - A vehicle, motorcycle, bicycle, or pedestrian, is no longer detected ahead.

75.     With these and other features, Tesla touts the Model X as being "the safest, fastest and most capable sport utility vehicle in history."

**C.     Tesla Is on Notice of SUA Complaints Involving Both its Model S and Model X Vehicles**

76.     NHTSA maintains an online complaint database where consumers can file complaints regarding issues they are experiencing with their vehicle.  Complaints can be entered into the system via the internet, through a toll-free Safety Auto Hotline, by submitting a written vehicle owner questionnaire ("VOQ") or by mailing a letter.  The NHTSA consumer complaints database is considered one of NHTSA's most important sources of field data and is monitored by all major automobile manufacturers, including Tesla, for the purpose of ascertaining field data about the performance of their vehicles.

//

//

//

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

### 1. Model S Reports of Sudden Unintended Acceleration to NHTSA

In September 2013, the first two complaints of sudden unintended acceleration in the Model S were reported to NHTSA.  These were the first of what would become 13 separate reports detailing 14 SUA incidents, in the next 41 months.

77.     The following information was entered into the NHTSA complaint database, and therefore, was available to Tesla, in connection with these seven complaints:

September 24, 2013 **NHTSA ID NUMBER: 10545230**

**Components: VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10545230

**Incident Date** September 21, 2013

**Consumer Location** SAN DIEGO, CA

**Vehicle Identification Number** 5YJSA1CN9DF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

THE CAR WAS GOING AT ABOUT 5 MPH GOING DOWN A SHORT RESIDENTIAL DRIVEWAY. BRAKE WAS CONSTANTLY APPLIED. THE CAR SUDDENLY ACCELERATED. IT HIT A CURB AND THE MIDDLE PORTION OF THE CAR LANDED ON A 4.5 FT HIGH VERTICAL RETAINING WALL. THE WALL IS ONE FOOT AWAY FROM THE CURB. THE FRONT PORTION OF THE CAR WAS HANGING UP IN THE AIR. THE CAR WAS AT ABOUT 45 DEGREE UP AND ABOUT 20 DEGREE TILTED TOWARD THE RIGHT SIDE. AN ENGINEER FROM TESLA SAID THE RECORD SHOWED THE ACCELERATING PEDAL WAS STEPPED ON AND IT ACCELERATED FROM 18% TO 100% IN SPLIT SECOND. HE BLAMED MY WIFE STEPPING ON THE ACCELERATING PEDAL. BUT HE ALSO SAID THERE WAS A BUILT-IN SAFE-GUARD THAT THE ACCELERATOR COULDNOT GO BEYOND 92%. THE STATEMENTS ARE CONTRADICTORY. IF THERE IS A SAFEGUARD THAT THE ACCELERATOR CANNOT GO BEYOUND 92%. THERE WOULD BE NO WAY THAT MY WIFE COULD STEP ON IT 100%. THERE WERE SOME MECHANICAL PROBLEM THAT CAUSED THE ACCELERATOR TO ACCELERATE ON ITS OWN FROM 18% TO 100% IN SPLIT SECOND. *LN UPDATED 12/30/2013 *JS

**1 Associated Product**

**Vehicle**

21

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

| MAKE | MODEL | YEAR |
|---|---|---|
| TESLA | MODEL S | 2013 |

September 26, 2013 **NHTSA ID NUMBER: 10545488**

**Components: VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10545488

**Incident Date** July 29, 2013

**Consumer Location** LAGUNA HILLS, CA

**Vehicle Identification Number** 5YJSA1CN1DF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

I WAS AT A FULL STOP WAITING TO TURN LEFT INTO THE PARKING GARAGE. WHEN IT WAS CLEAR OF ONCOMING TRAFFIC FOR ME TO MAKE THE LEFT TURN. I RELEASED MY FOOT OFF THE BRAKE PEDAL AND THE CAR INSTANTLY SURGED FORWARD VERY FAST AND HIT ANOTHER VEHICLE PARKED IN THE FRONT OF THE GARAGE. THIS ALL HAPPENED SO QUICKLY THAT I DID NOT HAVE TIME TO AVOID THE IMPACT. THE TIME OF OCCURRENCE WAS IN BROAD DAYLIGHT AT ABOUT 6PM PST.

I HAVE DRIVEN THIS CAR FOR ALMOST 10000 MILES PRIOR TO THE ACCIDENT AND KNOW HOW TO HANDLE THE CAR AND UNDERSTAND THE TORQUE THIS CAR HAS. I HAVE MADE THOUSANDS UPON THOUSANDS OF STOPS AND STARTS WITH THIS VEHICLE AND THIS IS THE FIRST TIME THIS HAS EVER HAPPENED. THERE IS NO OTHER TERM TO DESCRIBE THIS OTHER THAN SUDDEN ACCELERATION.

THE LOCAL POLICE DEPARTMENT DISPATCHED AN OFFICER AND NO DRUGS OR ALCOHOL WAS INVOLVED. *JS

TESLA INSTRUCTED THEIR STAFF TO NOT COMMUNICATE WITH ME ABOUT THIS ACCIDENT. *JS

**1 Associated Product**

**Vehicle**

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL S | 2013 |

September 29, 2014 **NHTSA ID NUMBER: 10639849**

**Components: VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10639849

**Incident Date** July 19, 2014

**Consumer Location** BAKERSFIELD, CA

**Vehicle Identification Number** 5YJSA1H13EF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

TL* THE CONTACT OWNS A 2014 TESLA MODEL S. WHILE PULLING INTO A PARKING SPACE. THE VEHICLE SURGED FORWARD. JUMPED THE CURB. AND CRASHED INTO A BUILDING. A POLICE REPORT WAS FILED. THERE WERE NO INJURIES. THE VEHICLE WAS TOWED TO AN IMPOUND LOT. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 1,200.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL S | 2014 |

September 29, 2014 **NHTSA ID NUMBER: 10639935**

23

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

**Components: VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10639935

**Incident Date** July 19, 2014

**Consumer Location** BAKERSFIELD, CA

**Vehicle Identification Number** 5YJSA1H13EF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 1**

**DEATHS 0**

I PULLED SLOWLY IN TO A PARKING SPOT & MY CAR WAS AT A STOP POSITION
JUST READY TO PUSH PARK BUTTON. WITHIN A SPLIT OF A SECOND. MY CAR
(TESLA) JUMPED THE CURB AND TRAVELED 5' OF SIDEWALK BREAKING A GLASS
WALL & TRAVELING THROUGH A RESTAURANT BREAKING TABLES & CHAIRS
WITHIN COUPLE OF SECONDS W/O ME ACCELERATING THE PEDAL. BRAKE PEDAL
WAS APPLIED BY ME HALF WAY THROUGH THE RESTAURANT BEFORE THE CAR
STOPPED. NO SERIOUS INJURIES TO ANYONE. TESLA WAS NOTIFIED & THIS IS THE
LOG FILE DATA WORD BY WORD FROM THEM. ?AT THE TIME OF THE INCIDENT
THAT RESULTED IN DAMAGE TO YOUR VEHICLE. YOU INCREASED THE
ACCELERATOR PEDAL POSITION FROM 1% TO 50% IN LESS THAN ONE SECOND
WITHOUT DEPRESSING THE BRAKE PEDAL. ONE SECOND LATER. YOU INCREASED
THE ACCELERATOR PEDAL TO 100% WITHOUT DEPRESSING THE BRAKE PEDAL.
ONE SECOND LATER. YOU CONTINUED DEPRESSING THE ACCELERATOR PEDAL AT
100% WITHOUT DEPRESSING THE PEDAL: HOWEVER. THE VEHICLE'S TRACTION
CONTROL ENGAGED & THEREFORE LIMITED THE VEHICLE'S TORQUE DESPITE THE
FACT YOU WERE DEPRESSING THE ACCELERATOR PEDAL AT 100% UNTIL YOU
DEPRESSED THE BRAKE PEDAL IN THE FOLLOWING SECOND.? INSUFFICIENT
INFORMATION PROVIDED BY TESLA. HOW MUCH WAS THE ACCELERATOR PEDAL
DEPRESSED? SPEED OF THE CAR? DISTANCE TRAVEL? HOW DOES THIS PROVE THAT
THIS IS NOT SUDDEN ACCELERATION? THE LOG DOES PROVE THAT I WAS AT A
STOP. MY CAR WILL BE TOTALED BUT IS STILL SITTING AT STORAGE WITH
INSURANCE COMPANY FOR A SHORT PERIOD OF TIME. MANY ACCIDENTS WITH
TESLA HAS OCCURRED. EVEN JUST LIKE MINE IN TO A RESTAURANT(
HTTP://INSIDEEVS.COM/TESLA-MODEL-S-CRASHES-THROUGH-RESTAURANT-
DRIVER-BLAMES-IT-ON-UNINTENDED-ACCELERATION/)
(HTTP://WWW.MOTORAUTHORITY.COM/NEWS/1087171_TESLA-MODEL-S-
UNINTENDED-ACCELERATION-COMPLAINT-FILED-WITH-NHTSA.) THEY CAN'T ALL
BE DRIVERS FAULT. NHTSA NEEDS TO INVESTIGATE THE BOX IN THE CAR BEFORE
FATAL INJURIES OCCUR. PUBLIC SAFETY SHOULD BE THE PRIORITY. *TR

**1 Associated Product**

**Vehicle**

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL S | 2014 |

August 18, 2015 **NHTSA ID NUMBER: 10749575**

**Components: VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10749575

**Incident Date** August 4, 2015

**Consumer Location** RANCHO SANTA FE, CA

**Vehicle Identification Number** 5YJSA1DN5DF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

TL* THE CONTACT OWNS A 2013 TESLA MODEL S. THE CONTACT STATED THAT THE VEHICLE SUDDENLY ACCELERATED WITHOUT WARNING TO ITS MAXIMUM ACCELERATION RATE AND CRASHED INTO FIVE PARKED VEHICLES. THE DRIVER SIDE OF THE VEHICLE WAS DAMAGED AND THE AIR BAGS DID NOT DEPLOY. THERE WERE NO INJURIES. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED AWAY BY AAA. THE MANUFACTURER WAS NOTIFIED BUT WAS UNABLE TO ADVISE THE CONTACT OF THE CAUSE OF THE FAILURE. THE FAILURE MILEAGE WAS 9,021.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL S | 2013 |

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

December 15, 2015 **NHTSA ID NUMBER: 10810457**

**Components: VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10810457

**Incident Date** November 25, 2015

**Consumer Location** COPPELL, TX

**Vehicle Identification Number** 5YJSA1S28FF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

ON THE AFTERNOON OF NOVEMBER 25. 2015. I WAS DRIVING INTO A STRIP MALL PARKING LOT. I WAS GOING TO PULL INTO ONE OF THOSE SPACES WHERE YOU CAN PARK PERPENDICULAR TO A SIDEWALK CURB AND THE SIDEWALK LEADS UP TO THE STORE FRONTS.

WHEN APPROACHING THE PARKING SPACE. THE CAR WAS ALREADY IN REGENERATIVE BRAKING MODE. AND ACCORDING TO TESLA'S LOGS. THE CAR SLOWED DOWN TO 3.5 MPH. SINCE THE CAR HAD ENOUGH MOMENTUM TO ROLL INTO THE SPACE ON ITS OWN. MY FOOT WAS NOT ON THE ACCELERATOR OR THE BRAKE PEDAL. MY FOOT WAS UP RESTING ON ITS HEEL. READY TO TAP THE BRAKE WHEN IT GOT CLOSE ENOUGH TO THE CURB.

WHILE THE CAR WAS COASTING INTO THE SPACE THE MOTOR WAS VERY QUIET. ALL OF A SUDDEN. I HEARD A "WHIRRING" SOUND FROM THE MOTOR. I DON'T KNOW HOW BETTER TO DESCRIBE IT. THAN TO SAY IT WAS ALMOST LIKE THE MOTOR WENT FROM A STATE OF SLUMBER TO A FULL STATE OF AWARENESS.

I BELIEVE THE MOTOR WAS "WHIRRING" LOUDLY FOR ABOUT A SECOND BEFORE THE CAR TOOK OFF AT SUCH A FAST PACE AND WOUND UP HITTING A BRICK WALL. IT HAPPENED SO QUICKLY. I DIDN'T HAVE ANY TIME TO REACT. AFTER THE IMPACT. I DIDN'T EVEN KNOW THE AIRBAGS DEPLOYED UNTIL I OPENED MY EYES AND SAW THE DEFLATED AIRBAGS IN THE CAR. IT LOOKED LIKE THE CAR JUMPED THE CURB. HIT THE BRICK WALL. BOUNCED BACKWARDS FROM THE IMPACT AND LANDED BACK INTO THE PARKING SPACE.

ACCORDING TO TESLA'S LOGS. THE DATA READS THAT THE PEDAL WAS DEPRESSED DOWN TO 97% AND THE CAUSE OF THE ACCIDENT WAS DUE TO DRIVER ERROR. I STAND FIRMLY BY MY STATEMENT THAT MY FOOT WAS NOT ON EITHER THE ACCELERATOR OR THE BRAKE PEDAL WHEN THE CAR ACCELERATED. DATA MAY SHOW THERE WAS PEDAL DEPRESSION BUT I DID NOT DO THE DEPRESSING. THIS WAS DUE TO UNINTENDED ACCELERATION BY THE CAR.

**1 Associated Product**

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

| Vehicle | | |
|---------|---|---|
| **MAKE** | **MODEL** | **YEAR** |
| TESLA | MODEL S | 2015 |

February 15, 2016 **NHTSA ID NUMBER: 10836289**

**Components: VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10836289

**Incident Date** September 14, 2015

**Consumer Location** SEATTLE, WA

**Vehicle Identification Number** 5YJSA3H12EF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

DRIVER PURCHASED A 2014 TESLA MODEL S CAR IN JUNE 2015 FROM THE HANGZHOU CHINA DEALERSHIP. THIS CAR WAS DRIVEN MODERATELY IN THE FOLLOWING MONTHS. IN SEPTEMBER 14. 2015. THE CAR WAS BEING DRIVEN WITHIN A SMALL. ENCLOSED HOUSING COMPOUND. THE CAR WAS GOING VERY SLOW AS THE DRIVER WAS TURNING TO EXIT THE COMPOUND THROUGH A GATED ENTRANCE. THE CAR SUDDENLY ACCELERATED WITHOUT THE DRIVER'S ASSISTANCE AND DROVE THROUGH THE TRAFFIC GATE BEFORE THE DRIVER WAS ABLE TO OUICKLY BREAK AND BRING THE CAR TO A STOP.

ELECTRONIC RECORDS ACCESSED ON SEPTEMBER 15. 2015 REVEALED THE FOLLOWING INFORMATION: THE CAR WAS ORIGINALLY BEING DRIVEN AT 4.7 KM/HR WITH THE ACCELERATION PEDAL DEPRESSED AT 2.8%. WITHIN ONE SECOND. THE ACCELERATION PEDAL WENT FROM BEING DEPRESSED 2.8% TO 84.8% AND THE CAR INCREASED TO 10.75 KM/HR. DURING THE FOLLOWING SECOND. THE CAR'S RECORDS SHOW THE ACCELERATION PEDAL TO CONTINUE TO BE COMPRESSED AT 84% WITH THE SPEED INCREASING TO 18.35 KM/HR. BUT WITH THE BREAK PEDAL ALSO BEING SIMULTANEOUSLY COMPRESSED. IN THE SUBSEOUENT SECOND. THE ANTI-LOCK BRAKES INITIATED. AND THE CAR WAS BROUGHT TO A STOP A SECOND LATER.

WE REJECT THE DEALERSHIP'S DECISION THAT THIS WAS DRIVER'S ERROR. IN

27

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

SUCH A NARROW ENVIRONMENT AS THE HOUSING COMPOUND. AND DURING A SLOW AND CONTROLLED TURN, THERE THE DRIVER HAD NO REASON TO PUT SIGNIFICANT PRESSURE ON THE ACCELERATION PEDAL AS THE RECORDS SHOW – WHETHER INTENTIONAL OR UNINTENTIONAL. WE ALSO FEEL THAT IT WOULD HAVE BEEN DIFFICULT FOR THE DRIVER TO PUSH BOTH THE ACCELERATOR AND BREAK PEDAL TO SUCH A DEGREE SIMULTANEOUSLY. THEREFORE. WE BELIEVE THAT THE CAR EXPERIENCED AN UNINTENDED ACCELERATION. WHICH WAS NOT OF THE DRIVER'S CAUSING.

THERE HAVE BEEN MANY SIMILAR REPORTS OF TESLA MODEL S UNINTENDED ACCELERATION CRASHES IN CHINA. WE FEEL THAT THIS IS A SERIOUS SAFETY HAZARD WHICH NEEDS TO BE FURTHER INVESTIGATED.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL S | 2014 |

May 10, 2016 **NHTSA ID NUMBER: 10864163**

**Components: VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10864163

**Incident Date** May 6, 2016

**Consumer Location** FREDERICK, MD

**Vehicle Identification Number** 5YJSA1E13GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

UNINTENDED ACCELERATION OCCURRED ON 2 SEPARATE OCCASIONS WITH 2 DIFFERENT DRIVERS WITHIN 2 WEEKS. MODEL S 70D

INCIDENT 1: MY WIFE WAS AT A STOP SIGN. SHE REMOVED HER FOOT FROM THE BRAKE AND BEFORE APPLYING THE ACCELERATOR THE CAR SURGED FORWARD AGGRESSIVELY. SINCE HER FOOT NEVER TOUCHED THE ACCELERATOR SHE WAS

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

ABLE TO APPLY THE BRAKE AND STOP WITHIN 8-10 FEET. SHE WAS VISIBLY SHAKEN WHEN SHE GOT HOME BUT, REGRETTABLY, NO REPORT WAS FILED.

INCIDENT 2: ABOUT 2 WEEKS LATER, MAY 6, I WAS PULLING INTO MY GARAGE WITH MY WIFE AND BABY IN THE VEHICLE. 2-3 FEET FROM THE THE GARAGE WALL (IN CREEP MODE) I GENTLY TOUCHED THE BRAKE TO COME TO A STOP. AT THAT POINT THE CAR SURGED FORWARD VERY AGGRESSIVELY. I IMMEDIATELY APPLIED HEAVY BRAKE AND WAS ABLE TO STOP THE CAR IN A FEW FEET (SINCE MY FOOT WAS ALREADY OVER THE BRAKE PEDAL). THE FRONT END HIT THE GARAGE WALL AND PENETRATED 10-12 INCHES CAUSING DRYWALL DAMAGE AND SIGNIFICANT DAMAGE TO OUR POWDER ROOM ON THE OTHER SIDE.

A REPORT WITH TESLA WAS FILED IMMEDIATELY. LOGS WERE DOWLOADED AND SHOW THAT THE ACCELERATOR WAS DEPRESSED TO 97% POWER IN LESS THAN A SECOND AND THAT IT WAS DRIVER ERROR. MY WIFE AND I HAVE A COMBINED 48 YEARS OF ACCIDENT FREE DRIVING AND NEITHER OF US HAVE EVER MISTAKEN CONTROL PEDALS OR HAVE EVER FLOORED A GAS PEDAL IN A SECOND.

MY WIFE IS 37, HEALTHY AND A PHYSICIAN. I AM A HEALTHY 42 YEAR OLD PILOT. WE CAN BOTH SAY WITH 100% CERTAINTY THAT NEITHER INCIDENT WAS DRIVER ERROR. TESLA HAS A SERIOUS UNINTENDED ACCELERATION PROBLEM ALSO MADE EVIDENT BY THE OTHER COMPLAINTS FILED ON NHTSA. ALL OF WHICH SEEM TO FALL UNDER SIMILAR OPERATING PARAMETERS.

WE NOW HAVE A $90,000 CAR SITTING IN OUR GARAGE THAT IS UNSAFE FOR MY FAMILY. IT SEEMS TESLA IS GOING THE ROUTE OF WAITING FOR INJURY AND DEATHS TO OCCUR BEFORE THEY ACKNOWLEDGE THIS SAFETY DEFECT.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL S | 2016 |

May 11, 2016 **NHTSA ID NUMBER: 10864353**

**Components: VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10864353

**Incident Date** May 11, 2016

**Consumer Location** DENHAM SPRINGS, LA

**Vehicle Identification Number** 5YJSA1E23FF****

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

WHILE DRIVING SLOWLY ~5MPH IN A WAL MART PARKING LOT. MY WIFE WENT TO PULL INTO A PARKING SPOT. SHE TOOK HER FOOT OFF THE ACCELERATOR PEDAL AND THE CAR ACCELERATED "FULLY" ALMOST HITTING THE CAR IN FRONT. MY WIFE HAD TO SLAM ON THE BRAKES TO PREVENT AN ACCIDENT.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL S | 2015 |

June 17, 2016 **NHTSA ID NUMBER: 10874744**

**Components: VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10874744

**Incident Date** June 10, 2016

**Consumer Location** SAN JOSE, CA

**Vehicle Identification Number** 5YJSA1E28FF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

UNINTENDED. UNCOMMANDED ACCELERATION. CAR RAPIDLY ACCELERATED TO MAXIMUM THROTTLE DURING PARKING MANEUVER IN A PARKING STRUCTURE. I WAS TRAVELLING AT 3MPH. CAR ACCELERATED, HIT ANOTHER VEHICLE AND A

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

WALL. TESLA CLAIMS VEHICLE LOGS SHOW THROTTLE WAS COMMANDED TO 98%. AT NO TIME DID I HAVE ANYTHING BUT A LIGHT TOUCH ON THE THROTTLE.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL S | 2015 |

September 27, 2016 **NHTSA ID NUMBER: 10910065**

**Components: VEHICLE SPEED CONTROL, SERVICE BRAKES, AIR BAGS**

**NHTSA ID Number:** 10910065

**Incident Date** September 16, 2016

**Consumer Location** TUCSON, AZ

**Vehicle Identification Number** SYJSA1H4SFF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 1**

**DEATHS 0**

I DROVE THE CAR INTO A PARKING SPACE AT THE SCHOOL (DESERT CHRISTIAN ELEMENTARY) IN TUCSON ARIZONA ON SEPT 16TH ABOUT 11:05 AM. WHEN THE CAR ACCELERATED ON ITS OWN (UNINTENDED ACCELERATION) AND CRASHED INTO 2 PARKED VEHICLES AND AIRBAGS DEPLOYED AND I SUSTAINED A FRACTURE OF MY RIGHT ARM REQUIRING SURGERY. ALSO MY CAR (THE TESLA MODEL S) WAS DAMAGED AND THE TWO OTHER PARKED CARS.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL S | 2015 |

February 6, 2017 **NHTSA ID NUMBER: 10949955**

**Components: SERVICE BRAKES, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10949955

**Incident Date** January 5, 2017

**Consumer Location** MOUNTAIN VIEW, CA

**Vehicle Identification Number** 5YJSA1E1XGF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 2**

**DEATHS 0**

I WAS STOPPED AT A STOP LIGHT ON MY WAY TO WORK AROUND 8AM ON A VERY CROWDED CITY STREET. AS THE LIGHT TURNED GREEN. I SLOWLY PRESSED ON THE GAS TO MOVE FORWARD AND THE CAR TOOK OFF AT TOP SPEED. I HIT THE BRAKE BUT THE CAR DID NOT RESPOND - IT DID NOT SLOW DOWN OR STOP. NOR DID ANY ALARM. EITHER VISUAL OR AUDITORY. GO OFF INSIDE THE CAR. TO HIT THE CAR IN FRONT OF ME AND THEN HAD TO SWERVE TO AVOID HITTING DOZENS OF CARS IN MY PATH. I GRAZED PAST A LAMP POST. ANOTHER CAR AND FINALLY CRASHED INTO A TREE.

**<u>1 Associated Product</u>**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL S | 2016 |

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

February 9, 2017 **NHTSA ID NUMBER: 10953656**

**Components: VEHICLE SPEED CONTROL, UNKNOWN OR OTHER**

**NHTSA ID Number:** 10953656

**Incident Date** December 23, 2016

**Consumer Location** PASADENA, CA

**Vehicle Identification Number** 5YJSA1E22GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 3**

**DEATHS 0**

COMPLAINANT. A PHYSICIAN. HAD TAKEN DELIVERY OF A 2016 TESLA MODEL S ON DECEMBER 22. 2016. THE FOLLOWING DAY. SHE PULLED INTO HER DRIVEWAY AT HOME AND BROUGHT THE VEHICLE TO A STOP. WITH HER FOOT STILL ON THE BRAKE. THE VEHICLE SUDDENLY ACCELERATED ON ITS OWN FROM A STOPPED POSITION TO SPEEDS OF BETWEEN 40-60 MPH. THE VEHICLE PLOWED THROUGH THE BRICKS OF HER DRIVEWAY. THROUGH SHRUBS SEPARATING HER PROPERTY FROM HER NEIGHBOR. WENT THROUGH AND ACROSS THE NEIGHBOR'S YARD AND ONTO AND ADJOINING STREET, WHERE IT COLLIDED WITH A TRUCK.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL S | 2016 |

## 2.     Model X Reports of Sudden Unintended Acceleration to NHTSA

78.     On June 7, 2016, less than six months into the full scale distribution of the Model X, the first complaint of sudden unintended acceleration was registered in NHTSA's complaint database.  This would be the first of seven separate complaints that would be entered in the NHTSA complaint database in just the next four months.

79.     The following information was entered into the NHTSA complaint database, and therefore, was available to Tesla, in connection with these seven complaints:

June 7, 2016 **NHTSA ID NUMBER: 10873117**

**Components: STRUCTURE, VEHICLE SPEED CONTROL, AIR BAGS**

**NHTSA ID Number:** 10873117

**Incident Date** June 4, 2016

**Consumer Location** ANAHEIM, CA

**Vehicle Identification Number** 5YJXCAE46GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 1**

**DEATHS 0**

OUR 5 DAY OLD TESLA X WHILE ENTERING A PARKING STALL SUDDENLY AND UNEXPECTEDLY ACCELERATED AT HIGH SPEED ON ITS OWN CLIMBING OVER GRASS AND AND CRASHED INTO A BUILDING.

THE AIRBAGS DEPLOYED AND MY WIFE'S ARMS HAVE BURN MARKS AS A CONSEQUENCE.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

August 4, 2016 **NHTSA ID NUMBER: 10893066**

**Components: VEHICLE SPEED CONTROL, AIR BAGS**

**NHTSA ID Number:** 10893066

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

**Incident Date** July 28, 2016

**Consumer Location** DANBURY, CT

**Vehicle Identification Number** 5YJXCAE29GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

TL* THE CONTACT OWNS A 2016 TESLA MODEL X. WHILE ATTEMPTING TO PARK, THE VEHICLE INDEPENDENTLY ACCELERATED WITHOUT WARNING AND CRASHED INTO A WOOD FENCE. THE AIR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES. A POLICE REPORT WAS FILED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 49.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

August 24, 2016 **NHTSA ID NUMBER: 10898260**

**Components: STRUCTURE. VEHICLE SPEED CONTROL. FUEL/PROPULSION SYSTEM**

**NHTSA ID Number:** 10898260

**Incident Date** July 8, 2016

**Consumer Location** ORMOND BEACH, FL

**Vehicle Identification Number** 5YJXCBE21GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

**INJURIES 0**

**DEATHS 0**

ON JULY 8TH 2016. AT 9:37 A.M.. WHILE SLOWLY PULLING INTO A PARKING SPACE AT CREEKWOOD DOG PARK IN BRADENTON FLORIDA. MY TESLA MODEL X SUDDENLY ACCELERATED UNDER ITS OWN VOLITION. DROVE OVER A PARKING STOP. OVER A FIVE INCH CURB. AND THEN HIT AND KNOCKED OVER A CONCRETE LIGHT POLE. ALL THIS HAPPENED IN A DISTANCE OF LESS THAN TWENTY FEET. TESLA WAS NOTIFIED IMMEDIATELY AND THE CAR WAS TAKEN TO DIMMITT COLLISION CENTER IN CLEARWATER. FLORIDA. THE SERVICE MANAGER AT TESLA OF TAMPA. TOLD ME VERBALLY THE LOG FROM THE EDR SAYS THE CAR WAS TRAVELING AT 6 MPH. THEN THE ACCELERATOR WAS ADVANCED TO OVER 50% AND THEN TO 87%. THE CAR ACCELERATED TO 20 MPH AND ABRUPTLY STOPPED. I DENIED THIS SCENARIO AND ASKED FOR A SUPERVISOR. TESLA'S SOUTHEAST REGIONAL MANAGER MET US AT THE BODY SHOP. HE HANDED ME A LETTER THAT HAD DIFFERENT EDR RESULTS-VEHICLE SPEED WAS 7 MPH. PEDAL POSITION WENT FROM 3.2% TO 15.6% TO 100% AND CAR WENT TO 14 MPH. THE FIRST REPAIR ESTIMATE SHOWED ACTUAL MILEAGE AS 205 AND A SUBSEQUENT REPAIR ESTIMATE SHOWS THE ACTUAL MILEAGE AS 1425. THESE FIGURES ARE INACCURATE SINCE I HAD LOOKED AT THE ODOMETER SEVERAL DAYS BEFORE THE ACCIDENT AND THE MILEAGE WAS OVER 1800. I INFORMED TESLA THAT I AM POSITIVE BEYOND A SHADOW OF DOUBT THAT THE CAR'S ELECTRONIC THROTTLE COMPUTER WAS RESPONSIBLE FOR THE ACCIDENT WHICH THEY DENY. THIS APPEARS TO BE THE INDUSTRY STANDARD SINCE EXPERTS WILL TESTIFY THAT ALTHOUGH A CAR IS RESPONSIBLE FOR UNINTENDED ACCELERATION THERE WILL BE NO TRACEABLE EVIDENCE OF THAT RESPONSIBILITY AND THEREFORE THE MANUFACTURER HAS PLAUSIBLE DENIABILITY. TESLAS ARE UNDERGOING UNINTENDED ACCELERATION AT A RATE MORE FREQUENT THAN 1/5.000 VEHICLES MANUFACTURED. THIS IS WAY MORE FREQUENT THAN THE INDUSTRY STANDARD. GENERAL MOTORS HAS AN EXTREMELY GOOD RATE OF 1/123,000 VEHICLES.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

September 19, 2016 **NHTSA ID NUMBER: 10908051**

**Components: VEHICLE SPEED CONTROL, UNKNOWN OR OTHER**

**NHTSA ID Number:** 10908051

**Incident Date** May 23, 2016

**Consumer Location** BOSTON, MA

36

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

**Vehicle Identification Number** 5YJXCAE24GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

WHILE TURNING LEFT TO ENTER A VERY NARROW GARAGE ENTRANCE I NEEDED TO DETERMINE WHETHER OR NOT I HAD TO STRAIGHTEN OUT BEFORE PULLING IN OR IF MY LEFT TURN WAS TIGHT ENOUGH TO PULL IN WITHOUT REVERSING TO STRAIGHTEN OUT. I SAW THAT I WAS IN THE POSITION THAT I COULD CONTINUE INTO THE GARAGE AND LIGHTLY PRESSED THE ACCELERATOR TO FINISH MY TURN INTO THE GARAGE.

IT WAS AT THIS POINT THAT THE CAR ACCELERATED WITH EXTREME FORCE AND WITHIN A SECOND SLAMMED INTO A LARGE CONCRETE POLE THAT WAS JUST INSIDE THE GARAGE TO THE LEFT.

I NEVER FELT THE CAR SLOW IN THAT MOMENT. ONLY SPEED UP AND I BELIEVE THE CAR SLAMMED INTO THE POLE WHILE ACCELERATING AND WOULD HAVE CONTINUED TO ACCELERATE IF NOT FOR THE LARGE POLE.

I DID NOT HAVE EITHER FOOT DEPRESSED ON EITHER PEDAL AT THE MOMENT OF COLLISION. THE AIR BAGS DID NOT DEPLOY. BUT THERE WAS VERY SEVERE DAMAGE TO THE FRONT END OF THE CAR THAT WILL BE AT LEAST $25K.

I WAS NOT ON THE PHONE OR DISTRACTED IN ANY WAY. I WAS DRIVING CAREFULLY AND PAYING FULL ATTENTION. THIS IS NOT A CASE OF MISTAKEN PEDAL BECAUSE I WAS INTENDING TO ACCELERATE.

AT FIRST TESLA TOLD US OVER THE PHONE THAT THEIR LOGS SHOW THAT THE DRIVER PRESSED THE PEDAL 100% AND THEN TAPPED THE BRAKE BEFORE IMPACT. THIS EXPLANATION SOUNDED PHYSICALLY IMPOSSIBLE BECAUSE THE DISTANCE COVERED WAS LESS THAN 3 CAR LENGTHS. A MONTH LATER TESLA SENT A LETTER STATING THE DRIVER PRESSED THE ACCELERATOR 100% UNTIL THE VEHICLE SENSED A CRASH. TESLA DID NOT RESPOND TO OUR QUERY ABOUT WHY THEIR LOG STORY HAD CHANGED. TESLA ALSO REFUSED TO PROVIDE DATA ABOUT ACCELERATOR/BRAKE PERCENTAGE AND CAR SPEED FOR THE CAR EARLIER IN THE DAY. IF A DRIVER IS PRESSING THE PEDAL 100% IT IS A VERY DELIBERATE ACTION.

THIS IS A FAILURE OF THE ACCELERATOR AND THE AUTOMATIC BRAKING. THE CAR ACCELERATED ON ITS OWN AND CRASHED FULL FORCE INTO A LARGE CONCRETE POLE.

**1 Associated Product**

**Vehicle**

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.: 8:16-cv-02282-JVS-KES

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

September 26, 2016 **NHTSA ID NUMBER: 10909588**

**Components: VEHICLE SPEED CONTROL, WHEELS**

**NHTSA ID Number:** 10909588

**Incident Date** September 22, 2016

**Consumer Location** LEXINGTON, MA

**Vehicle Identification Number** 5YJXCAE44GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

I WAS GOING UP BY DRIVEWAY WAITING FOR MY GARAGE DOOR TO OPEN. I TOOK MY FOOT OFF THE ACCELERATOR AND WAS SLOWING DOWN WITHOUT HITTING THE BREAKS WAITING FOR THE GARAGE DOOR TO OPEN. THE CAR TOOK OFF THROUGH THE GARAGE DOOR AND HIT MY HUSBANDS CAR SITTING IN THE GARAGE.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

September 30, 2016 **NHTSA ID NUMBER: 10910701**

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

**Components: VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10910701

**Incident Date** September 29, 2016

**Consumer Location** BEVERLEY HILLS, CA

**Vehicle Identification Number** UNKNOWN****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

HERE IS A NEW COMPLAINT OF UNINTENDED ACCELERATION WHICH SOUNDS HIGHLY CREDIBLE.

HTTPS://FORUMS.TESLA.COM/FORUM/FORUMS/NEAR-ACCIDENT-WHILE-PARKING-JUST-NOW

NEAR ACCIDENT WHILE PARKING JUST NOW!!

SUBMITTED BY HAMI05 ON SEPTEMBER 29. 2016

WOW GUYS I'VE SEEN THOSE UNINTENDED ACCELERATION THREADS BEFORE AND THOUGHT THAT THE PERSON MUST'VE ALWAYS DEFINITELY BEEN PUNCHING THE ACCELERATOR. BUT I'M NOT SO SURE AFTER WHAT JUST HAPPENED TO ME. PLEASE HEAR ME OUT. BECAUSE MY SON AND I ARE FRANKLY QUITE SCARED RIGHT NOW. I WAS DRIVING INTO A PARKING LOT AND I JUST LIGHTLY PRESSED THE ACCELERATOR AS I WAS GOING UNDER 10 MPH AND ALL OF A SUDDEN MY X WENT FROM 10 TO OVER 40 MPH IN ABOUT 2 SECONDS! I DIDN'T EVEN KNOW THE THING COULD ACCELERATE THAT FAST! CAN ANYBODY EXPLAIN WHAT THE HECK MIGHT'VE HAPPENED? THANKFULLY I WAS ABOUT 100 FT AWAY FROM ANY OTHER CARS BEFORE IT TOOK OFF. SO I HAD TIME TO SLAM THE BRAKES WITHOUT PANICKING. OTHERWISE WHO KNOWS WHAT WOULD'VE HAPPENED... I'M CERTAIN THAT I DIDN'T ACCIDENTALLY ACTIVATE CRUISE CONTROL/AP. SO THERE'S NO WAY THAT COULD'VE CAUSED IT. MY THEORY IS THAT THE REGENERATIVE BRAKES MAY HAVE GIVEN ME A SUDDEN KICK OF ACCELERATION? I'M KIND OF WORRIED NOW. BECAUSE THIS IS ACTUALLY THE SECOND TIME SOMETHING LIKE THIS HAS HAPPENED TO ME. EXCEPT THE FIRST TIME WASN'T NEARLY AS BAD. SO I DIDN'T ASK YOU GUYS ABOUT IT. HAS ANYONE ELSE HAD THIS HAPPEN TO THEM? DO YOU GUYS THINK I NEED TO ASK MY TESLA TEAM ABOUT THIS?

THIS HASN'T ONLY HAPPENED TO ME WHILE GETTING READY TO PARK. THE FIRST TIME I WAS JUST ACCELERATING UP TO 25 IN MY NEIGHBORHOOD AND IT SUDDENLY WENT TO 35 IN A SECOND BUT I WASN'T TOO BOTHERED ABOUT THAT. BECAUSE IT WAS JUST A 10MPH BURST. BUT THIS ONE THAT HAPPENED TO ME TODAY WAS THE CAR JUMPING 30 MPH... I'VE DRIVEN THIS CAR FOR 2000 MILES NOW AND IT'S THE ONLY CAR I'VE BEEN DRIVING REALLY OVER THE PAST MONTH.

---

39

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

October 12, 2016 **NHTSA ID NUMBER: 10915633**

**Components: SERVICE BRAKES, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10915633

**Incident Date** October 7, 2016

**Consumer Location** SANTA CLARA, CA

**Vehicle Identification Number** 5YJXCBE22GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

TL* THE CONTACT OWNS A 2016 TESLA MODEL X. WHILE PARKING THE VEHICLE. IT ACCELERATED WHILE DEPRESSING THE BRAKE PEDAL AND CRASHED INTO A FENCE. THERE WERE NO INJURIES AND A POLICE REPORT WAS NOT FILED. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURE WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 1,000.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

40

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

December 14, 2016 **NHTSA ID NUMBER: 10935272**

**Components: AIR BAGS, STRUCTURE, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10935272

**Incident Date** December 13, 2016

**Consumer Location** AMAGANSETT, NY

**Vehicle Identification Number** 5YJXCBE24GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 1**

**DEATHS 0**

I HAD PULLED INTO A PARKING LOT. PROCEEDED TO PULL INTO A SPOT ADJACENT TO A CINDER BLOCK BUILDING. I HAD MY FOOT LIGHTLY ON THE GAS PEDAL. THEN AS I MADE THE TURN INTO THE SPOT. MY FOOT WAS ON THE BRAKE - THE CAR LURCHED FORWARD AND SPED UP AND THE BRAKES DID NOT STOP IT. I WENT RIGHT INTO THE CONCRETE BUILDING. HEAD ON - AIR BAGS DEPLOYED. THE FRONT END CRUSHED AND THE 2 AIRBAGS ON THE DRIVERS SIDE DEPLOYED AND WERE SMOKING. I READ ON LINE THAT THERE HAVE BEEN NUMEROUS INCIDENCES OF THIS HAPPENING WITH THE TESLA. SPONTANEOUS ACCELERATION WITH MY FOOT NOT ON THE GAS PEDAL. THE CAR WOULD NOT STOP BY THE BRAKES! I COULD HAVE BEEN SERIOUSLY INJURED OR HIT ANOTHER PERSONA OR VEHICLE. THE CAR HIT THE BUILDING AS WELL AS A NATURAL GAS PIPE THAT WAS RUNNING ALONG THE BUILDINGS SIDE AT THE LEVEL OF MY FRONT BUMPER. I FILED A POLICE REPORT.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

January 3, 2017 **NHTSA ID NUMBER: 10939234**

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

**Components: STRUCTURE. FUEL/PROPULSION SYSTEM. VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10939234

**Incident Date** November 2, 2016

**Consumer Location** SANTA CLARA, CA

**Vehicle Identification Number** 5YJXCAE27GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

WHILE TURNING LEFT INTO A PARKING SPOT AT A VERY SLOW SPEED. THE CAR SUDDENLY ACCELERATED WITH EXTREME FORCE. IT RAN OVER A CURB AND COLLIDED WITH A TREE AND A TRUCK. THERE WAS ONLY LIGHT PRESSURE ON THE ACCELERATOR. THE AUTOMATIC BRAKING AND THE AIRBAGS DID NOT DEPLOY. THERE WAS OVER $18 000 DAMAGE TO THE TWO VEHICLES AND THE TESLA MODEL X IS NOT DRIVEABLE WITHOUT REPAIRS.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

February 27, 2017 **NHTSA ID NUMBER: 10957394**

**Components: STRUCTURE, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10957394

**Incident Date** February 27, 2017

**Consumer Location** MARIETTA, GA

**Vehicle Identification Number** 5YJXCAE24GF****

**Summary of Complaint**

42

**CRASH Yes**

**FIRE No**

**INJURIES 1**

**DEATHS 0**

TAKATA RECALL

I DROVE MY TESLA MODEL X 2016 TODAY TO WORK AND WHEN I WAS ABOUT TO PARK THE CAR IN THE PARKING LOT (AROUND 6 MILES PER HOUR MAY BE) IT SUDDENLY ACCELERATED AND HIT THE CONCRETE WALL AND BOUNCED BACK AROUND 8 FEET. SINCE IT WAS FOR PARKING I CAN SURELY SAY THAT I DID NOT ACCELERATE THE CAR. THE STEERING AIR BAGS AND KNEE AIR BAGS CAME OFF AND ALSO THE PASSENGER SIDE KNEE AIR BAGS CAME OFF AS WELL. I SEARCHED ONLINE AND THERE SEEMS TO BE A CLASS ACTION SUITE ON THIS ISSUE BUT TESLA IS NOT ACCEPTING IT AS THE GLITCH IN THEIR SOFTWARE OR SOME OTHER COMPONENT. I FELT LIKE THE ACCELERATOR GOT PRESSED THE WAY WHEN THE CAR WAS IN CRUISE MODE. UNLESS I WANTED TO HIT THE WALL INTENTIONALLY THERE WAS NO NEED FOR ME TO PRESS THE ACCELERATOR TO SPEED FROM ALMOST ZERO TO WHATEVER THE HIGH SPEED IT ATTAINED AT THE TIME OF HITTING THE WALL.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TESLA | MODEL X | 2016 |

### a.   Reports of Sudden Unintended Acceleration are 71 Times Higher Than Historical Rates for Other Vehicles

80.     Tesla sold approximately 18,240 Model X vehicles in the United States from September 29, 2015, through the end of 2016. The Model X having at least 13 reported (either to NHTSA or directly to Tesla) sudden unintended acceleration incidents in the first full year of production with only 18,240 vehicles on the road (most of which have been on the road significantly less than one year) results in a rate of 71 SUA events per 100,000 vehicles per year.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

81.     In contrast, according to a study by NASA of unintended acceleration reports to the National Highway Traffic Administration from 2000 to 2010, from there was 1 SUA accident per 100,000 vehicles per year.  Accordingly, the Model X is reported to experience 71 times as many SUA events as the average number of reported SUA events for other manufacturers.

82.     Rather than correcting the defect through programmatic logic, Tesla's strategy in responding to SUA complaints has been to blame any report of SUA on driver error.  For example, Tesla was notified by the Model X owner of the first SUA incident registered in the NHTSA complaints database.  After performing an investigation, Tesla seized on a nearly identical conclusion that it reached in its investigation of Plaintiffs' incident, stating:

> "We analyzed the vehicle logs which confirm that this Model X was operating correctly under manual control and was never in Autopilot or cruise control at the time of the incident or in the minutes before. Data shows that the vehicle was traveling at 6 mph when the accelerator pedal was abruptly increased to 100%. Consistent with the driver's actions, the vehicle applied torque and accelerated as instructed. Safety is the top priority at Tesla and we engineer and build our cars with this foremost in mind. We are pleased that the driver is ok and ask our customers to exercise safe behavior when using our vehicles."

**D.     Plaintiff Ji Chang Son's and Plaintiff K.M.S.'s SUA Event**

83.     On September 10, 2016, Plaintiff Ji Chang Son was returning to his Orange County home in his Model X with his son, Plaintiff K.M.S.

84.     At approximately 8:00 p.m., Plaintiff Ji Chang Son slowed his vehicle to approximately 6 miles per hour and made a left turn easing into his driveway the garage after the door opened, just as he had done on countless prior occasions.

85.     Except that this time, as Plaintiff Ji Chang Son slowly pulled into his driveway, the vehicle spontaneously began to accelerate at full power, jerking forward and crashing through the interior wall of the garage, destroying several wooden support beams in the wall and a steel sewer pipe, among other things, and coming to rest in

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1  Plaintiffs' living room.  Plaintiffs were trapped inside the vehicle because the doors were
2  pinned shut by wood support beams and other debris.



18      86.    Smoke began flooding the interior of the vehicle.  Plaintiff Ji Chang Son and
19  Plaintiff K.M.S. feared that the Model X was about to explode and burst into flames and
20  furiously sought other ways to escape the vehicle.

21      87.    Fortunately, Plaintiff K.M.S. managed to open a window and crawl out.  He
22  ran to the other side of the Model X and struggled to force the window open on Plaintiff
23  Ji Chang Son's side of the vehicle.  As the smoke continued to fill the Model X's interior
24  and now the entire living room, Plaintiff K.M.S. courageously helped his father Plaintiff
25  Ji Chang Son escape from the vehicle.

26      88.    Both Plaintiff Son and Plaintiff K.M.S. suffered lacerations to their legs in
27  the collision, with residual scarring.

28

45

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

89.   Plaintiff Son immediately notified Tesla of the incident and that the vehicle had exhibit sudden unintended acceleration as he was pulling into his driveway.  Tesla responded by stating that the "vehicle responded correctly to driver-applied inputs" even though acknowledging that Mr. Son had made a left turn into his driveway at less than 5 miles per hour, and had not been pressing the accelerator pedal for the preceding 4 seconds, when the computer registered a 100% acceleration command the second before the vehicle collided with the back wall of his garage.

**E.   Plaintiff Khansari's SUA Event**

90.   On January 26, 2016, Plaintiff Khansari was the driver of his Model S traveling north on Interstate 5 in Orange County, California.  Plaintiff Khansari exited the interstate at Oso Parkway and pulled into a Union 76 gas station.

91.   Plaintiff Khansari drove past the gas pumps intended to park his vehicle in a parking spot.  As Plaintiff Khansari neared the parking spot, his Model S experienced uncommanded full power acceleration, causing the vehicle to crash into a fixed barrier.



92.   Plaintiff Khansari notified Tesla of the incident and that he believed the vehicle had exhibited sudden unintended acceleration.  However, Tesla told Plaintiff

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

Khansari that the vehicle "was operating within normal operating parameters, did not exhibit any unexpected behavior and appropriately responded to the driver-applied inputs." Tesla acknowledged that the vehicle had been traveling at 4 miles per hour when the vehicles onboard computer determined that the accelerator went from 0% to 100% in under three seconds, accelerating the vehicle to 16 miles per hour at the point of impact, and then continued to register 100% acceleration for 4 seconds *after* the impact. Tesla maintained that the acceleration was the result of driver input even while acknowledging that the brakes were pressed intermittently at the same time that the vehicle was exhibiting full acceleration.

**F.    Plaintiff Jarrahi's Vehicle's SUA Event**

93.    On December 5, 2016, Plaintiff Jarrahi's wife was the driver of Plaintiff Jarrahi's Model X near the Forsyth County Day School.  Plaintiff Jarrahi's wife was driving westbound on State Route 1001 and had come to a complete stop as she waited for a crossing guard to allow her to make a right turn onto PVA Forsyth County Day.  As she commenced her turn, the vehicle accelerated at what felt like full power.  As a result of the powerful acceleration, Plaintiff Jarrahi's wife was unable to negotiate the right hand turn and her vehicle collided with a vehicle in the southbound lanes of PVA Forsyth Country Day, causing her air bags to deploy.

94.    Plaintiff Jarrahi notified Tesla of the SUA incident.

**G.    Plaintiff Tomko's Vehicle's SUA Incidents**

95.    On October 15, 2016, Plaintiff Tomko's wife was driving Plaintiff Tomko's Model S slowly in a parking lot and was preparing to stop when the vehicle experienced uncommanded acceleration, causing the vehicle to surge forward, out of the parking lot and into a wooded area.  The vehicle suffered minor damage and had to be towed out of the wooded area.

96.    Plaintiff Tomko notified Tesla of the SUA incident.  After uploading data from the vehicle's onboard computers, Tesla informed Plaintiff Tomko that the vehicle had gone from 0% acceleration to 100% acceleration, that the vehicle had not

47

malfunctioned, and concluded that the vehicle was appropriately responding to driver input.

97.   On January 20, 2017, Plaintiff Tomko's spouse was again driving Plaintiff Tomko's Model S in a parking lot and preparing to park when it again experienced uncommanded acceleration and surged forward, jumping a parking block and traveling 50 feet before she was able to bring the vehicle to a stop.

98.   Plaintiff Tomko again notified Tesla of the SUA incident.  After uploading data from the vehicle's onboard computers and inspecting the vehicle, Tesla again informed Plaintiff Tomko that the car had gone from 4% acceleration to 100% acceleration and again attributed the incident to driver input.

**H.   Plaintiff Shastrula's SUA Incident**

99.   On February 27, 2017, Plaintiff Shastrula was driving his Model X in a parking structure at his office.  As Plaintiff Shastrula approached his intended parking spot, he slowed the vehicle and made a left turn into the parking spot.  He completed the left turn and was advancing the last few feet into the spot when his Model X experienced uncommanded full power acceleration and collided with a concrete wall, causing the airbags to deploy.



SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16   **I.    Plaintiff Helman's Vehicle's SUA Incident**

17        100.    On May 17, 2017, Plaintiff Helman's wife was driving his Model S

18   returning home with their 8 year old son from a softball game.  Plaintiff Helman's wife

19   was pulling into the driveway of their home and was about to back into their garage when

20   the Model S experienced uncommanded full power acceleration, travelling approximately

21   60 feet before Plaintiff Helman's wife was able to bring the vehicle to a stop, feet away

22   from colliding with their neighbor's home.

23   **J.    Plaintiff Waldemar's SUA Incident**

24        101.    On February 14, 2017, Plaintiff Waldemar was driving her Model S while

25   attempting to park her Model S at a Pet Smart in Lake Park, Florida.  Plaintiff Waldemar

26   made a left turn into a parking spot and had her foot on the brake as the vehicle was

27   creeping into the parking spot when she felt the vehicle surge forward.  She applied the

28

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

break which prevented the car from propelling forward.  After she placed the car in park it jumped a curb, traveled up an embankment and struck a tree.

**K.      Defects in the Model S and Model X**

102.    The Model S and Model X – designed, manufactured, sold, and/or distributed by Tesla – are defective in that they are vulnerable to incidents of sudden full power unintended acceleration.  Regardless of the many root causes that may create this overarching defect, an effective automated emergency braking and/or automated throttle control mechanism would serve as a fail-safe design feature to prevent and/or minimize the risk of injury, harm, or damage to Tesla owners, occupants, and the general public form SUA events.

103.    Tesla has been aware that SUA events are occurring at a markedly high rate in the Model S, and an even more alarmingly high rate in the Model X, but has not, as of yet, explained the root cause of this dramatic increase in SUA events.  This made it critically important for Tesla to design and implement an adequate fail-safe system to prevent or mitigate the consequences of SUA.  Therefore, the Model S and the Model X are defective for their lack of an adequate fail safe system as a result of the following:

   a. The inability of the Automated Emergency Braking system to be able to detect when full acceleration has not been commanded by the driver;

   b. The Automated Emergency Braking system's identification of 100% accelerator pedal input as an indicator of positive driver control that automatically renders the Automated Emergency Braking system inoperative;

   c. The lack of a proper fail-safe logic that will cut power and apply the brakes when the vehicle registers full power acceleration when there are fixed objects in the immediate path of the vehicle; and

   d. The lack of a proper fault detection system that would recognize an SUA event beyond the maximum design tolerance and respond by shutting down the throttle.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

104.   Finally, the faults and defects in Tesla's safety critical vehicle electronic systems described above show that Tesla has not properly tested or validated these systems individually or as a whole and, moreover, Tesla has failed to verify that all electronic vehicle systems capable of requesting torque are robust enough, and contain sufficient redundancies to prevent SUA events.

**L.    Choice of Law Allegations**

105.   Tesla is headquartered in Palo Alto, California.

106.   Tesla does substantial business in California, with a significant portion of the proposed Nationwide Class located in California.  For example, approximately 45% of all new Tesla Model S sales come from California, and it is expected a similar percentage of Model X sales are from California.

107.   Tesla's main automobile manufacturing facility is also located in California.

108.   In addition, the conduct that forms the basis for each and every Class members' claims against Tesla emanated from Tesla's headquarters in California.

**V**

**CLASS ALLEGATIONS**

109.   Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar bring this action on their own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure, Rules 23(a), 23(b)(2), and/or 23(b)(3).

> **Nationwide Class:**
>
> All persons or entities in the United States who are current owners and/or lessees of a Tesla Model S or Model X, and all former owners and/or lessees of a Tesla Model S or Model X that experienced a sudden unintended acceleration incident.

110.   In the alternative to the Nationwide Class, and pursuant to Federal Rules of Civil Procedure, Rule 23(c)(5), Plaintiffs allege a separate class for the following States based on the applicable laws set forth in the alternate state law counts, only in the event that the Court declines to certify the Nationwide Class above.  Specifically, the state classes consist of the following:

**California Class:**

All persons or entities in California who are current owners and/or lessees of a Tesla Model S or Model X for primarily personal, family or household purposes, as defined by California Civil Code § 1791(a).

**Florida:**

All persons or entities in Florida who are current owners and/or lessees of a Tesla Model S or Model X and all former owners and/or lessees of a Tesla Model S or Model X that experienced a sudden unintended acceleration incident.

**Georgia Class:**

All persons or entities in Georgia who are current owners and/or lessees of a Tesla Model S or Model X and all former owners and/or lessees of a Tesla Model S or Model X that experienced a sudden unintended acceleration incident.

**New Jersey:**

All persons or entities in New Jersey who are current owners and/or lessees of a Tesla Model S or Model X and all former owners and/or lessees of a Tesla Model S or Model X that experienced a sudden unintended acceleration incident.

**North Carolina:**

All persons or entities in North Carolina who are current owners and/or lessees of a Tesla Model S or Model X and all former owners and/or lessees of a Tesla Model S or Model X that experienced a sudden unintended acceleration incident.

**Ohio:**

All persons or entities in Ohio who are current owners and/or lessees of a Tesla Model S or Model X and all former owners and/or lessees of a Tesla Model S or Model X that experienced a sudden unintended acceleration incident.

111.    Together, the Nationwide Class and the State Classes shall be collectively referred to herein as the "Class."  Excluded from the Class are Defendant Tesla, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case.  Plaintiffs reserve the right to modify, change, or expand the Class definitions based on discovery and further investigation.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

112.   <u>Numerosity</u>:  Upon information and belief, the Class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Tesla and obtainable by Plaintiff Son only through the discovery process, Plaintiffs believe, and on that basis allege, that thousands of Class Vehicles have been sold and leased in each of the States that are the subject of the Class.

113.   <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class Members.  These common legal and factual questions include, but are not limited to, whether:

a. the Model S and Model X vehicles were sold or leased with a defect;

b. Tesla knew of the defect but failed to disclose the problem and its consequences to its customers;

c. Tesla misrepresented the safety of the Model S and Model X;

d. Tesla's misrepresentations and omissions regarding the safety of its vehicles were likely to deceive a reasonable person in violation of the CLRA;

e. Tesla violated the unlawful prong of the UCL by its violation of the CLRA;

f. Tesla violated the unlawful prong of the UCL by its violation of federal laws;

g. misrepresentations and omissions regarding the safety of its vehicles were likely to deceive a reasonable person in violation of the fraudulent prong of the UCL;

h. reasonable consumers would consider the defect or its consequences to be material;

i. Tesla breached its express warranties regarding the safety and quality of its vehicles;

j. Tesla breached the implied warranty of merchantability because its vehicles were not fit for their ordinary purpose due to their sudden acceleration defect;

k. Tesla has failed to provide free repairs as required by its New Vehicle Limited Warranty and/or Powertrain Warranty;

l. Tesla should be required to disclose the existence of the defect;

m. Whether Plaintiffs and Class Members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, and/or other relief; and

n. The amount and nature of such relief to be awarded to Plaintiffs and the National Class.

114.   <u>Typicality</u>:  All of Plaintiffs' claims are typical of the claims of the Class inasmuch as Plaintiffs purchased or leased a Tesla Model S or Model X vehicle, and each member of the Class either purchased or leased a Tesla Model S or Model X vehicle. Furthermore, Plaintiffs and all members of the Class sustained the same monetary and economic injuries of being sold a vehicle with a safety defect that is still present in the vehicle, and the remedy sought for each is the same in which Plaintiffs seek a fix of the defect for themselves and all absent Class Members.

115.   <u>Adequacy</u>:  Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

116.   <u>Superiority</u>:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant Tesla's conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

court.  Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Tesla's vehicle identification numbers, warranty claims, registration records, and database of complaints.

117.   Tesla has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

# VI

## CAUSES OF ACTION

## <u>FIRST CAUSE OF ACTION</u>

## VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA") (Cal. Civ. Code § 1750, *et seq*.)

### (By Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar on Behalf of the Nationwide Class or, Alternatively, by Plaintiffs Son and Khansari on Behalf of the California Class)

118.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

119.   Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class.  Alternatively, Plaintiffs Son and Khansari bring this claim on behalf of themselves and on behalf of the Members of the California Class.

120.   Tesla is a "person" as that term is defined in California Civil Code § 1761(c).

121.   Plaintiffs and the Class are "consumers" as that term is defined in California Civil Code § 1761(d).

122.   Plaintiff Son previously filed an affidavit that shows venue in this District is proper, to the extent such an affidavit is required by California Civil Code § 1780(d).

123.   Tesla engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs

and Class Members that the Model S and Model X suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem).  These acts and practices violate, at a minimum, the following sections of the CLRA:

> (a)(1) Representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have
>
> (a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;
>
> (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;
>
> (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and
>
> (a)(9) Advertising goods and services with the intent not to sell them as advertised.

124.   Tesla's unfair or deceptive acts or practices occurred repeatedly in Tesla's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

125.   Tesla knew that the Model S and Model X were defectively designed or manufactured, unsafe, and were not suitable for their intended use.

126.   Tesla knew that the Model S and Model X were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use of regulating power and vehicle speed based on driver commands.  Tesla nevertheless failed to warn Plaintiffs and the Class Members about these inherent dangers despite having a duty to do so.

127.   Tesla owed Plaintiffs a duty to disclose the defective nature of Model S and Model X, including the dangerous risk of throttle control failure and the lack of adequate fail-safe mechanisms, because they:

> a.   Possessed exclusive knowledge of the defects rendering the Model S and Model X inherently more dangerous and unreliable than similar vehicles;

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

    b.  Intentionally concealed the hazardous situation with Model S and Model X vehicles through its deceptive marketing campaign designed to hide the life-threatening problems from Plaintiffs; and/or

    c.  Made incomplete representations about the safety and reliability of the Model S and Model X generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

128.   The Model S and Model X vehicles pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to incidents of SUA.

129.   Whether or not a vehicle (a) accelerates only when commanded to do so; (b) accelerates when it knows will result in the collision with a fixed object; and (c) does not activate the automatic emergency braking when it receives instructions to accelerate 100% into a fixed object are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.

130.   When Plaintiffs bought leased their Model S or Model X for personal, family, and household purposes, they reasonably expected the vehicle would (a) not accelerate unless commanded to do so by application of the accelerator pedal or other driver controlled means; (b) would not accelerate when it knows will result in the collision with a fixed object; and (c) would not deactivate the automatic emergency braking when it receives instructions to accelerate 100% into a fixed object.

131.   Tesla's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Defective Vehicles.

132.   As a result of its violations of the CLRA detailed above, Tesla caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs.  Plaintiffs and the Class Members currently own or lease, or within the class period have owned or leased, a Model S or Model X that is defective and inherently unsafe.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

133. Plaintiffs risk irreparable injury as a result of Tesla's acts and omissions in violation of the CLRA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

134. The facts concealed or not disclosed by Tesla to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Model S or Model X or pay a lesser price. Had Plaintiffs and the Class Members known about the defective nature of the Model S and Model X, they would not have purchased the Model S or Model X or would have paid less for them.

135. Plaintiffs' and the other Class Members' injuries were proximately caused by Tesla's fraudulent and deceptive business practices.

136. Pursuant to the provisions of California Civil Code section 1782(a), Plaintiffs sent a notice letter to Tesla providing it with the opportunity to correct its business practices. To Plaintiffs' knowledge, Tesla no action within the specified notice period.

137. Pursuant to California Civil Code section 1780, Plaintiffs, on behalf of themselves and Members of the California Class, seek an order from this Court enjoining Tesla from continuing the methods, acts and practices set forth above and a declaration that Tesla's conduct violates the Consumers Legal Remedies Act, as well as actual and punitive damages and attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200)
### (By Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar on Behalf of the Nationwide Class or, Alternatively, by Plaintiffs Son and Khansari on Behalf of the California Class)

138. Plaintiffs' and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

139.   Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class.  Alternatively, Plaintiffs Son and Khansari bring this claim on behalf of themselves and on behalf of the Members of the California Class.

140.   The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

141.   Tesla has violated the unlawful prong of section 17200 by its violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, as set forth in Count I by the acts and practices set forth in this Complaint.

142.   Tesla has violated the fraudulent prong of section 17200 because the misrepresentations and omissions regarding the safety and reliability of its vehicles as set forth in this Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

143.   Tesla has violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint, including the manufacture and sale of vehicles with a sudden acceleration defect that lack effective fail-safe mechanism, and Tesla's failure to adequately investigate, disclose and remedy, offend established public policy, and because the harm they cause to consumers greatly outweighs any benefits associated with those practices.

144.   Tesla's conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiff from making fully informed decisions about whether to purchase or lease Defective Vehicles and/or the price to be paid to purchase or lease Defective Vehicles.

145.   Plaintiffs have suffered an injury in fact, including the loss of money or property, as a result of Tesla's unfair, unlawful and/or deceptive practices.  As set forth in the allegations concerning Plaintiffs, in purchasing or leasing their Tesla vehicle, Plaintiffs relied on the misrepresentations and/or omissions of Tesla with respect of the

safety and reliability of the vehicles.  Tesla's representations turned out not to be true because the vehicles can unexpectedly and dangerously accelerate out of the drivers' control.  Had Plaintiffs known this, they would not have purchased or leased their Tesla vehicles and/or paid as much for them.

146.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Tesla's business.  Tesla's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

147.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Tesla from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Class any money Tesla acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in California Business & Professions Code section 17203 and California Civil Code section 3345; and for such other relief set forth below.

### <u>THIRD CAUSE OF ACTION</u>

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

### (Cal. Bus. & Prof. Code §§ 17500, *et seq*.)

### (By Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar on Behalf of the Nationwide Class or, Alternatively, by Plaintiffs Son and Khansari on Behalf of the California Class)

148.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

149.   Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class.  Alternatively, Plaintiffs Son and Khansari bring this claim on behalf of themselves and on behalf of the Members of the California Class.

150.   California Business & Professions Code section 17500 states:  "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or

60

personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

151.    Tesla caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Tesla, to be untrue and misleading to consumers, including Plaintiffs and the other Class Members.

152.    Tesla has violated section 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of its Model S and Model X vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

153.    Plaintiffs and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Tesla's unfair, unlawful, and/or deceptive practices.  In purchasing and/or leasing their Tesla vehicles, Plaintiffs and the other Class Members relied on the misrepresentations and/or omissions of Tesla with respect to the safety and reliability of such vehicles.  Tesla's representations turned out not to be true because the vehicles can unexpectedly and dangerously accelerate out of the driver's control; the vehicle implements a full acceleration instruction into a fixed object; and fails to use automatic emergency braking.  Had Plaintiffs and the other Class Members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them.  Accordingly, Plaintiffs and the other Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

154.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Tesla's business.  Tesla's wrongful conduct is part of a pattern or

1  generalized course of conduct that is still perpetuated and repeated, both in the state of
2  California and nationwide.

3       155.   Plaintiffs, individually and on behalf of the other Class Members, requests
4  that this Court enter such orders or judgments as may be necessary to enjoin Tesla from
5  continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs
6  and the other Class Members any money Tesla acquired by unfair competition, including
7  restitution and/or restitutionary disgorgement, and for such other relief set forth below.

8                          **FOURTH CAUSE OF ACTION**
9                         **BREACH OF EXPRESS WARRANTY**
10  **(By Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar**
11  **on Behalf of the Nationwide Class or, Alternatively, by Plaintiffs Son and Khansari**
12                      **on Behalf of the California Class)**

13      156.   Plaintiffs and the Class incorporate by reference each preceding and
14  succeeding paragraph as though fully set forth at length herein.

15      157.   Plaintiffs Son, Khansari, Jarrahi, Tomko, Shastrula, Helman, and Waldemar
16  bring this claim on behalf of themselves and on behalf of the Members of the Nationwide
17  Class.  Alternatively, Plaintiffs Son and Khansari bring this claim on behalf of
18  themselves and on behalf of the Members of the California Class.

19      158.    Tesla is and was at all relevant times a merchant with respect to motor
20  vehicles under California Commercial Code section 2104.

21      159.   Tesla provided all purchasers and lessees of the Model S and Model X
22  vehicles with the express warranties described herein, which became part of the basis of
23  the bargain.  Accordingly, Tesla's warranties are express warranties under state law.

24      160.   Furthermore, Plaintiffs were exposed to Tesla's marketing statements
25  regarding the safety of the Class Vehicles and the collision avoidance systems with which
26  they were equipped, as alleged in paragraphs 18, 37, 40, 43, 46, 49, 52, 55, and 67-75,
27  herein.

28

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

161.   In the course of selling its vehicles, Tesla expressly warranted in writing that its vehicles were covered by a Basic Warranty that provided: "the Basic Vehicle Limited Warranty covers the repair or replacement necessary to correct defects in the materials or workmanship of any parts manufactured or supplied by Tesla that occur under normal use for a period of 4 years or 50,000 miles (80,000 km), whichever comes first."

162.   The parts affected by the defect, including the accelerator control system and Automated Emergency Braking, were distributed by Tesla in the Model S and Model X and are covered by the warranties Tesla provided to all purchasers and lessors of its vehicles.

163.   Tesla breached these warranties by selling and leasing Class Vehicles with the defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

164.   Plaintiffs notified Tesla of the breach within a reasonable time, and/or were not required to do so because affording Tesla a reasonable opportunity to cure its breach of written warranty would have been futile.  Tesla also knew of the defect and yet have chosen to conceal it and to fail to comply with their warranty obligations.

165.   As a direct and proximate cause of Tesla's breach, Plaintiffs and the other Class Members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value.

166.   Tesla's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Tesla's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

167.   The time limits contained in Tesla's warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Class.  Among other things, Plaintiffs and Class Members had no meaningful choice in determining

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1  these time limitations the terms of which unreasonably favored Tesla.  A gross disparity
2  in bargaining power existed between Tesla and the Class Members, and Tesla knew or
3  should have known that the Model S and Model X vehicles were defective at the time of
4  sale and would fail well before the expiration of their useful life.

5       168.   Plaintiffs and the Class Members have complied with all obligations under
6  the warranty, or otherwise have been excused from performance of said obligations as a
7  result of Tesla's conduct described herein.

**FIFTH CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTY**

**(By Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar**
**on Behalf of the Nationwide Class or, Alternatively, by Plaintiffs Son and Khansari**
**on Behalf of the California Class, and by Plaintiff K.M.S., individually)**

13       169.   Plaintiffs and the Class incorporate by reference each preceding and
14  succeeding paragraph as though fully set forth at length herein.

15       170.   Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar
16  bring this claim on behalf of themselves and on behalf of the Members of the Nationwide
17  Class.  Alternatively, Plaintiffs Son and Khansari bring this claim on behalf of
18  themselves and on behalf of the Members of the California Class.  Plaintiff K.M.S brings
19  this claims individually.

20       171.   Tesla was at all relevant times the manufacturer, distributor, warrantor,
21  and/or seller of the Model S and Model X.  Tesla knew or had reason to know of the
22  specific use for which the Model S and Model X vehicles were purchased.

23       172.   Tesla provided Plaintiffs and the other Class members with an implied
24  warranty that the Model S and Model X and any parts thereof are merchantable and fit for
25  the ordinary purposes for which they were sold.  However, the Model S and Model X
26  vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe
27  transportation at the time of sale or thereafter because, *inter alia*, there are defects in the
28  vehicle control systems that permit sudden unintended acceleration to occur; the vehicles

64

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

do not have an adequate fail-safe to protect against such SUA events; and the accelerator control system was not adequately tested to prevent SUA events.

173.   Therefore, the Model S and Model X vehicles are not fit for their particular purpose of providing safe and reliable transportation.

174.   Tesla impliedly warranted that the Model S and Model X vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Model S and Model X vehicles manufactured, supplied, distributed, and/or sold by Tesla were safe and reliable for providing transportation and would not experience premature and catastrophic failure; and (ii) a warranty that the Model S and Model X would be fit for its intended use while being operated.

175.   Contrary to the applicable implied warranties, the Model S and Model X vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the other Class Members with reliable, durable, and safe transportation.  Instead, the Model S and Model X suffer from a defective design(s) and/or manufacturing defect(s).

176.   Tesla's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

177.   After Plaintiffs received the injuries complained of herein, notice was given by Plaintiffs to Tesla, by direct communication with Tesla as well as by the filing of this lawsuit in the time and in the manner and in the form prescribed by law, of the breach of said implied warranty.

178.   As a legal and proximate result of the breach of said implied warranty, Plaintiffs sustained the damages herein set forth.

179.   Plaintiffs and Class Members are, therefore, entitled to damages in an amount to be proven at the time of trial.

//

//

//

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

# SIXTH CAUSE OF ACTION

## BREACH OF WRITTEN WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. § 2301, *et seq.*)

**(By Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar on Behalf of the Nationwide Class or, Alternatively, by Plaintiffs Son and Khansari on Behalf of the California Class)**

180. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

181. Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class. Alternatively, Plaintiffs Son and Khansari bring this claim on behalf of themselves and on behalf of the Members of the California Class.

182. Plaintiffs and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

183. Defendant Tesla is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

184. The Model S and Model X vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

185. Tesla's 5 year/60,000 miles Basic Warranty and 10 year/100,000 miles Powertrain Warranty are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

186. Furthermore, Plaintiffs were exposed to Tesla's marketing statements regarding the safety of the Class Vehicles and the collision avoidance systems with which they were equipped, as alleged in paragraphs 18, 37, 40, 43, 46, 49, 52, 55, and 67-75, herein.

187. Tesla breached these warranties as described in more detail above, but generally by not repairing or adjusting the Defective Vehicles' materials and workmanship defects; providing Defective Vehicles not in merchantable condition and

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

which present an unreasonable risk of sudden unintended acceleration and not fit for the ordinary purpose for which vehicles are used; providing Vehicles that were not fully operational, safe, or reliable; and not curing defects and nonconformities once they were identified.

188.   Plaintiffs and Class Members have had sufficient direct dealings with either the Tesla or its agents to establish privity of contract between Plaintiffs and the Class members.  However, privity is also not required because Plaintiffs' and Class Members' Model S and Model X vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

189.   Plaintiffs and the other Class Members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

190.   Defendant Tesla's breach of the express warranties has deprived Plaintiffs and the other Class Members of the benefit of their bargain.

191.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

192.   Tesla has been afforded a reasonable opportunity to cure its breach of the written warranties and/or Plaintiffs and the other Class Members were not required to do so because affording Tesla a reasonable opportunity to cure its breach of written warranties would have been futile.  Tesla was also on notice of the alleged defect from the complaints and service requests it received from Class Members, as well as from its own warranty claims, customer complaint data, and/or parts sales data.

193.   As a direct and proximate cause of Tesla's breach of the written warranties, Plaintiffs and the other Class Members sustained damages and other losses in an amount to be determined at trial.  Defendant Tesla's conduct damaged Plaintiffs and the other Class Members, who are entitled to recover actual damages, consequential damages,

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

## SEVENTH CAUSE OF ACTION

### BREACH OF CONTRACT/COMMON LAW WARRANTY

**(By Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar on Behalf of the Nationwide Class or, Alternatively, by Plaintiffs Son and Khansari on Behalf of the California Class)**

194.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

195.   Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class.  Alternatively, Plaintiffs Son and Khansari bring this claim on behalf of themselves and on behalf of the Members of the California Class. To the extent Tesla's repair or adjust commitment is deemed not to be a warranty under California's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Tesla limited the remedies available to Plaintiffs and the Class Members to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Tesla and/or warranted the quality or nature of those services to Plaintiffs.

196.   Plaintiffs were exposed to Tesla's marketing statements regarding the safety of the Class Vehicles and the collision avoidance systems with which they were equipped, as alleged in paragraphs 18, 37, 40, 43, 46, 49, 52, 55, and 67-75, herein.

197.   Tesla breached this warranty or contract obligation by failing to repair the Model S and Model X evidencing a sudden unintended acceleration problem or to replace them.

198.   As a direct and proximate result of Tesla's breach of contract of common law warranty, Plaintiffs and the Class have been damaged in an amount to be proven at

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1 trial, which shall include, but is not limited to, all compensatory damages, incidental and
2 consequential damages, and other damages allowed by law.

### EIGHTH CAUSE OF ACTION

**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR**
**BREACH OF EXPRESS WARRANTIES**
**(Cal. Civ. Code § 1793.2(d) & 1791.2)**

**(By Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar**
**on Behalf of the Nationwide Class or, Alternatively, by Plaintiffs Son and Khansari**
**on Behalf of the California Class)**

10    199.   Plaintiffs and the Class incorporate by reference each preceding and
11 succeeding paragraph as though fully set forth at length herein.

12    200.   Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar
13 bring this claim on behalf of themselves and on behalf of the Members of the Nationwide
14 Class.  Alternatively, Plaintiffs Son and Khansari bring this claim on behalf of
15 themselves and on behalf of the Members of the California Class.

16    201.   Plaintiffs and the Class Members who purchased or leased the Model S and
17 the Model X in California are "buyers" within the meaning of California Civil Code
18 section 1791.

19    202.   The Tesla vehicles are "consumer goods" within the meaning of California
20 Civil Code section 1791(a).

21    203.   Tesla is a "manufacturer" of the Model S and Model X within the meaning
22 of California Civil Code section 1791(j).

23    204.   Plaintiffs and the Class bought/leased new motor vehicles manufactured by
24 Tesla.

25    205.   Tesla made express warranties to Plaintiffs and the Class within the meaning
26 of California Civil Code sections 1791.2 and 1793.2, both in its warranty manual and
27 advertising, as described above.

28

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

206.   Furthermore, Plaintiffs were exposed to Tesla's marketing statements regarding the safety of the Class Vehicles and the collision avoidance systems with which they were equipped, as alleged in paragraphs 18, 37, 40, 43, 46, 49, 52, 55, and 67-75, herein.

207.   Tesla's Model S and Model X had and continue to have defects that were and continue to be covered by Tesla's express warranties and these defects substantially impair the use, value, and safety of Tesla's vehicles to reasonable consumers like Plaintiffs and the Class.

208.   Plaintiffs and the Class delivered their vehicles to Tesla or its authorized repair facility for repair of the defects and/or notified Tesla in writing of the need for repair of the defects because they reasonably could not deliver the vehicles to Tesla or its authorized repair facility due to fear of unintended acceleration.

209.   Tesla and its authorized repair facilities failed and continue to fail to repair the vehicles to match Tesla's written warranties after a reasonable number of opportunities to do so.

210.   Plaintiffs and the Class Members gave Tesla or its authorized repair facilities at least two opportunities to fix the defects unless only one repair attempt was possible because the vehicle was later destroyed or because Tesla or its authorized repair facility refused to attempt the repair.

211.   Tesla did not promptly replace or buy back the vehicles of Plaintiffs and the Class.

212.   As a result of Tesla's breach of its express warranties, Plaintiffs and the Class received goods whose dangerous condition substantially impairs their value to Plaintiffs and the Class.  Plaintiffs and the Class have been damaged as a result of the products' malfunctioning, and the nonuse of their vehicles.

213.   Pursuant to California Civil Code sections 1793.2 & 1794, Plaintiffs and the Class are entitled to damages and other legal and equitable relief including, at their

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

election, the purchase price of their vehicles, or the overpayment or diminution in value of their vehicles.

## NINTH CAUSE OF ACTION

### VIOLATION OF THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY

### (Cal. Civ. Code §§ 1792, 1791.1, *et seq.*)

### (By Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar on Behalf of the Nationwide Class or, Alternatively, by Plaintiffs Son and Khansari on Behalf of the California Class)

214.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

215.   Plaintiffs Son, Khansari, Shastrula, Jarrahi, Tomko, Helman, and Waldemar bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class.  Alternatively, Plaintiffs Son and Khansari bring this claim on behalf of themselves and on behalf of the Members of the California Class.

216.   At all relevant times hereto, Tesla was the manufacturer, distributor, warrantor, and/or seller of the Model S and Model X.  Tesla knew or should have known of the specific use for which the Model S and Model X vehicles were purchased.

217.   Tesla provided Plaintiffs and the Class Members with an implied warranty that the Model S and Model X vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold.  However, the Model S and Model X vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, there are defects in the vehicle control systems that permit sudden unintended acceleration to occur; the vehicles do not have an adequate fail-safe to protect against such SUA events; and the accelerator control system was not adequately tested.

218.   The Model S and Model X vehicles are not fit for the purpose of providing safe and reliable transportation because of the defect.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

219.   Tesla impliedly warranted that the Model S and Model X vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Model S and Model X vehicles manufactured, supplied, distributed, and/or sold by Tesla were safe and reliable for providing transportation and would not experience premature and catastrophic failure; and (ii) a warranty that the Model S and Model X would be fit for their intended use while being operated.

220.   Contrary to the applicable implied warranties, the Model S and Model X vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the other Class Members with reliable, durable, and safe transportation.  Instead, the Model S and Model X suffer from a defective design(s) and/or manufacturing defect(s).  Tesla's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code sections 1792 and 1791.1.

## TENTH CAUSE OF ACTION
## STRICT PRODUCT LIABILITY
### (By Plaintiffs Son and K.M.S., Individually)

221.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

222.   Plaintiffs Son and K.M.S., individually,  are informed and believe and based thereon allege that Tesla designed, manufactured, researched, tested, assembled, installed, marketed, advertised, distributed, and sold a certain 2016 Tesla Model X, bearing Vehicle Identification Number 5YJXCBE27GF009026 (hereinafter referred to as the "subject vehicle").

223.   At all times relevant hereto, Tesla knew that the subject vehicle would be operated and inhabited by consumers without inspection for defects.

224.   At the time of the collision described above, the subject vehicle was being used in a manner and fashion that was foreseeable by Tesla, and in a manner in which it was intended to be used.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

225.   Tesla designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold the subject vehicle and its component parts and constituents, which was intended by Tesla to be used for the purpose of use as a passenger vehicle, and other related activities.

226.   The subject vehicle was unsafe for its intended use by reason of defects in its manufacture, design, testing, components and constituents, so that it would not safely serve its purpose, but would instead expose the users of said product, and others, to serious injuries because of the failure of Tesla to properly guard and protect the users of the subject vehicle, and others, from the defective design of said product.

227.   Tesla designed the subject vehicle defectively, causing it to fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

228.   The risks inherent in the design of the subject vehicle outweigh significantly any benefits of such design.

229.   Plaintiffs were not aware of the aforementioned defects.

230.   As a legal and proximate result of the aforementioned defects of the subject vehicle, Plaintiffs Son and K.M.S. sustained the injuries and damages set forth herein.

231.   Plaintiffs Son and K.M.S. are, therefore, entitled to damages in an amount to be proven at the time of trial.

## ELEVENTH CAUSE OF ACTION

### NEGLIGENCE

### (By Plaintiffs Son and K.M.S., Individually)

232.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

233.   At all times herein mentioned, Tesla designed, manufactured, assembled, analyzed, recommended, merchandised, advertised, promoted, distributed, supplied, and sold to distributors and retailers for sale, the subject vehicle and/or its component parts.

234.   Tesla owed Plaintiffs Son and K.M.S. a duty to exercise reasonable care in the design, testing, manufacture, assembly, sale, distribution and servicing of the subject vehicle, including a duty to ensure that the subject vehicle did not cause Plaintiffs Son and K.M.S., other users, bystanders, or the public, unnecessary injuries or deaths.

235.   Tesla knew or should have known that the subject vehicle is defectively designed and inherently dangerous and has a propensity to suddenly accelerate, lose control, and cause injuries.

236.   Tesla knew or should have known that the subject vehicle was defectively designed and/or manufactured and was therefore prone to failure under normal driving conditions, potentially causing injuries and/or deaths.

237.   Tesla failed to exercise ordinary care and breached their duties by, among other things:

     a.   Failure to use due care in the manufacture, distribution, design, sale, testing, and servicing of the subject vehicle and its component parts in order to avoid the aforementioned risks to individuals;

     b.   Failure to provide adequate warning of the sudden acceleration problem and its propensity to cause and/or contribute to an accident;

     c.   Failure to incorporate within the vehicle and its design reasonable safeguards and protections against sudden acceleration and the consequences thereof;

     d.   Failure to make timely correction to the design of the subject vehicle to correct the sudden acceleration problems;

     e.   Failure to adequately identify and mitigate the hazards associated with sudden unintended acceleration in accordance with good engineering practices and other ways; and,

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1      f.      Were otherwise careless or negligent.

2      238.   The aforementioned negligent acts and omissions of Tesla were the direct

3   and proximate cause of Plaintiffs' damages.

4      239.   Plaintiffs Son and K.M.S. are, therefore, entitled to damages in an amount to

5   be proven at trial, together with interest thereon and costs.

6                    **TWELFTH CAUSE OF ACTION**

7                         **FAILURE TO WARN**

8            **(By Plaintiffs Son and K.M.S., Individually)**

9      240.   Plaintiffs and the Class incorporate by reference each preceding and

10   succeeding paragraph as though fully set forth at length herein.

11      241.   Tesla knew that the subject vehicle, and its component parts, would be

12   purchased and used without inspection for defects in the design of the vehicle.

13      242.   The subject vehicle was defective when it left the Tesla's control.

14      243.   Tesla knew or should have known of the substantial dangers involved in the

15   reasonably foreseeable use of these vehicles, whose defective design, manufacturing, and

16   lack of sufficient warnings caused them to have an unreasonably dangerous propensity to

17   suffer from sudden unintended acceleration and thereby cause injuries.

18      244.   Tesla failed to adequately warn of the substantial dangers known or

19   knowable at the time of the defective vehicles' design, manufacture, and distribution.

20      245.   Tesla failed to provide adequate warnings, instructions, guidelines or

21   admonitions to members of the consuming public, including Plaintiffs Son and K.M.S.,

22   of the defects, which Tesla knew, or in the exercise of reasonable care should have

23   known, to have existed in the subject vehicle, and its component parts.

24      246.   Tesla knew that these substantial dangers are not readily recognizable to an

25   ordinary consumer and that consumers would purchase and use these products without

26   inspection.

27      247.   At the time of Plaintiffs Son's and K.M.S.'s injuries, the subject vehicle was

28   being used in the manner intended by Tesla, and in a manner that was reasonably

---

75

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1  foreseeable by Tesla as involving substantial danger that was not readily apparent to its
2  users.

3  248.   Plaintiffs Son's and K.M.S.'s damages were the legal and proximate result
4  of the actions and inactions of Tesla, who owed a duty to Plaintiffs in designing,
5  manufacturing, warning about, and distributing the subject vehicle.

**THIRTEENTH CAUSE OF ACTION**

**VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE
PRACTICES ACT**

**(Ga. Code Ann. § 10-1-370,** *et seq.***)**

**(By Plaintiff Shastrula on Behalf of the Georgia Class)**

11  249.   Plaintiffs and the Class incorporate by reference each preceding and
12  succeeding paragraph as though fully set forth at length herein.

13  250.   Plaintiff Shastrula brings this claim on behalf of himself and on behalf of the
14  Members of the Georgia Class.

15  251.   The conduct of Tesla as set forth herein constitutes unfair or deceptive acts
16  or practices, including, but not limited to Tesla's manufacture and sale of vehicles with a
17  sudden acceleration defect that lack other effective fail-safe mechanisms, which Tesla
18  failed to adequately investigate, disclose and remedy, and its misrepresentations and
19  omissions regarding the safety and reliability of its vehicles.

20  252.   Tesla's actions as set forth above occurred in the conduct of trade or
21  commerce.

22  253.   Tesla's actions impact the public interest because Plaintiff Shastrula was
23  injured in exactly the same way as thousands of others purchasing and/or leasing Tesla
24  vehicles as a result of Tesla's generalized course of deception.  All of the wrongful
25  conduct alleged herein occurred, and continues to occur, in the conduct of Tesla's
26  business.

27  254.   Plaintiff Shastrula and the Georgia Class were injured as a result of Tesla's
28  conduct.  Plaintiff Shastrula and the Class Members overpaid for their Defective Vehicles

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

255.   Furthermore, Tesla's failure to acknowledge or correct the defect rendering the Class Vehicles susceptible to sudden unintended acceleration, or to mitigate against the consequences of such events.  An example of this threat of future harm is provided by Plaintiff Tomko's Model S that experienced an incident of sudden unintended acceleration on October 15, 2016, and then experienced a second incident of sudden unintended acceleration three months later, on January 20, 2016.

256.   Tesla is the sole party with exclusive access to the Tesla vehicles' acceleration controls, which are deeply imbedded into the vehicle's own proprietary programing.  Plaintiff Shastrula and the Georgia Class Members have no way of accessing or any means of changing Tesla's programing, electronics, or mechanics and preventing future unintended accelerations.  This is a problem exclusively in the control of Tesla and only it can resolve this problem.

257.   Tesla continues to misrepresent and blame Plaintiffs for Tesla's own safety defects.  Plaintiffs will continue to suffer future harm and potentially serious injuries until the alleged defects are eliminated from the Class Vehicles.

258.   Tesla's conduct proximately caused the injuries to Plaintiff Shastrula and the Class Members.

259.   Tesla is liable to Plaintiff Shastrula and the Class Members for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

260.   Pursuant to Georgia Code Annotated section 10-1-370, Plaintiff Shastrula will serve the Georgia Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

//

//

//

//

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

# FOURTEENTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

### (Ga. Code Ann. § 11-2-313)

### (By Plaintiff Shastrula on Behalf of the Georgia Class)

261.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

262.   Plaintiff Shastrula brings this claim on behalf of himself and on behalf of the Members of the Georgia Class.

263.   Tesla is and was at all relevant times a merchant with respect to motor vehicles.

264.   In the course of selling its vehicles, Tesla expressly warranted in writing that the Vehicles were covered by a Basic Warranty.

265.   Tesla breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Tesla.  Tesla has not repaired or adjusted, and has been unable to repair or adjust, the Vehicles' materials and workmanship defects.

266.   In addition to this Basic Warranty, Tesla expressly warranted several attributes, characteristics and qualities, as set forth above.

267.   These warranties are only a sampling of the numerous warranties that Tesla made relating to safety, reliability and operation, which are more fully outlined above. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards.  These warranties were made, *inter alia*, in advertisements, in Tesla's "e brochures," and in uniform statements provided by Tesla to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

268.   Plaintiff Shastrula was exposed to Tesla's marketing statements regarding the safety of the Class Vehicles and the collision avoidance systems with which they were equipped, as alleged in paragraphs 18, 49, and 67-75, herein.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

269. These additional warranties were also breached because the Defective Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees. Tesla did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

270. Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiff Shastrula and the Class whole and because the Tesla has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

271. Accordingly, recovery by Plaintiff Shastrula and the Class is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff Shastrula and the Class Members seek all remedies as allowed by law.

272. Also, as alleged in more detail herein, at the time that Tesla warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Tesla wrongfully and fraudulently misrepresented and/or concealed material facts regarding its vehicles. Plaintiff Shastrula and the Class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

273. Moreover, many of the damages flowing from the Defective Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Tesla's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff Shastrula's and the Class's remedies would be insufficient to make Plaintiff and the Class whole.

274. Finally, due to the Tesla's breach of warranties as set forth herein, Plaintiff Shastrula and the Class assert as an additional and/or alternative remedy, as set forth in Georgia Code Annotated section 11-2-608, for a revocation of acceptance of the goods,

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.: 8:16-cv-02282-JVS-KES

1  and for a return to Plaintiff Shastrula and to the Class of the purchase price of all vehicles

2  currently owned.

3      275.   Tesla was provided notice of these issues by the instant complaint, and by

4  numerous complaints filed with the NHTSA, as well as individual letters and

5  communications sent by Plaintiffs and the Class.

6      276.   As a direct and proximate result of Tesla's breach of express warranties,

7  Plaintiff Shastrula and the Class have been damaged in an amount to be determined at

8  trial.

9  ### FIFTEENTH CAUSE OF ACTION

10  ### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

11  ### (Ga. Code Ann. § 11-2-314)

12  ### (By Plaintiff Shastrula on Behalf of the Georgia Class)

13      277.   Plaintiffs and the Class incorporate by reference each preceding and

14  succeeding paragraph as though fully set forth at length herein.

15      278.   Plaintiff Shastrula brings this claim on behalf of himself and on behalf of the

16  Members of the Georgia Class.

17      279.   Tesla is and was at all relevant times a merchant with respect to motor

18  vehicles.

19      280.   A warranty that the Defective Vehicles were in merchantable condition is

20  implied by law in the instant transactions, pursuant to Georgia Code Annotated section

21  11-2-314.

22      281.   These vehicles, when sold and at all times thereafter, were not in

23  merchantable condition and are not fit for the ordinary purpose for which cars are used.

24  Specifically, the Defective Vehicles are inherently defective in that there are defects in

25  the vehicle control systems that permit sudden unintended acceleration to occur; the

26  Defective Vehicles do not have an adequate fail-safe to protect against such SUA events;

27  and the accelerator control mechanism and electronics were adequately tested.

28

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

282.   Tesla was provided notice of these issues by the instant complaint, and by numerous complaints filed with the NHTSA, as well as individual letters and communications sent by Plaintiffs and the Class.

283.   Plaintiff Shastrula and the Class have had sufficient dealings with either Tesla to establish privity of contract between Plaintiffs and the Class.  Notwithstanding this privity is also not required because Plaintiffs' and Class members' Tesla vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

284.   As a direct and proximate result of Tesla's breach of the warranties of merchantability, Plaintiff Shastrula and the Class have been damaged in an amount to be proven at trial.

## SIXTEENTH CAUSE OF ACTION
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (By Plaintiff Shastrula on Behalf of the Georgia Class)

285.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

286.   Plaintiff Shastrula brings this claim on behalf of himself and on behalf of the Members of the Georgia Class.

287.   To the extent Tesla's repair or adjust commitment is deemed not to be a warranty under Georgia's Commercial Code, Plaintiff Shastrula pleads in the alternative under common law warranty and contract law.  Tesla limited the remedies available to Plaintiff Shastrula and the Class to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Tesla, and/or warranted the quality or nature of those services to Plaintiff Shastrula and the Class Members.

288.   Plaintiff Shastrula was exposed to Tesla's marketing statements regarding the safety of the Class Vehicles and the collision avoidance systems with which they were equipped, as alleged in paragraphs 18, 49, and 67-75, herein.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

289.   Tesla breached this warranty or contract obligation by failing to repair the Defective Vehicles evidencing a sudden unintended acceleration problem or to replace them.

290.   As a direct and proximate result of Tesla's breach of contract or common law warranty, Plaintiff Shastrula and the Georgia Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## SEVENTEENTH CAUSE OF ACTION

## IN THE ALTERNATIVE, UNJUST ENRICHMENT

### (By Plaintiff Shastrula on Behalf of the Georgia Class)

291.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

292.   Plaintiff Shastrula brings this claim on behalf of himself and on behalf of the Members of the Georgia Class, in the alternative, in the event that the Court should determine that the alleged contracts and/or express warranties between Plaintiff Shastrula and the Georgia Class Members are unenforceable for any reason.

293.   Tesla had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiff Shastrula and the Class.

294.   As a result of Tesla's wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, Tesla charged a higher price for their vehicles than the vehicles' true value and Tesla obtained monies which rightfully belong to Plaintiff Shastrula and the Georgia Class Members.

295.   Tesla appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiff Shastrula and other Class members, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Tesla to retain these wrongfully obtained profits.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1    296.   Plaintiff Shastrula and the Georgia Class Members, therefore, are entitled to

2    restitution and seek an order establishing Tesla as constructive trustees of the profits

3    unjustly obtained, plus interest.

4                            **EIGHTEENTH CAUSE OF ACTION**

5        **BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

6                            **(N.C. Gen. Stat. § 25-2-314)**

7             **(By Plaintiff Jarrahi on Behalf of the North Carolina Class)**

8    297.   Plaintiffs and the Class incorporate by reference each preceding and

9    succeeding paragraph as though fully set forth at length herein.

10   298.   Plaintiff Jarrahi brings this claim on behalf of himself and on behalf of the

11   Members of the North Carolina Class.

12   299.   Tesla is and was at all relevant times a merchant with respect to motor

13   vehicles under North Carolina General Statute section 25-2-314.

14   300.   A warranty that the Defective Vehicles were in merchantable condition was

15   implied by law in the instant transaction, pursuant to North Carolina General Statute

16   section 25-2-314.

17   301.   The Model S and Model X vehicles, when sold and at all times thereafter,

18   were not in merchantable condition and are not fit for the ordinary purpose for which

19   vehicles are used. Specifically, the Defective Vehicles are inherently defective in that

20   there are defects in the vehicle control systems that permit sudden unintended

21   acceleration to occur; the Defective Vehicles do not have an adequate fail-safe to protect

22   against such SUA events; and the accelerator control mechanisms and electronics were

23   not adequately tested.

24   302.   Tesla was provided notice of these issues by the instant complaint, and by

25   numerous complaints filed with the NHTSA, as well as individual letters and

26   communications sent by Plaintiffs and the Class.

27

28

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

303.   As a direct and proximate result of Tesla's breach of the warranties of merchantability, Plaintiff Jarrahi and the Class have been damaged in an amount to be proven at trial.

<u>**NINETEENTH CAUSE OF ACTION**</u>

**BREACH OF CONTRACT/COMMON LAW WARRANTY**

**(Based on North Carolina Law)**

**(By Plaintiff Jarrahi on Behalf of the North Carolina Class)**

304.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

305.   Plaintiff Jarrahi brings this claim on behalf of himself and on behalf of the Members of the North Carolina Class.

306.   To the extent Tesla's repair or adjust commitment is deemed not to be a warranty under North Carolina's Commercial Code, Plaintiff Jarrahi pleads in the alternative under common law warranty and contract law.  Tesla limited the remedies available to Plaintiff and the Class to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Tesla, and/or warranted the quality or nature of those services to Plaintiff Jarrah and the Class.

307.   Plaintiff Jarrahi was exposed to Tesla's marketing statements regarding the safety of the Class Vehicles and the collision avoidance systems with which they were equipped, as alleged in paragraphs 18, 43, and 67-75, herein.

308.   Tesla breached this warranty or contract obligation by failing to repair the Defective Vehicles evidencing a sudden unintended acceleration problem or to replace them.

309.   As a direct and proximate result of Tesla's breach of contract or common law warranty, Plaintiff Jarrahi and the North Carolina Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

# TWENTIETH CAUSE OF ACTION

## IN THE ALTERNATIVE, UNJUST ENRICHMENT

### (Based on North Carolina Law)

### (By Plaintiff Jarrahi on Behalf of the North Carolina Class)

310.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

311.   Plaintiff Jarrahi brings this claim on behalf of himself and on behalf of the Members of the North Carolina Class in the alternative, in the event that the Court should determine that the alleged contracts and/or express warranties between Plaintiff Jarrahi and the North Carolina Class Members are unenforceable for any reason.

312.   As a result of its wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of the Model S and Model X vehicles and the concealment of the defect, Tesla charged a higher price for its vehicles than the vehicles' true value and Tesla obtained monies which rightfully belong to Plaintiff Jarrahi and Class Members.

313.   Tesla knowingly enjoyed the benefit of increased financial gains, to the detriment of Plaintiff Jarrahi and the Class Members, who paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Tesla to retain these wrongfully obtained profits.

314.   Plaintiff Jarrahi and the North Carolina Class Members, therefore, are entitled to restitution and seek an order establishing Tesla as constructive trustees of the profits unjustly obtained, plus interest.

# TWENTY-FIRST CAUSE OF ACTION

## VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT

### (Ohio Rev. Code Ann. § 1345.01, *et seq*.)

### (By Plaintiff Tomko on Behalf of the Ohio Class)

315.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

85

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

316.    Plaintiff Tomko brings this claim on behalf of himself and on behalf of the Members of the Ohio Class.

317.    The Ohio Consumer Protection Act, Ohio Revised Code section 1345.02, prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, the Act prohibits suppliers from representing that goods have characteristics or uses or benefits which they do not have.  The Act also prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

318.    Tesla is a "supplier" as that term is defined in the Ohio Consumer Protection Act, Ohio Rev. Code § 1345.01(c).

319.    Plaintiff Tomko is a "consumer" as that term is defined in the Ohio Consumer Protection Act, Ohio Rev. Code § 1345.01(d).

320.    The conduct of Tesla alleged above constitutes unfair and/or deceptive consumer sales practices because Tesla represented through advertising and other marketing communications that the vehicles were new and free from defects and could be driven safely in normal operation.  Instead, the vehicles were not of the standard, quality or grade of new vehicles, but rather, as alleged herein, are demonstratively defective as they are susceptible to sudden unintended acceleration causing serious injury.

321.    Such conduct constitutes a violation of Ohio statutory and regulatory law and previously has been found by Ohio state courts to be deceptive.

322.    Section 1345.02 of the Ohio Revised Code provides in pertinent part:

> (1)  That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits it does not have;
>
> (2)  That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;
>
> . . .
>
> (4) That the subject of a consumer transaction is available to the customer for a reason that does not exist;
>
> . . .

86

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

(10) That a consumer transaction involves or does not involve a warrant, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false.

323. Section 1345.03 defines certain acts or practices as unconscionable including, but not limited to, the following:

(1) Whether the supplier has knowingly taken advantage of the inability of the customer reasonably to protect the consumer's interests because of the consumer's . . . inability to understand the language of an agreement;

. . .

(3) Whether the supplier know at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers; and

. . .

(6) Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment.

324. Furthermore, sections 109:4-3-02 and 109:4-3-10 of the Ohio Administrative Code provide that Tesla's conduct alleged herein violates the OCSPA:

It is a deceptive act or practice in connection with a consumer transaction for a supplier, in the sale or offering for sale of goods or services, to make any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions.

O.A.C. § 109:4-3-02.

It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to: Make any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact.

O.A.C. § 109:4-3-10.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

325.   Finally, at least as early as 2011, Ohio state courts have held that advertising or marketing vehicles as new and free from defects and that they can be driven safely in normal operation when the vehicles are not of the 'standard, quality, or grade' they were represented and/or advertised to be is a violation of the OCSPA.  *Blankenship v. CFMOTO Powersports, Inc.*, 166 Ohio Misc. 2d 21, 32, 961 N.E.2d 750, 758 (Ct. Common Pleas 2011).

326.   Tesla's conduct caused Plaintiff Tomko's and the Class Members' damages as alleged.

327.   Plaintiff Tomko specifically does not allege herein a claim for violation of Ohio Revised Code section 1345.72.

328.   As a result of the foregoing wrongful conduct of Tesla, Plaintiff Tomko and the Ohio Class Members have been damaged in an amount to be proven at trial, including, but not limited to, actual and statutory damages, treble damages, court costs and reasonable attorney's fees, pursuant to Ohio Revised Code section 1345.09, *et seq.*

## TWENTY-SECOND CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

### (Ohio Rev. Code Ann. § 1302.26, *et seq*. (U.C.C. § 2-313))

### (By Plaintiff Tomko on Behalf of the Ohio Class)

329.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

330.   Plaintiff Tomko brings this claim on behalf of himself and on behalf of the Members of the Ohio Class.

331.   Tesla expressly warranted – through statements and advertisements described above – that its vehicles were of high quality, and, at a minimum, would actually work properly and safely.

332.   Plaintiff Tomko was exposed to Tesla's marketing statements regarding the safety of the Class Vehicles and the collision avoidance systems with which they were equipped, as alleged in paragraphs 18, 46, and 67-75, herein.

88

1    333.   Tesla breached this warranty by knowingly selling to Plaintiff Tomko and
2    the Ohio Class Members vehicles with dangerous defects, and which were not of high
3    quality.

4    334.   Plaintiff Tomko and the Ohio Class Members have been damaged as a direct
5    and proximate result of the breaches by Tesla in that the Defective Vehicles purchased or
6    leased by Plaintiff Tomko and the Ohio Class Members were and are worth far less than
7    what Plaintiff Tomko and the Ohio Class Members paid to purchase, which was
8    reasonably foreseeable to Tesla.

9                    **TWENTY-THIRD CAUSE OF ACTION**
10      **OHIO BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY -**
11                              **STRICT LIABILITY**
12            **(Ohio Rev. Code Ann. § 1302.27 (U.C.C. § 2-314))**
13              **(By Plaintiff Tomko on Behalf of the Ohio Class)**

14    335.   Plaintiffs and the Class incorporate by reference each preceding and
15    succeeding paragraph as though fully set forth at length herein.

16    336.   Plaintiff Tomko brings this claim on behalf of himself and on behalf of the
17    Members of the Ohio Class.

18    337.   Tesla impliedly warranted that its vehicles were of good and merchantable
19    quality and fit, and safe for their ordinary intended use – transporting the driver and
20    passengers in reasonable safety during normal operation, and without unduly endangering
21    them or members of the public.

22    338.   As described above, there were dangerous defects in the vehicles
23    manufactured, distributed, and/or sold by Tesla, which Plaintiff Tomko and the Ohio
24    Class Members purchased or leased, including, but not limited to, defects that caused the
25    vehicles to suddenly and unintentionally accelerate, and the lack of safety systems which
26    would prevent such acceleration.

27

28

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

339.   These dangerous defects existed at the time the vehicles left Tesla's manufacturing facilities and at the time they were sold or leased to Plaintiff Tomko and the Ohio Class Members.

340.   These dangerous defects were the direct and proximate cause of damages to Plaintiff Tomko and the Ohio Class Members.

## TWENTY-FOURTH CAUSE OF ACTION

## OHIO NEGLIGENT DESIGN, ENGINEERING & MANUFACTURE

### (Based on Ohio Law)

### (By Plaintiff Tomko on Behalf of the Ohio Class)

341.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

342.   Plaintiff Tomko brings this claim on behalf of himself and on behalf of the Members of the Ohio Class.

343.   Tesla is a manufacturer and supplier of automobiles.  Tesla owed Plaintiff Tomko and the Ohio Class Members a non-delegable duty to exercise ordinary and reasonable care to properly design, engineer, and manufacture the vehicles against foreseeable hazards and malfunctions including uncontrollable acceleration.

344.   Tesla owed Plaintiff Tomko and the Ohio Class Members a non-delegable duty to exercise ordinary and reasonable care in designing, engineering, and manufacturing the vehicles so that they would function normally, including that they would not accelerate out of control.

345.   Tesla also owed – and owes – a continuing duty to notify Plaintiff Tomko and the Ohio Class Members of the problem at issue and to repair the dangerous defects.

346.   Tesla breached these duties of reasonable care by designing, engineering, and manufacturing vehicles that accelerated out of control, and breached its continuing duty to notify Plaintiffs of these defects.

347.   The foreseeable hazards and malfunctions include, but are not limited to, the sudden and unanticipated and uncontrollable acceleration of these vehicles.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

348.   Plaintiff Tomko and the Ohio Class Members did not and could not know of the intricacies of these defects and their latent and dangerous manifestations, or the likelihood of harm therefrom arising in the normal use of their vehicles.

349.   At all relevant times, there existed alternative designs and engineering which were both technically and economically feasible.  Further, any alleged benefits associated with the defective designs are vastly outweighed by the real risks associated with sudden and uncontrollable acceleration.

350.   The vehicles were defective as herein alleged at the time they left Tesla's factory, and the vehicles reached Plaintiff Tomko and the Ohio Class Members without substantial change in the condition in which they were sold.

351.   As a direct and proximate result of Tesla's breaches, Plaintiff Tomko and the Ohio Class Members have suffered damages.

352.   Accordingly, Plaintiff Tomko and the Ohio Class Members s are entitled to recover appropriate damages including, but not limited to, diminution of value, return of lease payments and penalties, and injunctive relief related to future lease payments or penalties.

## TWENTY-FIFTH CAUSE OF ACTION
## IN THE ALTERNATIVE, UNJUST ENRICHMENT
### (Based on Ohio Law)
### (By Plaintiff Tomko on Behalf of the Ohio Class)

353.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

354.   Plaintiff Tomko brings this claim on behalf of himself and on behalf of the Members of the Ohio Class, in the alternative, in the event that the Court should determine that the alleged contracts and/or express warranties between Plaintiff Tomko and the Ohio Class Members are unenforceable for any reason.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

355.   Plaintiff Tomko and the Ohio Class Members paid Tesla the value of vehicles that are non-defective, and in exchange, Tesla provided Plaintiff Tomko and the Ohio Class Members vehicles that are, in fact, defective.

356.   Further, Plaintiff Tomko and the Ohio Class Members paid Tesla the value for vehicles that would not be compromised by substantial, invasive repairs, and in return received vehicles that require such repairs.

357.   Further, Plaintiff Tomko and the Ohio Class Members paid Tesla for vehicles they could operate, and in exchange, Tesla provided Plaintiff Tomko and the Ohio Class Members vehicles that could not be normally operated because their defects posed the possibility of life-threatening injuries or death.

358.   As such, Plaintiff Tomko and the Ohio Class Members conferred a windfall upon Tesla, which knows of the windfall and has retained such benefits, which would be unjust for Tesla to retain.

359.   As a direct and proximate result of Tesla's unjust enrichment, Plaintiff Tomko and the Ohio Class Members have suffered and continue to suffer various damages, including, but not limited to, restitution of all amounts by which Tesla was enriched through its misconduct.

## TWENTY-SIXTH CAUSE OF ACTION

### VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT

### (N.J. Stat. Ann. § 56:8-1, *et seq.*)

### (By Plaintiff Helman on Behalf of the New Jersey Class)

360.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

361.   Plaintiff Helman brings this claim on behalf of himself and on behalf of the Members of the New Jersey Class, in the alternative, in the event that the Court should determine that the alleged contracts and/or express warranties between Plaintiff Helman and the New Jersey Class Members are unenforceable for any reason.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

362.   Plaintiff Helman, who has suffered injury in fact and has lost money or property as a result of Tesla's violations of New Jersey's Consumer Fraud Act ("NJCFA"), allege this cause of action as a class action.

363.   Tesla is a person within the meaning of the NJCFA. N.J. Stat. Ann. § 56:8-1(d).

364.   The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . ." N.J. Stat. Ann. § 56:8-2.

365.   Plaintiff Helman and Class Members are consumers who purchased and/or leased Class Vehicles for personal, family or household use.

366.   Tesla engaged in unlawful conduct by deliberately and knowingly engaging in misrepresentations and false statements regarding the Class Vehicles, in the course of Tesla's business.  Specifically, Tesla knew or should have known at the time of manufacture and sale of the Class Vehicles that the Class Vehicles suffered from a sudden acceleration defect and lacked effective fail-safe mechanisms, however, Tesla failed to adequately investigate and disclose this defect to Plaintiff Helman and the New Jersey Class Members at the time of purchase and/or lease, or to remedy such defect or correct its misrepresentations and omissions regarding the safety and reliability of its vehicles.

367.   Tesla has also engaged in unlawful conduct by willfully and knowingly suppressing and/or omitting information related to the Class Vehicles to consumers. Specifically, Tesla purposefully and knowingly failed to disclose such defects in the Class Vehicles to consumers such as Plaintiff Helman and the New Jersey Class Members, in order to secure the sale and/or lease of the Class Vehicles at a premium price.  Tesla also failed to disclose such defects during the limited warranty period to

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

avoid having to perform their contractual duties under the warranty to repair all known defects.

368.   Tesla did not fully and truthfully disclose to its customers the true nature of the defects in the Class Vehicles, said defects not being readily discoverable at the time of purchase or lease.

369.   Tesla intended that Plaintiff Helman and the New Jersey Class Members rely on its misrepresentation and/or acts of concealment and omission, so that they would purchase and/or lease the Class Vehicles.

370.   Accordingly, Tesla has engaged in unfair and deceptive trade practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent to not sell them as advertised; and otherwise engaging in conduct likely to deceive.  Further, Tesla's acts and practices described herein offend established public policy because of the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because Tesla fraudulently concealed the defective nature of the Class Vehicles from consumers.

371.   Tesla's actions as set forth above occurred in the conduct of trade or commerce.

372.   By engaging in the above-described practice and the actions and omissions herein alleged, Tesla has committed one or more unlawful acts in violation of the NJCFA.

373.   Tesla's conduct caused Plaintiff Helman and the New Jersey Class Members to suffer an ascertainable loss.  In addition to direct monetary losses, Plaintiff Helman and the New Jersey Class Members have suffered an ascertainable loss in that they received less than what was promised to them by Tesla at the time they purchased and/or leased the subject Class Vehicles.  Therefore, Plaintiff Helman and the New Jersey Class

1   Members are entitled to recover such damages, together with appropriate penalties,

2   including treble damages, attorneys' fees and costs of suit.

3       374.   A causal relationship exists between Tesla's unlawful conduct and the

4   ascertainable losses suffered by Plaintiff Helman and the New Jersey Class Members.

5   Had the defects in the Class Vehicles been disclosed, Plaintiff Helman and the New

6   Jersey Class Members would not have purchased them or would have paid less for the

7   Class vehicles had they decided to purchase them.

8       375.   Plaintiff Helman and the New Jersey Class Members have suffered an

9   ascertainable loss of monies and pursuant to NJ Stat. § 56:8-19 are entitled to threefold

10  damages.

11      376.   Unless Tesla is enjoined from continuing to engage in this business practice,

12  Plaintiff Helman and the Class Members will continue to be injured by Tesla's wrongful

13  actions and conduct.  Therefore, Plaintiff Helman and the New Jersey Class Members are

14  entitled to injunctive relief.

15      377.   Plaintiffs are entitled to recover legal and/or equitable relief, treble damages,

16  and reasonable attorneys' fees pursuant to N.J. Stat. Ann. § 56:8-19.

17  

**TWENTY-SEVENTH CAUSE OF ACTION**

18  **BREACH OF EXPRESS WARRANTY**

19  **(N.J. Stat. Ann. § 12A:2-313)**

20  **(By Plaintiff Helman on Behalf of the New Jersey Class)**

21      378.   Plaintiffs and the Class incorporate by reference each preceding and

22  succeeding paragraph as though fully set forth at length herein.

23      379.   Plaintiff Helman brings this claim on behalf of himself and on behalf of the

24  Members of the New Jersey Class.

25      380.   Tesla and was at all relevant times a merchant with respect to motor

26  vehicles.

27      381.   In the course of selling its vehicles, Tesla expressly warranted in writing that

28  the Vehicles were covered by a Basic Warranty.

382.   Plaintiff Helman was exposed to Tesla's marketing statements regarding the safety of the Class Vehicles and the collision avoidance systems with which they were equipped, as alleged in paragraphs 18, 52, and 67-75, herein.

383.   Tesla breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Tesla.

384.   In addition to this Basic Warranty, Tesla also expressly warranted - through statements and advertisements described above - that its vehicles were of high quality, and, at a minimum, would actually work properly and safely.  Tesla has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

385.   Tesla breached this warranty by knowingly selling to Plaintiff Helman and the New Jersey Class Members vehicles with dangerous defects, and which were not of high quality.

386.   Plaintiff Helman and the New Jersey Class Members have been damaged as a direct and proximate result of the breaches by Tesla in that the Class Vehicles purchased or leased by Plaintiff Helman and the New Jersey Class Members were and are worth far less than what Plaintiff Helman and the New Jersey Class Members paid to purchase, which was reasonably foreseeable to Tesla.

387.   Generally, these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards.  These warranties were made, *inter alia*, in advertisements, in Tesla's "e brochures," and in uniform statements provided by Tesla to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

388.   Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiff Helman and the New Jersey Class Members whole and because the Tesla has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

389.   Accordingly, recovery by Plaintiff Helman and the New Jersey Class Members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff Helman and the New Jersey Class Members seek all remedies as allowed by law.

390.   Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered as a result of Tesla's failure and/or continued failure to provide such limited remedy within a reasonable time.

391.   Finally, as a result of Tesla's breach of warranties as set forth herein, Plaintiff Helman and the New Jersey Class Members assert as an additional and/or alternative remedy, as set for in N.J. Stat. Ann. § 12A:2-608, for revocation of acceptance of the goods, and for a return to Plaintiff Helman and to the New Jersey Class Members of the purchase price of all vehicles currently owned.

392.   Tesla was provided notice of these issues by numerous complaints filed against it, including the instant complaint, before or within a reasonable amount of time after the allegations of vehicle defects became public.

393.   As a direct and proximate result of Tesla's breach of express warranties, Plaintiff Helman and the New Jersey Class Members have been damaged in an amounted to be determined at trial.

## TWENTY-EIGHTH CAUSE OF ACTION

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (N.J. Stat. Ann. § 12A:2-314)

### (By Plaintiff Helman on Behalf of the New Jersey Class)

394.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

395.   Plaintiff Helman brings this claim on behalf of himself and on behalf of the Members of the New Jersey Class.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

396.   Tesla is and was at all relevant times a merchant with respect to motor vehicles.

397.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

398.   These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that there are dangerous defects in the vehicles manufactured, distributed, and/or sold by Tesla, which Plaintiff Helman and the New Jersey Class Members purchased or leased, including, but not limited to, defects that caused the vehicles to suddenly and unintentionally accelerate, and the lack of safety systems which would prevent such acceleration.

399.   These dangerous defects existed at the time the vehicles left Tesla's manufacturing facilities and at the time they were sold or leased to Plaintiff Helman and the New Jersey Class Members.

400.   Tesla was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the Class Members before or within a reasonable amount of time after the allegations of vehicle defects became public.

401.   Plaintiff Helman and the New Jersey Class Members have had sufficient dealings with the Tesla or its agents to establish privity of contract between Plaintiff Helman and the New Jersey Class Members.  Notwithstanding, privity is not required in this case because the Class Vehicles are dangerous instrumentalities as a result of the aforementioned defects and nonconformities.

//

//

//

//

//

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

402.   As a direct and proximate result of Tesla's breach of the warranties of merchantability, Plaintiff Helman and the New Jersey Class Members have been damaged in an amount to be proven at trial.

## TWENTY-NINTH CAUSE OF ACTION

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Based on New Jersey Law)

### (By Plaintiff Helman on Behalf of the New Jersey Class)

403.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

404.   Plaintiff Helman brings this claim on behalf of himself and on behalf of the Members of the New Jersey Class.

405.   To the extent Tesla's repair or adjust commitment is deemed not to be a warranty under New Jersey's Commercial Code, Plaintiff Helman pleads in the alternative under common law contract law.  Tesla limited the remedies available to Plaintiff Helman and the New Jersey Class Members to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Tesla, and/or warranted the quality or nature of those services to Plaintiff Helman and the New Jersey Class Members.

406.   Plaintiff Helman was exposed to Tesla's marketing statements regarding the safety of the Class Vehicles and the collision avoidance systems with which they were equipped, as alleged in paragraphs 18, 52, and 67-75, herein.

407.   Tesla breached this contract obligation by failing to repair the Class Vehicles evidencing a sudden unintended acceleration problem, or to replace them.

408.   As a direct and proximate result of Tesla's breach of contract, Plaintiff Helman and the New Jersey Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

# THIRTIETH CAUSE OF ACTION

## IN THE ALTERNATIVE, UNJUST ENRICHMENT

### (Based on New Jersey Law)

### (By Plaintiff Helman on Behalf of the New Jersey Class)

409.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

410.    Plaintiff Helman brings this claim on behalf of himself and on behalf of the Members of the New Jersey Class, in the alternative, in the event that the Court should determine that the alleged contracts and/or express warranties between Plaintiff Helman and the New Jersey Class Members are unenforceable for any reason.

411.    Tesla had knowledge of the safety defects in the Class Vehicles, which it failed to disclose to Plaintiff Helman and the New Jersey Class Members.

412.    As a result of its wrongful and fraudulent acts and omissions, as set forth above, pertaining to the defects in the Class Vehicles and the concealment of such defects, Tesla charged a higher price for its vehicles than the vehicles' true value.  Tesla accordingly received a benefit from Plaintiff Helman and the New Jersey Class Members their detriment.

413.    Toyota appreciated, accepted and retained the benefits conferred by Plaintiff Helman and the New Jersey Class Members, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Tesla to retain these wrongfully obtained profits.

414.    Plaintiff Helman and the New Jersey Class Members, therefore, are entitled to restitution and seek an order establishing Tesla as constructive trustees of the profits unjustly obtained, plus interest.

//

//

//

//

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

## THIRTY-FIRST CAUSE OF ACTION

**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

**(Fla. Stat. § 501.203(7), *et seq*.)**

**(By Plaintiff Waldemar on Behalf of the Florida Class)**

415.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

416.   Plaintiff Waldemar brings this cause of action on behalf of herself and on behalf of the members of the Florida Class.

417.   The Florida Class consists of "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203(7).

418.   Tesla engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

419.   The purpose of the FDUTPA is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202 (2).

420.   Tesla has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the practices described above, and by knowingly and intentionally concealing from Plaintiff Waldemar and Florida Class members the fact that the Class Vehicles suffer from a manufacturing and design defect (and the costs, risks, and diminished value of the Class Vehicles as a result of this problem), which was not readily discoverable at the time of purchase.  Tesla should have disclosed this information because it was in a superior position to know the true facts related to this defect, and Plaintiff Waldemar and the Florida Class members could not reasonably be expected to learn or discover the true facts related to this defect until after manifestation of the defect.

421.   Tesla concealed, omitted, and failed to disclose the latent defect in the Class Vehicles.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

422.   Tesla knew or should have known of the defect at the time of sale.

423.   Tesla owed Plaintiff Waldemar and the Florida Class Members a duty to disclose the dangers and defective nature of the Class Vehicles.

424.   Tesla knew or should have known that its conduct violated the FDUTPA.

425.   Tesla owed Plaintiff and the Florida Class a duty to disclose the dangers and defective nature of the Class Vehicles.

426.   Tesla's unfair or deceptive acts or practices were likely to deceive reasonable consumers, including Plaintiff Waldemar and the Florida Class, about the true safety and reliability of the Class Vehicles.

427.   As a result of Tesla's unfair, false, misleading, or deceptive acts or practices alleged herein, Plaintiff Waldemar and the Florida Class have suffered an ascertainable loss of money or property in an amount to be determined at trial.  This includes the costs to repair their vehicle, any other damage caused to the Class Vehicles, and any other compensatory or consequential damages allowed by law.

428.   As a direct and proximate result of Ford's violations of the FDUTPA, Plaintiff Waldemar and the Florida Class have suffered injury-in-fact and/or actual damage.

429.   Plaintiff Waldemar and the Florida Class are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

430.   Plaintiff Waldemar and the Florida Class Members also seek an order enjoining Tesla's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUTPA.

431.   Pursuant to Fla. Stat. § 501.201, Plaintiffs will serve the Florida Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

//
//
//
//

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

## THIRTY-SECOND CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

### (Fla. Stat. § 672.313)

### (By Plaintiff Waldemar on Behalf of the Florida Class)

432.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

433.   Plaintiff Waldemar brings this claim on behalf of herself and on behalf of the Members of the Florida Class.

434.   Tesla and was at all relevant times a merchant with respect to motor vehicles.

435.   In the course of selling its vehicles, Tesla expressly warranted in writing that the Vehicles were covered by a Basic Warranty.

436.   Tesla breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Tesla.

437.   In addition to this Basic Warranty, Tesla also expressly warranted - through statements and advertisements described above - that its vehicles were of high quality, and, at a minimum, would actually work properly and safely.  Tesla has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

438.   Plaintiff Waldemar was exposed to Tesla's marketing statements regarding the safety of the Class Vehicles and the collision avoidance systems with which they were equipped, as alleged in paragraphs 18, 55, and 67-75, herein.

439.   Tesla breached this warranty by knowingly selling to Plaintiff Waldemar and the Florida Class Members vehicles with dangerous defects, and which were not of high quality.

440.   Plaintiff Waldemar and the Florida Class Members have been damaged as a direct and proximate result of the breaches by Tesla in that the Defective Vehicles purchased or leased by Plaintiff Waldemar and the Florida Class Members were and are

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

worth far less than what Plaintiff Waldemar and the Florida Class Members paid to purchase, which was reasonably foreseeable to Tesla.

441.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards. These warranties were made, *inter alia*, in advertisements, in Tesla's "e brochures," and in uniform statements provided by Tesla to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

442.   Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the Class whole and because Tesla has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

443.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

444.   Finally, as a result of Tesla's breach of warranties as set forth herein, Plaintiff Waldemar and the Florida Class Members assert as an additional and/or alternative remedy, as set forth in Fla. Stat. § 672-608, for a revocation of acceptance of the goods, and for a return to Plaintiff Waldemar and to the Florida Class Members of the purchase price of all vehicles currently owned.

445.   Tesla was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiff Waldemar and the Florida Class Members before or within a reasonable amount of time after the allegations of vehicle defects became public.

446.   As a direct and proximate result of Tesla's breach of express warranties, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

//

//

//

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

# THIRTY-THIRD CAUSE OF ACTION

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (Fla. Stat. § 672.314)

### (By Plaintiff Waldemar on Behalf of the Florida Class)

447.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

448.   Plaintiff Waldemar brings this cause of action on behalf of herself and on behalf of the members of the Florida Class.

449.   Tesla is and was at all relevant times a merchant with respect to motor vehicles.

450.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to Fla. Stat. § 672.316.

451.   These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that there are dangerous defects in the vehicles manufactured, distributed, and/or sold by Tesla, which Plaintiff Waldemar and the Florida Class Members purchased or leased, including, but not limited to, defects that caused the vehicles to suddenly and unintentionally accelerate, and the lack of safety systems which would prevent such acceleration.

452.   These dangerous defects existed at the time the vehicles left Tesla's manufacturing facilities and at the time they were sold or leased to Plaintiff Waldemar and the Florida Class Members.

453.   Tesla was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the Class Members before or within a reasonable amount of time after the allegations of vehicle defects became public.

454.   Plaintiff Waldemar and the Florida Class Members have had sufficient dealings with the Tesla or its agents to establish privity of contract between Plaintiff

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

Waldemar and the Florida Class Members. Notwithstanding this, privity is not required in this case because the Class Vehicles are dangerous instrumentalities as a result of the aforementioned defects and nonconformities.

455.   As a direct and proximate result of Tesla's breach of the warranties of merchantability, Plaintiff Waldemar and the Florida Class Members have been damaged in an amount to be proven at trial.

**THIRTY-FOURTH CAUSE OF ACTION**

**BREACH OF CONTRACT/COMMON LAW WARRANTY**

**(Based on Florida Law)**

**(By Plaintiff Waldemar on Behalf of the Florida Class)**

456.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

457.   Plaintiff Waldemar brings this cause of action on behalf of herself and on behalf of the members of the Florida Class.

458.   To the extent Tesla's repair or adjust commitment is deemed not to be a warranty under Florida's Commercial Code, Plaintiff Waldemar pleads in the alternative under common law warranty and contract law. Tesla limited the remedies available to Plaintiffs and the Class to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Tesla, and/or warranted the quality or nature of those services to Plaintiff Waldemar and the Florida Class Members.

459.   Plaintiff Waldemar was exposed to Tesla's marketing statements regarding the safety of the Class Vehicles and the collision avoidance systems with which they were equipped, as alleged in paragraphs 18, 55, and 67-75, herein.

460.   Tesla breached this warranty or contract obligation by failing to repair the Class Vehicles evidencing a sudden unintended acceleration problem or to replace them.

461.   As a direct and proximate result of Tesla's breach of contract or common law warranty, Plaintiff Waldemar and the Florida Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

compensatory damages, incidental and consequential damages, and other damages allowed by law.

## THIRTY-FIFTH CAUSE OF ACTION

### IN THE ALTERNATIVE, UNJUST ENRICHMENT

### (Based on Florida Law)

### (By Plaintiff Waldemar on Behalf of the Florida Class)

462.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

463.   Plaintiff Waldemar brings this claim on behalf of herself and on behalf of the Members of the Florida Class, in the alternative, in the event that the Court should determine that the alleged contracts and/or express warranties between Plaintiff Waldemar and the Florida Class Members are unenforceable for any reason.

464.   Tesla had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiff Waldemar and the Florida Class Members.

465.   As a result of Tesla's wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, Tesla charged a higher price for their vehicles than the vehicles' true value and Tesla obtained monies which rightfully belong to Plaintiff Waldemar and the Florida Class Members.

466.   Tesla appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiff Waldemar and other Florida Class Members, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Tesla to retain these wrongfully obtained profits.

467.   Plaintiff Waldemar and the Florida Class Members, therefore, are entitled to restitution and seek an order establishing Tesla as constructive trustees of the profits unjustly obtained, plus interest.

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Ji Chang Son, Ghodrat Khansari, Madhusudhana Shastrula, Ali Jarrahi, Michael Tomko, Kenneth Helman, and Bridgette Waldemar, individually and on behalf of all Class Members, and K.M.S., on behalf of himself, and Plaintiff K.M.S. respectfully request that this Court:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B. appoint Plaintiffs Ji Chang Son, Ghodrat Khansari, Madhusudhana Shastrula, Ali Jarrahi, Michael Tomko, Kenneth Helman, and Bridgette Waldemar as the representatives of the Class(es) and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and the Class Members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Tesla to repair, recall, and/or replace the Model S and Model X vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class Members with appropriate curative notice regarding the existence and cause of sudden unintended acceleration;

F. award reasonable attorneys' fees and costs; and

G. grant such further relief that this Court deems appropriate.

Dated:  June 27, 2017                    Respectfully submitted,


By:   */s/ Richard D. McCune*
       Richard D. McCune
       MCCUNE WRIGHT AREVALO, LLP
       Attorneys for Plaintiffs

108

1

**JURY DEMAND**

2

Plaintiffs demand a trial by jury on all issues so triable.

3

Dated:  June 27, 2017                    By:   */s/ Richard D. McCune*

4

Richard D. McCune

5

MCCUNE WRIGHT AREVALO, LLP

Attorneys for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED CLASS ACTION COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES