1  CHONG ROH (SBN 242437)
   croh@yleelaw.com
2  JAKE Y. JUNG (SBN 297686)
   jakejung@yleelaw.com
3  LAW OFFICES OF YOHAN LEE, A.P.C.
   5681 Beach Boulevard, Suite 200
4  Buena Park, California  90621
   Telephone:  (714) 523-2700
5  Facsimile:   (714) 523-7100

6

7  Attorneys for Plaintiffs JI CHANG SON and
   Plaintiff K.M.S., a minor by and through his
8  *Guardian ad Litem* YUN SOO OH

9                UNITED STATES DISTRICT COURT

10           FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12 JI CHANG SON, GHODRAT           ) Case No.:  8:16-cv-02282-JVS-KES
   KHANSARI, MADHUSUDHANA          )
13 SHASTRULA, ALI JARRAHI,         ) Judge Assigned:  Hon. James V. Selna
   MICHAEL TOMKO, KENNETH          ) Complaint filed: December 30, 2016
14 HELMAN, and BRIDGETTE           )
   WALDEMAR, individually and on behalf )
15 of all others similarly situated, and K.M.S., )
   a minor by and through his *Guardian ad* )  **THIRD AMENDED COMPLAINT OF**
16 *Litem* YUN SOO OH,             )  **PLAINTIFFS JI CHANG SON AND**
                                   )  **PLAINTIFF K.M.S., A MINOR BY**
17              Plaintiffs,        )  **AND THROUGH HIS *GUARDIAN AD***
                                   )  ***LITEM* YUN SOO OH**
18       v.                        )
                                   )
19 TESLA, INC.,                    )
                                   )  1. Violation of the California Consumer
20              Defendant.         )     Legal Remedies Act, Cal. Civ, Code
                                   )     § 1750, *et seq.*
21                                 )  2. Violation of California Unfair
                                   )     Competition Law, Cal. Bus. & Prof.
22                                 )     Code § 17200, *et seq.*
                                   )  3. Violation of California False
23                                 )     Advertising Law, Cal. Bus. & Prof.
                                   )     Code § 17500, *et seq.*
24                                 )  4. Breach of the Implied Warranty of
                                   )     Merchantability, Cal. Com. Code
25                                 )     § 2314
                                   )  5. Breach of Written Warranty under the
26                                 )     Magnuson-Moss Warranty Act, 15
                                   )     U.S.C. § 2301, *et seq.*
27                                 )  6. Strict Product Liability
                                   )  7. Negligence
28                                 )  8. Strict Product Liability (Failure to
                                   )     Warn)
   _____)
                                    1

   THIRD AMENDED COMPLAINT
   Case No.:  8:16-cv-02282-JVS-KES

9.  Slander Per Se
10. Defamation

**<u>DEMAND FOR JURY TRIAL</u>**

# TABLE OF CONTENTS

*Page*

I     THE PARTIES .................................................................................................2

II    JURISDICTION AND VENUE ......................................................................2

IV    FACTUAL BACKGROUND...........................................................................3

      A.    Tesla's Development of the Model X Vehicles ...............................3

      B.    Tesla's Markets the Safety of the Model X .....................................4

      C.    Tesla Is on Notice of SUA Complaints Involving its Model X Vehicles......6

            1.    Model X Reports of Sudden Unintended Acceleration to NHTSA......7

                  a.    Reports of SuddenUnintended Acceleration are 71 Times
                        Higher Than Historical Rates for Other Vehicles ...................17

      D.    Plaintiff Ji Chang Son's and Plaintiff Kyung Min Son's SUA Event .........18

      K.    Defects in the Model X ..................................................................19

      L.    Tesla's Defamatory Statements Against Plaintiff Son................................20

VI    CAUSES OF ACTION...................................................................................22

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

# TABLE OF CONTENTS (cont.)

*Page*

FIRST CAUSE OF ACTION:  VIOLATIONS OF CALIFORNIA'S CONSUMER
    LEGAL REMEDIES ACT.....................................................................22

SECOND CAUSE OF ACTION:  VIOLATIONS OF THE CALIFORNIA
    UNFAIR COMPETITION LAW.........................................................25

THIRD CAUSE OF ACTION:  VIOLATION OF CALIFORNIA FALSE
    ADVERTISING LAW .........................................................................26

FOURTH CAUSE OF ACTION:  BREACH OF IMPLIED WARRANTY..........28

FIFTH CAUSE OF ACTION:  BREACH OF WRITTEN WARRANTY UNDER
    THE MAGNUSON-MOSS WARRANTY ACT .................................29

SIXTH CAUSE OF ACTION:  STRICT PRODUCT LIABILITY ......................31

SEVENTH CAUSE OF ACTION:  NEGLIGENCE ..............................................32

EIGHTH CAUSE OF ACTION:  FAILURE TO WARN ....................................33

NINTH CAUSE OF ACTION:  SLANDER PER SE..............................................34

TENTH CAUSE OF ACTION:  DEFAMATION ..................................................36

PRAYER FOR RELIEF ........................................................................................39

JURY DEMAND ...................................................................................................41

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

Plaintiffs Ji Chang Son and K.M.S., a minor by and through his *Guardian ad Litem* Yun Soo Oh, herein allege as follows:

## I

## THE PARTIES

1.     Plaintiff Ji Chang Son and his son, Plaintiff K.M.S., are citizens of the Republic of South Korea, who at all times relevant herein were residing in Orange County, California.  On or about August 5, 2016, Plaintiff Ji Chang Son and his wife, Yun Soo Oh, purchased a 2016 Model X from the Tesla Gallery located in Costa Mesa, California.

2.     Prior to, and at the time of, the purchase of his 2016 Tesla Model X, Plaintiff Son was informed by Tesla sales personnel of the various safety features with which the Model X was equipped, including Forward Collision Alert and Emergency Automatic Braking.  It was explained to Plaintiff Son that Automatic Emergency Braking was intended to prevent accidents from happening in the first place and that the collision avoidance features were designed to increase the safety of Model X.

3.     Plaintiff Ji Chang Son was the driver of the Model X when the vehicle experienced uncommanded full power acceleration while he was pulling into the garage of his home in Orange County, California, on September 10, 2016, causing the vehicle to crash through the interior wall of the garage of his home and come to rest in Plaintiff's living room, injuring Plaintiff Ji Chang Son and his son, Plaintiff K.M.S., who was a front seat passenger in the vehicle.

4.     Defendant Tesla, Inc., is a Delaware corporation with its headquarters located at 3500 Deer Creek Road, Palo Alto, California 94304.

## II

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this matter for Plaintiffs' claims under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

6.     This Court has jurisdiction under 28 U.S.C. § 1332 as the controversy exceeds the sum of $74,000, exclusive of interests and costs and is between Plaintiffs who reside in Orange County, California and Defendant Tesla, a Delaware corporation.

7.     This Court has personal jurisdiction over Defendant Tesla because its corporate headquarters and primary manufacturing facility are located in California, it conducts substantial business in the District, and because a substantial part of the acts and omissions complained of occurred in the District.

8.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events, acts and omissions giving rise to these claims occurred in the Central District of California.

## III

## FACTUAL BACKGROUND

### A.     Tesla's Development of the Model X Vehicles

9.     Defendant Tesla, Inc. ("Tesla") designs, develops, manufactures, and sells electric vehicles and electric vehicle powertrain components.  The company also provides services for the development and sale of electric powertrain systems and components, to other automotive manufacturers.  It markets and sells its vehicles through Tesla stores, as well as via the Internet.  As of October 2016, the company operated a network of 99 Tesla Stores and Galleries in the United States, of which 28 are located within California. Tesla was founded in July 2003 and is headquartered in Palo Alto, California.  Tesla claims to use proprietary technology and state-of-the-art manufacturing processes to create one of the safest vehicles on the road today.

10.     On February 9, 2012, Tesla announced the development of a full-sized, all electric, luxury crossover SUV called the Model X.  At that time, Tesla announced that "Tesla Model X Performance version will accelerate from 0 to 60 miles per hour in 4.4 seconds [making the] Model X faster than many sports cars, including the Porsche 911 Carrera."

3

11.     By the time Tesla began deliveries of the Model X to North American consumers, it had increased the power and performance of the Model X beyond Tesla's own projections.  At the time of its introduction, Tesla offered the Model X in two performance packages: 1) P90D that can accelerate from 0 to 60 m.p.h. in 3.8 seconds; and 2) the Ludicrous P90D that can accelerate from 0 to 60 m.p.h. in 3.2 seconds.  The Model X has a top speed of 155 m.p.h.

12.     Tesla now offers the Model with a 100 kWh battery that can accelerate the Model X "from zero to 60 miles per hour in as quick as 2.9 seconds."

**B.      Tesla Markets the Safety of the Model X**

13.     Tesla marketed the Model X as being "designed to be the safest car on the road," with every Model X coming "standard with automatic emergency braking and side collision avoidance to prevent accidents from happening in the first place."

14.     Every Model X is equipped with "a forward-looking camera, radar, and 360 degree sonar sensors to enable advanced autopilot features."



THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES



Note: The exact detection zone may vary depending on environmental conditions.

15.   Tesla also promoted its "over-the-air software updates" allowing Tesla to "regularly improve the sophistication of these features, enabling increasingly capable safety and convenience features."

16.   Tesla equips the Model X with a pair of safety features called "Forward Collision Warning" and "Automatic Emergency Braking."  As described in the Model X Owner's Manual:

> [T]he following collision avoidance features are designed to increase the safety of you and your passengers:

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

- •      Forward Collision Warning provides visual and audible warnings in situations where there is a high risk of a frontal collision . . . .
- •      Automatic Emergency Braking automatically applies braking to reduce the impact of a frontal collision . . . .

The forward looking camera and the radar sensor are designed to determine the distance from any object (vehicle, motorcycle, bicycle, or pedestrian) traveling in front of Model X.  When a frontal collision is considered unavoidable, Automatic Emergency Braking is designed to automatically apply the brakes to reduce the severity of the impact.

When Automatic Emergency Braking applies the brakes, the instrument panel displays a visual warning and you'll hear a chime.  You may also notice abrupt downward movement of the brake pedal.  The brake lights turn on to alert other road users that you are slowing down.

. . .

Automatic Emergency Braking operates only when driving between 5 mph (8 km/h) and 85 mph (140 km/h).

Automatic Emergency Braking does not apply the brakes, or stops applying the brakes, in situations where you are taking action to avoid a potential collision.  For example:

- • You turn the steering wheel sharply.
- • You press the accelerator pedal.
- • You press and release the brake pedal.
- • A vehicle, motorcycle, bicycle, or pedestrian, is no longer detected ahead.

17.     With these and other features, Tesla touts the Model X as being "the safest, fastest and most capable sport utility vehicle in history."

**C.     Tesla Is on Notice of SUA Complaints Involving its Model X Vehicles**

18.     NHTSA maintains an online complaint database where consumers can file complaints regarding issues they are experiencing with their vehicle.  Complaints can be entered into the system via the internet, through a toll-free Safety Auto Hotline, by submitting a written vehicle owner questionnaire ("VOQ") or by mailing a letter.  The NHTSA consumer complaints database is considered one of NHTSA's most important sources of field data and is monitored by all major automobile manufacturers, including Tesla, for the purpose of ascertaining field data about the performance of their vehicles.

6

1   **1.      Model X Reports of Sudden Unintended Acceleration to NHTSA**

2       19.     On June 7, 2016, less than six months into the full scale distribution of the

3   Model X, the first complaint of sudden unintended acceleration was registered in

4   NHTSA's complaint database.  This would be the first of seven separate complaints that

5   would be entered in the NHTSA complaint database in just the next four months.

6       20.     The following information was entered into the NHTSA complaint database,

7   and therefore, was available to Tesla, in connection with these seven complaints:

June 7, 2016 **NHTSA ID NUMBER: 10873117**

**Components: STRUCTURE, VEHICLE SPEED CONTROL, AIR BAGS**

**NHTSA ID Number:** 10873117

**Incident Date** June 4, 2016

**Consumer Location** ANAHEIM, CA

**Vehicle Identification Number** 5YJXCAE46GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 1**

**DEATHS 0**

OUR 5 DAY OLD TESLA X WHILE ENTERING A PARKING STALL SUDDENLY AND
UNEXPECTEDLY ACCELERATED AT HIGH SPEED ON ITS OWN CLIMBING OVER
GRASS AND AND CRASHED INTO A BUILDING.

THE AIRBAGS DEPLOYED AND MY WIFE'S ARMS HAVE BURN MARKS AS A
CONSEQUENCE.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|

7

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

August 4, 2016 **NHTSA ID NUMBER: 10893066**

**Components: VEHICLE SPEED CONTROL, AIR BAGS**

**NHTSA ID Number:** 10893066

**Incident Date** July 28, 2016

**Consumer Location** DANBURY, CT

**Vehicle Identification Number** 5YJXCAE29GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

TL* THE CONTACT OWNS A 2016 TESLA MODEL X. WHILE ATTEMPTING TO PARK. THE VEHICLE INDEPENDENTLY ACCELERATED WITHOUT WARNING AND CRASHED INTO A WOOD FENCE. THE AIR BAGS FAILED TO DEPLOY. THERE WERE NO INJURIES. A POLICE REPORT WAS FILED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 49.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

August 24, 2016 **NHTSA ID NUMBER: 10898260**

8

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

**Components: STRUCTURE. VEHICLE SPEED CONTROL. FUEL/PROPULSION SYSTEM**

**NHTSA ID Number:** 10898260

**Incident Date** July 8, 2016

**Consumer Location** ORMOND BEACH, FL

**Vehicle Identification Number** 5YJXCBE21GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

ON JULY 8TH 2016. AT 9:37 A.M.. WHILE SLOWLY PULLING INTO A PARKING SPACE AT CREEKWOOD DOG PARK IN BRADENTON FLORIDA. MY TESLA MODEL X SUDDENLY ACCELERATED UNDER ITS OWN VOLITION. DROVE OVER A PARKING STOP. OVER A FIVE INCH CURB. AND THEN HIT AND KNOCKED OVER A CONCRETE LIGHT POLE. ALL THIS HAPPENED IN A DISTANCE OF LESS THAN TWENTY FEET. TESLA WAS NOTIFIED IMMEDIATELY AND THE CAR WAS TAKEN TO DIMMITT COLLISION CENTER IN CLEARWATER. FLORIDA. THE SERVICE MANAGER AT TESLA OF TAMPA. TOLD ME VERBALLY THE LOG FROM THE EDR SAYS THE CAR WAS TRAVELING AT 6 MPH. THEN THE ACCELERATOR WAS ADVANCED TO OVER 50% AND THEN TO 87%. THE CAR ACCELERATED TO 20 MPH AND ABRUPTLY STOPPED. I DENIED THIS SCENARIO AND ASKED FOR A SUPERVISOR. TESLA'S SOUTHEAST REGIONAL MANAGER MET US AT THE BODY SHOP. HE HANDED ME A LETTER THAT HAD DIFFERENT EDR RESULTS-VEHICLE SPEED WAS 7 MPH. PEDAL POSITION WENT FROM 3.2% TO 15.6% TO 100% AND CAR WENT TO 14 MPH. THE FIRST REPAIR ESTIMATE SHOWED ACTUAL MILEAGE AS 205 AND A SUBSEQUENT REPAIR ESTIMATE SHOWS THE ACTUAL MILEAGE AS 1425. THESE FIGURES ARE INACCURATE SINCE I HAD LOOKED AT THE ODOMETER SEVERAL DAYS BEFORE THE ACCIDENT AND THE MILEAGE WAS OVER 1800. I INFORMED TESLA THAT I AM POSITIVE BEYOND A SHADOW OF DOUBT THAT THE CAR'S ELECTRONIC THROTTLE COMPUTER WAS RESPONSIBLE FOR THE ACCIDENT WHICH THEY DENY. THIS APPEARS TO BE THE INDUSTRY STANDARD SINCE EXPERTS WILL TESTIFY THAT ALTHOUGH A CAR IS RESPONSIBLE FOR UNINTENDED ACCELERATION THERE WILL BE NO TRACEABLE EVIDENCE OF THAT RESPONSIBILITY AND THEREFORE THE MANUFACTURER HAS PLAUSIBLE DENIABILITY. TESLAS ARE UNDERGOING UNINTENDED ACCELERATION AT A RATE MORE FREQUENT THAN 1/5.000 VEHICLES MANUFACTURED. THIS IS WAY MORE FREQUENT THAN THE INDUSTRY STANDARD. GENERAL MOTORS HAS AN EXTREMELY GOOD RATE OF 1/123,000 VEHICLES.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

September 19, 2016 **NHTSA ID NUMBER: 10908051**

**Components: VEHICLE SPEED CONTROL, UNKNOWN OR OTHER**

**NHTSA ID Number:** 10908051

**Incident Date** May 23, 2016

**Consumer Location** BOSTON, MA

**Vehicle Identification Number** 5YJXCAE24GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

WHILE TURNING LEFT TO ENTER A VERY NARROW GARAGE ENTRANCE I NEEDED TO DETERMINE WHETHER OR NOT I HAD TO STRAIGHTEN OUT BEFORE PULLING IN OR IF MY LEFT TURN WAS TIGHT ENOUGH TO PULL IN WITHOUT REVERSING TO STRAIGHTEN OUT. I SAW THAT I WAS IN THE POSITION THAT I COULD CONTINUE INTO THE GARAGE AND LIGHTLY PRESSED THE ACCELERATOR TO FINISH MY TURN INTO THE GARAGE.

IT WAS AT THIS POINT THAT THE CAR ACCELERATED WITH EXTREME FORCE AND WITHIN A SECOND SLAMMED INTO A LARGE CONCRETE POLE THAT WAS JUST INSIDE THE GARAGE TO THE LEFT.

I NEVER FELT THE CAR SLOW IN THAT MOMENT. ONLY SPEED UP AND I BELIEVE THE CAR SLAMMED INTO THE POLE WHILE ACCELERATING AND WOULD HAVE CONTINUED TO ACCELERATE IF NOT FOR THE LARGE POLE.

I DID NOT HAVE EITHER FOOT DEPRESSED ON EITHER PEDAL AT THE MOMENT OF COLLISION. THE AIR BAGS DID NOT DEPLOY. BUT THERE WAS VERY SEVERE DAMAGE TO THE FRONT END OF THE CAR THAT WILL BE AT LEAST $25K.

I WAS NOT ON THE PHONE OR DISTRACTED IN ANY WAY. I WAS DRIVING CAREFULLY AND PAYING FULL ATTENTION. THIS IS NOT A CASE OF MISTAKEN PEDAL BECAUSE I WAS INTENDING TO ACCELERATE.

10

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

AT FIRST TESLA TOLD US OVER THE PHONE THAT THEIR LOGS SHOW THAT THE DRIVER PRESSED THE PEDAL 100% AND THEN TAPPED THE BRAKE BEFORE IMPACT. THIS EXPLANATION SOUNDED PHYSICALLY IMPOSSIBLE BECAUSE THE DISTANCE COVERED WAS LESS THAN 3 CAR LENGTHS. A MONTH LATER TESLA SENT A LETTER STATING THE DRIVER PRESSED THE ACCELERATOR 100% UNTIL THE VEHICLE SENSED A CRASH. TESLA DID NOT RESPOND TO OUR QUERY ABOUT WHY THEIR LOG STORY HAD CHANGED. TESLA ALSO REFUSED TO PROVIDE DATA ABOUT ACCELERATOR/BRAKE PERCENTAGE AND CAR SPEED FOR THE CAR EARLIER IN THE DAY. IF A DRIVER IS PRESSING THE PEDAL 100% IT IS A VERY DELIBERATE ACTION.

THIS IS A FAILURE OF THE ACCELERATOR AND THE AUTOMATIC BRAKING. THE CAR ACCELERATED ON ITS OWN AND CRASHED FULL FORCE INTO A LARGE CONCRETE POLE.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

September 26, 2016 **NHTSA ID NUMBER: 10909588**

**Components: VEHICLE SPEED CONTROL, WHEELS**

**NHTSA ID Number:** 10909588

**Incident Date** September 22, 2016

**Consumer Location** LEXINGTON, MA

**Vehicle Identification Number** 5YJXCAE44GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

I WAS GOING UP BY DRIVEWAY WAITING FOR MY GARAGE DOOR TO OPEN. I TOOK MY FOOT OFF THE ACCELERATOR AND WAS SLOWING DOWN WITHOUT HITTING THE BREAKS WAITING FOR THE GARAGE DOOR TO OPEN. THE CAR TOOK OFF

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

THROUGH THE GARAGE DOOR AND HIT MY HUSBANDS CAR SITTING IN THE GARAGE.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

September 30, 2016 **NHTSA ID NUMBER: 10910701**

**Components: VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10910701

**Incident Date** September 29, 2016

**Consumer Location** BEVERLEY HILLS, CA

**Vehicle Identification Number** UNKNOWN****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

HERE IS A NEW COMPLAINT OF UNINTENDED ACCELERATION WHICH SOUNDS HIGHLY CREDIBLE.

HTTPS://FORUMS.TESLA.COM/FORUM/FORUMS/NEAR-ACCIDENT-WHILE-PARKING-JUST-NOW

NEAR ACCIDENT WHILE PARKING JUST NOW!!

SUBMITTED BY HAMI05 ON SEPTEMBER 29. 2016

WOW GUYS I'VE SEEN THOSE UNINTENDED ACCELERATION THREADS BEFORE AND THOUGHT THAT THE PERSON MUST'VE ALWAYS DEFINITELY BEEN PUNCHING THE ACCELERATOR. BUT I'M NOT SO SURE AFTER WHAT JUST HAPPENED TO ME. PLEASE HEAR ME OUT. BECAUSE MY SON AND I ARE FRANKLY QUITE SCARED RIGHT NOW. I WAS DRIVING INTO A PARKING LOT AND I JUST LIGHTLY PRESSED THE ACCELERATOR AS I WAS GOING UNDER 10 MPH AND ALL OF A SUDDEN MY X

12

WENT FROM 10 TO OVER 40 MPH IN ABOUT 2 SECONDS! I DIDN'T EVEN KNOW THE THING COULD ACCELERATE THAT FAST! CAN ANYBODY EXPLAIN WHAT THE HECK MIGHT'VE HAPPENED? THANKFULLY I WAS ABOUT 100 FT AWAY FROM ANY OTHER CARS BEFORE IT TOOK OFF. SO I HAD TIME TO SLAM THE BRAKES WITHOUT PANICKING. OTHERWISE WHO KNOWS WHAT WOULD'VE HAPPENED... I'M CERTAIN THAT I DIDN'T ACCIDENTALLY ACTIVATE CRUISE CONTROL/AP. SO THERE'S NO WAY THAT COULD'VE CAUSED IT. MY THEORY IS THAT THE REGENERATIVE BRAKES MAY HAVE GIVEN ME A SUDDEN KICK OF ACCELERATION? I'M KIND OF WORRIED NOW. BECAUSE THIS IS ACTUALLY THE SECOND TIME SOMETHING LIKE THIS HAS HAPPENED TO ME. EXCEPT THE FIRST TIME WASN'T NEARLY AS BAD. SO I DIDN'T ASK YOU GUYS ABOUT IT. HAS ANYONE ELSE HAD THIS HAPPEN TO THEM? DO YOU GUYS THINK I NEED TO ASK MY TESLA TEAM ABOUT THIS?

THIS HASN'T ONLY HAPPENED TO ME WHILE GETTING READY TO PARK. THE FIRST TIME I WAS JUST ACCELERATING UP TO 25 IN MY NEIGHBORHOOD AND IT SUDDENLY WENT TO 35 IN A SECOND BUT I WASN'T TOO BOTHERED ABOUT THAT. BECAUSE IT WAS JUST A 10MPH BURST. BUT THIS ONE THAT HAPPENED TO ME TODAY WAS THE CAR JUMPING 30 MPH... I'VE DRIVEN THIS CAR FOR 2000 MILES NOW AND IT'S THE ONLY CAR I'VE BEEN DRIVING REALLY OVER THE PAST MONTH.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TESLA | MODEL X | 2016 |

October 12, 2016 **NHTSA ID NUMBER: 10915633**

**Components: SERVICE BRAKES, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10915633

**Incident Date** October 7, 2016

**Consumer Location** SANTA CLARA, CA

**Vehicle Identification Number** 5YJXCBE22GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

13

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

TL* THE CONTACT OWNS A 2016 TESLA MODEL X. WHILE PARKING THE VEHICLE. IT ACCELERATED WHILE DEPRESSING THE BRAKE PEDAL AND CRASHED INTO A FENCE. THERE WERE NO INJURIES AND A POLICE REPORT WAS NOT FILED. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURE WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 1,000.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

December 14, 2016 **NHTSA ID NUMBER: 10935272**

**Components: AIR BAGS, STRUCTURE, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10935272

**Incident Date** December 13, 2016

**Consumer Location** AMAGANSETT, NY

**Vehicle Identification Number** 5YJXCBE24GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 1**

**DEATHS 0**

I HAD PULLED INTO A PARKING LOT. PROCEEDED TO PULL INTO A SPOT ADJACENT TO A CINDER BLOCK BUILDING. I HAD MY FOOT LIGHTLY ON THE GAS PEDAL. THEN AS I MADE THE TURN INTO THE SPOT. MY FOOT WAS ON THE BRAKE - THE CAR LURCHED FORWARD AND SPED UP AND THE BRAKES DID NOT STOP IT. I WENT RIGHT INTO THE CONCRETE BUILDING. HEAD ON - AIR BAGS DEPLOYED. THE FRONT END CRUSHED AND THE 2 AIRBAGS ON THE DRIVERS SIDE DEPLOYED AND WERE SMOKING. I READ ON LINE THAT THERE HAVE BEEN NUMEROUS INCIDENCES OF THIS HAPPENING WITH THE TESLA. SPONTANEOUS ACCELERATION WITH MY FOOT NOT ON THE GAS PEDAL. THE CAR WOULD NOT STOP BY THE BRAKES! I COULD HAVE BEEN SERIOUSLY INJURED OR HIT ANOTHER PERSONA OR VEHICLE. THE CAR HIT THE BUILDING AS WELL AS A NATURAL GAS PIPE THAT WAS RUNNING ALONG THE BUILDINGS SIDE AT THE LEVEL OF MY FRONT BUMPER. I FILED A POLICE REPORT.

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

January 3, 2017 **NHTSA ID NUMBER: 10939234**

**Components: STRUCTURE. FUEL/PROPULSION SYSTEM. VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10939234

**Incident Date** November 2, 2016

**Consumer Location** SANTA CLARA, CA

**Vehicle Identification Number** 5YJXCAE27GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

WHILE TURNING LEFT INTO A PARKING SPOT AT A VERY SLOW SPEED. THE CAR SUDDENLY ACCELERATED WITH EXTREME FORCE. IT RAN OVER A CURB AND COLLIDED WITH A TREE AND A TRUCK. THERE WAS ONLY LIGHT PRESSURE ON THE ACCELERATOR. THE AUTOMATIC BRAKING AND THE AIRBAGS DID NOT DEPLOY. THERE WAS OVER $18 000 DAMAGE TO THE TWO VEHICLES AND THE TESLA MODEL X IS NOT DRIVEABLE WITHOUT REPAIRS.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|

15

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

| MAKE | MODEL | YEAR |
|------|-------|------|
| TESLA | MODEL X | 2016 |

February 27, 2017 **NHTSA ID NUMBER: 10957394**

**Components: STRUCTURE, VEHICLE SPEED CONTROL**

**NHTSA ID Number:** 10957394

**Incident Date** February 27, 2017

**Consumer Location** MARIETTA, GA

**Vehicle Identification Number** 5YJXCAE24GF****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES 1**

**DEATHS 0**

TAKATA RECALL

I DROVE MY TESLA MODEL X 2016 TODAY TO WORK AND WHEN I WAS ABOUT TO PARK THE CAR IN THE PARKING LOT (AROUND 6 MILES PER HOUR MAY BE) IT SUDDENLY ACCELERATED AND HIT THE CONCRETE WALL AND BOUNCED BACK AROUND 8 FEET. SINCE IT WAS FOR PARKING I CAN SURELY SAY THAT I DID NOT ACCELERATE THE CAR. THE STEERING AIR BAGS AND KNEE AIR BAGS CAME OFF AND ALSO THE PASSENGER SIDE KNEE AIR BAGS CAME OFF AS WELL. I SEARCHED ONLINE AND THERE SEEMS TO BE A CLASS ACTION SUITE ON THIS ISSUE BUT TESLA IS NOT ACCEPTING IT AS THE GLITCH IN THEIR SOFTWARE OR SOME OTHER COMPONENT. I FELT LIKE THE ACCELERATOR GOT PRESSED THE WAY WHEN THE CAR WAS IN CRUISE MODE. UNLESS I WANTED TO HIT THE WALL INTENTIONALLY THERE WAS NO NEED FOR ME TO PRESS THE ACCELERATOR TO SPEED FROM ALMOST ZERO TO WHATEVER THE HIGH SPEED IT ATTAINED AT THE TIME OF HITTING THE WALL.

**1 Associated Product**

**Vehicle**

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| TESLA | MODEL X | 2016 |

### a.    Reports of Sudden Unintended Acceleration are 71 Times Higher Than Historical Rates for Other Vehicles

21.    Tesla sold approximately 18,240 Model X vehicles in the United States from September 29, 2015, through the end of 2016. The Model X having at least 13 reported (either to NHTSA or directly to Tesla) sudden unintended acceleration incidents in the first full year of production with only 18,240 vehicles on the road (most of which have been on the road significantly less than one year) results in a rate of 71 SUA events per 100,000 vehicles per year.

22.    In contrast, according to a study by NASA of unintended acceleration reports to the National Highway Traffic Administration from 2000 to 2010, from there was 1 SUA accident per 100,000 vehicles per year.  Accordingly, the Model X is reported to experience 71 times as many SUA events as the average number of reported SUA events for other manufacturers.

23.    Rather than correcting the defect through programmatic logic, Tesla's strategy in responding to SUA complaints has been to blame any report of SUA on driver error.  For example, Tesla was notified by the Model X owner of the first SUA incident registered in the NHTSA complaints database.  After performing an investigation, Tesla seized on a nearly identical conclusion that it reached in its investigation of Plaintiffs' incident, stating:

> "We analyzed the vehicle logs which confirm that this Model X was operating correctly under manual control and was never in Autopilot or cruise control at the time of the incident or in the minutes before. Data shows that the vehicle was traveling at 6 mph when the accelerator pedal was abruptly increased to 100%. Consistent with the driver's actions, the vehicle applied torque and accelerated as instructed. Safety is the top priority at Tesla and we engineer and build our cars with this foremost in

17

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1

2

mind. We are pleased that the driver is ok and ask our
customers to exercise safe behavior when using our vehicles."

3   **D.     Plaintiff Ji Chang Son's and Plaintiff K.M.S.'s SUA Event**

4           24.     On September 10, 2016, Plaintiff Ji Chang Son was returning to his Orange

5   County home in his Model X with his son, Plaintiff K.M.S.

6           25.     At approximately 8:00 p.m., Plaintiff Ji Chang Son slowed his vehicle to

7   approximately 6 miles per hour and made a left turn easing into his driveway the garage

8   after the door opened, just as he had done on countless prior occasions.

9           26.     Except that this time, as Plaintiff Ji Chang Son slowly pulled into his

10  driveway, the vehicle spontaneously began to accelerate at full power, jerking forward

11  and crashing through the interior wall of the garage, destroying several wooden support

12  beams in the wall and a steel sewer pipe, among other things, and coming to rest in

13  Plaintiffs' living room.  Plaintiffs were trapped inside the vehicle because the doors were

14  pinned shut by wood support beams and other debris.

15

16

17

18

19

20

21

22

23

24

25

26

27

28



THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

27.     Smoke began flooding the interior of the vehicle.  Plaintiff Ji Chang Son and Plaintiff K.M.S. feared that the Model X was about to explode and burst into flames and furiously sought other ways to escape the vehicle.

28.     Fortunately, Plaintiff K.M.S. managed to open a window and crawl out.  He ran to the other side of the Model X and struggled to force the window open on Plaintiff Ji Chang Son's side of the vehicle.  As the smoke continued to fill the Model X's interior and now the entire living room, Plaintiff K.M.S. courageously helped his father Plaintiff Ji Chang Son escape from the vehicle.

29.     Both Plaintiff Son and Plaintiff K.M.S. suffered lacerations to their legs in the collision, with residual scarring.

30.     Plaintiff Son immediately notified Tesla of the incident and that the vehicle had exhibit sudden unintended acceleration as he was pulling into his driveway.  Tesla responded by stating that the "vehicle responded correctly to driver-applied inputs" even though acknowledging that Mr. Son had made a left turn into his driveway at less than 5 miles per hour, and had not been pressing the accelerator pedal for the preceding 4 seconds, when the computer registered a 100% acceleration command the second before the vehicle collided with the back wall of his garage.

## K.     Defects in the Model X

31.     The Model X – designed, manufactured, sold, and/or distributed by Tesla – are defective in that they are vulnerable to incidents of sudden full power unintended acceleration.  Regardless of the many root causes that may create this overarching defect, an effective automated emergency braking and/or automated throttle control mechanism would serve as a fail-safe design feature to prevent and/or minimize the risk of injury, harm, or damage to Tesla owners, occupants, and the general public form SUA events.

32.     Tesla has been aware that SUA events are occurring at a markedly high rate in the Model S, and an even more alarmingly high rate in the Model X, but has not, as of yet, explained the root cause of this dramatic increase in SUA events.  This made it

19

critically important for Tesla to design and implement an adequate fail-safe system to prevent or mitigate the consequences of SUA.  Therefore, the Model S and the Model X are defective for their lack of an adequate fail safe system as a result of the following:

    a.  The inability of the Automated Emergency Braking system to be able to detect when full acceleration has not been commanded by the driver;

    b.  The Automated Emergency Braking system's identification of 100% accelerator pedal input as an indicator of positive driver control that automatically renders the Automated Emergency Braking system inoperative;

    c.  The lack of a proper fail-safe logic that will cut power and apply the brakes when the vehicle registers full power acceleration when there are fixed objects in the immediate path of the vehicle; and

    d.  The lack of a proper fault detection system that would recognize an SUA event beyond the maximum design tolerance and respond by shutting down the throttle.

33.    Finally, the faults and defects in Tesla's safety critical vehicle electronic systems described above show that Tesla has not properly tested or validated these systems individually or as a whole and, moreover, Tesla has failed to verify that all electronic vehicle systems capable of requesting torque are robust enough, and contain sufficient redundancies to prevent SUA events.

**L.    Tesla's Defamatory Statements Against Plaintiff Son**

34.    Compounding the physical and emotional injuries suffered by Plaintiff Son, who is a well-known South Korean movie star and celebrity, Tesla unleashed a pubic attack on Plaintiff Son after he filed the instant lawsuit, not only asserting that Plaintiff Son was the cause of the accident, but that Plaintiff Son attempted to use his celebrity status to threaten Tesla in an effort to achieve personal financial gain. Tesla stated in a press release that was widely disseminated in both the United States and South Korea:

> We take the safety of our customers very seriously and conducted a
> thorough investigation following Mr. Son's claims. The evidence, including

20

data from the car, conclusively shows that the crash was the result of Mr. Son pressing the accelerator pedal all the way to 100%. . . . Before filing his class action lawsuit against Tesla, ***Mr. Son had threatened to use his celebrity status in Korea to hurt Tesla unless we agreed to make a financial payment and acknowledge that the vehicle accelerated on its own***. However, the evidence clearly shows the vehicle was not at fault. Our policy is to stand by the evidence and not to give in to ultimatums.

(Fred Lambert, "Tesla is being sued by a S. Korean celebrity claiming his Model X accelerated on its own into his garage, logs show user mistake," Electrek (online, December 30, 2016) https://electrek.co/2016/12/30/tesla-sued-model-x-sudden-acceleration/)

35.    Plaintiff Son's reputation has been significantly harmed as a result of Tesla's spurious allegations.  As a result of Tesla's media play which is still being circulated on the internet, Plaintiff Son was portrayed as a greedy liar to the general public and has lost millions of dollar worth of business which he had prior to this incident.

36.    Plaintiff Son is informed and believes and thereon alleges that in August 2017, due to Tesla's media play about the subject incident, his reputation was greatly damaged.  A number of news media in America and South Korea had interviewed Tesla's representatives and reported that Tesla blamed Mr. Son's "horrible" driving for the cause of the incident, and described this lawsuit as "just a crass money play."

37.    In addition, in or about August 2017, a sales representative of Tesla's dealership in South Korea even made a statement to their customer that Mr. Son was paid by other car manufacturers to go after Tesla.  Because of Tesla's intentional media play, Mr. Son, whose career depends on his popularity and good reputation, has lost tremendous amount of business.

38.    Plaintiff Son is informed and believes and thereon alleges that Tesla made the foregoing statements with the specific intent to injure Plaintiff Son and without any reasonable basis for believing them to be true.

21

# IV

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA") (Cal. Civ. Code § 1750, *et seq.*)**

39.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

40.     Tesla is a "person" as that term is defined in California Civil Code § 1761(c).

41.     Plaintiffs are "consumers" as that term is defined in California Civil Code § 1761(d).

42.     Plaintiff Son previously filed an affidavit that shows venue in this District is proper, to the extent such an affidavit is required by California Civil Code § 1780(d).

43.     Tesla engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs that the Model S and Model X suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem).  These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(1) Representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have

(a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

22

44.     Tesla's unfair or deceptive acts or practices occurred repeatedly in Tesla's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

45.     Tesla knew that the Model X were defectively designed or manufactured, unsafe, and were not suitable for their intended use.

46.     Tesla knew that the Model X were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use of regulating power and vehicle speed based on driver commands.  Tesla nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

47.     Tesla owed Plaintiffs a duty to disclose the defective nature of Model X, including the dangerous risk of throttle control failure and the lack of adequate fail-safe mechanisms, because they:

    a.  Possessed exclusive knowledge of the defects rendering the Model X inherently more dangerous and unreliable than similar vehicles;

    b.  Intentionally concealed the hazardous situation with Model X vehicles through its deceptive marketing campaign designed to hide the life-threatening problems from Plaintiffs; and/or

    c.  Made incomplete representations about the safety and reliability of the Model X generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

48.     The Model X vehicles pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to incidents of SUA.

49.     Whether or not a vehicle (a) accelerates only when commanded to do so; (b) accelerates when it knows will result in the collision with a fixed object; and (c) does not activate the automatic emergency braking when it receives instructions to accelerate 100% into a fixed object are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.

50.     When Plaintiffs bought their Model X for personal, family, and household purposes, they reasonably expected the vehicle would (a) not accelerate unless commanded to do so by application of the accelerator pedal or other driver controlled means; (b) would not accelerate when it knows will result in the collision with a fixed object; and (c) would not deactivate the automatic emergency braking when it receives instructions to accelerate 100% into a fixed object.

51.      Tesla's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Defective Vehicles.

52.     As a result of its violations of the CLRA detailed above, Tesla caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs.  Plaintiffs owned a Model X that is defective and inherently unsafe.

53.     Plaintiffs risk irreparable injury as a result of Tesla's acts and omissions in violation of the CLRA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

54.     The facts concealed or not disclosed by Tesla to Plaintiffs are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Model X or pay a lesser price.  Had Plaintiffs known about the defective nature of the Model X, they would not have purchased the Model X or would have paid less for them.

55.     Plaintiffs' injuries were proximately caused by Tesla's fraudulent and deceptive business practices.

56.     Pursuant to the provisions of California Civil Code section 1782(a), Plaintiffs sent a notice letter to Tesla providing it with the opportunity to correct its business practices.  To Plaintiffs' knowledge, Tesla no action within the specified notice period.

57.     Pursuant to California Civil Code section 1780, Plaintiffs, on behalf of themselves, seek an order from this Court enjoining Tesla from continuing the methods,

24

1  acts and practices set forth above and a declaration that Tesla's conduct violates the
2  Consumers Legal Remedies Act, as well as actual and punitive damages and attorneys'
3  fees and costs.

4  ### SECOND CAUSE OF ACTION

5  **VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
6  **(Cal. Bus. & Prof. Code § 17200)**

7      58.    Plaintiffs incorporate by reference each preceding and succeeding paragraph
8  as though fully set forth at length herein.

9      59.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair
10  competition," including any "unlawful, unfair or fraudulent business act or practice" and
11  "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

12      60.    Tesla has violated the unlawful prong of section 17200 by its violations of
13  the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*., as set forth in Count I
14  by the acts and practices set forth in this Complaint.

15      61.    Tesla has violated the fraudulent prong of section 17200 because the
16  misrepresentations and omissions regarding the safety and reliability of its vehicles as set
17  forth in this Complaint were likely to deceive a reasonable consumer, and the information
18  would be material to a reasonable consumer.

19      62.    Tesla has violated the unfair prong of section 17200 because the acts and
20  practices set forth in the Complaint, including the manufacture and sale of vehicles with a
21  sudden acceleration defect that lack effective fail-safe mechanism, and Tesla's failure to
22  adequately investigate, disclose and remedy, offend established public policy, and
23  because the harm they cause to consumers greatly outweighs any benefits associated with
24  those practices.

25      63.    Tesla's conduct has also impaired competition within the automotive
26  vehicles market and has prevented Plaintiff from making fully informed decisions about
27  whether to purchase or lease Defective Vehicles and/or the price to be paid to purchase or
28  lease Defective Vehicles.

64.    Plaintiffs have suffered an injury in fact, including the loss of money or property, as a result of Tesla's unfair, unlawful and/or deceptive practices.  As set forth in the allegations concerning Plaintiffs, in purchasing or leasing their Tesla vehicle, Plaintiffs relied on the misrepresentations and/or omissions of Tesla with respect of the safety and reliability of the vehicles.  Tesla's representations turned out not to be true because the vehicles can unexpectedly and dangerously accelerate out of the drivers' control.  Had Plaintiffs known this, they would not have purchased or leased their Tesla vehicles and/or paid as much for them.

65.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Tesla's business.  Tesla's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

66.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Tesla from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs any money Tesla acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in California Business & Professions Code section 17203 and California Civil Code section 3345; and for such other relief set forth below.

## THIRD CAUSE OF ACTION
## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

67.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

68.    California Business & Professions Code section 17500 states:  "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . .

1   or in any other manner or means whatever, including over the Internet, any statement . . .

2   which is untrue or misleading, and which is known, or which by the exercise of

3   reasonable care should be known, to be untrue or misleading."

4        69.    Tesla caused to be made or disseminated throughout California and the

5   United States, through advertising, marketing and other publications, statements that

6   were untrue or misleading, and which were known, or which by the exercise of

7   reasonable care should have been known to Tesla, to be untrue and misleading to

8   consumers, including Plaintiffs.

9        70.    Tesla has violated section 17500 because the misrepresentations and

10   omissions regarding the safety, reliability, and functionality of its Model X vehicles as set

11   forth in this Complaint were material and likely to deceive a reasonable consumer.

12       71.    Plaintiffs have suffered an injury in fact, including the loss of money or

13   property, as a result of Tesla's unfair, unlawful, and/or deceptive practices.  In purchasing

14   and/or leasing their Tesla vehicles, Plaintiffs relied on the misrepresentations and/or

15   omissions of Tesla with respect to the safety and reliability of such vehicles.  Tesla's

16   representations turned out not to be true because the vehicles can unexpectedly and

17   dangerously accelerate out of the driver's control; the vehicle implements a full

18   acceleration instruction into a fixed object; and fails to use automatic emergency braking.

19   Had Plaintiffs known this, they would not have purchased their Vehicle and/or paid as

20   much for it.  Accordingly, Plaintiffs overpaid for their Vehicle and did not receive the

21   benefit of their bargain.

22       72.    All of the wrongful conduct alleged herein occurred, and continues to occur,

23   in the conduct of Tesla's business.  Tesla's wrongful conduct is part of a pattern or

24   generalized course of conduct that is still perpetuated and repeated, both in the state of

25   California and nationwide.

26       73.    Plaintiffs request that this Court enter such orders or judgments as may be

27   necessary to enjoin Tesla from continuing their unfair, unlawful, and/or deceptive

28   practices and to restore to Plaintiffs any money Tesla acquired by unfair competition,

27

1 including restitution and/or restitutionary disgorgement, and for such other relief set forth
2 below.

### FOURTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY

74.    Plaintiffs incorporate by reference each preceding and succeeding paragraph
as though fully set forth at length herein.

75.    Tesla was at all relevant times the manufacturer, distributor, warrantor,
and/or seller of the Model X.  Tesla knew or had reason to know of the specific use for
which the Model X vehicles were purchased.

76.    Tesla provided Plaintiffs with an implied warranty that the Model X and any
parts thereof are merchantable and fit for the ordinary purposes for which they were sold.
However, the Model X vehicles are not fit for their ordinary purpose of providing
reasonably reliable and safe transportation at the time of sale or thereafter because, *inter
alia*, there are defects in the vehicle control systems that permit sudden unintended
acceleration to occur; the vehicles do not have an adequate fail-safe to protect against
such SUA events; and the accelerator control system was not adequately tested to prevent
SUA events.

77.    Therefore, the Model X vehicles are not fit for their particular purpose of
providing safe and reliable transportation.

78.    Tesla impliedly warranted that the Model X vehicles were of merchantable
quality and fit for such use.  This implied warranty included, among other things: (i) a
warranty that the Model X vehicles manufactured, supplied, distributed, and/or sold by
Tesla were safe and reliable for providing transportation and would not experience
premature and catastrophic failure; and (ii) a warranty that the Model X would be fit for
its intended use while being operated.

79.    Contrary to the applicable implied warranties, the Model X vehicles at the
time of sale and thereafter were not fit for their ordinary and intended purpose of

28

providing Plaintiffs with reliable, durable, and safe transportation.  Instead, the Model X suffer from a defective design(s) and/or manufacturing defect(s).

80.     Tesla's actions, as complained of herein, breached the implied warranty that the Vehicle was of merchantable quality and fit for such use.

81.     After Plaintiffs received the injuries complained of herein, notice was given by Plaintiffs to Tesla, by direct communication with Tesla as well as by the filing of this lawsuit in the time and in the manner and in the form prescribed by law, of the breach of said implied warranty.

82.     As a legal and proximate result of the breach of said implied warranty, Plaintiffs sustained the damages herein set forth.

83.     Plaintiffs are, therefore, entitled to damages in an amount to be proven at the time of trial.

## FIFTH CAUSE OF ACTION

## BREACH OF WRITTEN WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. § 2301, *et seq.*)

84.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

85.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

86.     Defendant Tesla is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

87.     The Model X vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

88.     Tesla's 5 year/60,000 miles Basic Warranty and 10 year/100,000 miles Powertrain Warranty are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

29

89.     Furthermore, Plaintiffs were exposed to Tesla's marketing statements regarding the safety of the Vehicle and the collision avoidance systems with which they were equipped, as alleged in paragraphs 13, 15, 16 and 17, herein.

90.     Tesla breached these warranties as described in more detail above, but generally by not repairing or adjusting the Defective Vehicle's materials and workmanship defects; providing Defective Vehicle not in merchantable condition and which present an unreasonable risk of sudden unintended acceleration and not fit for the ordinary purpose for which vehicles are used; providing Vehicles that were not fully operational, safe, or reliable; and not curing defects and nonconformities once they were identified.

91.     Plaintiffs have had sufficient direct dealings with either the Tesla or its agents to establish privity of contract.  However, privity is also not required because Plaintiffs' Model X vehicle is dangerous instrumentalities due to the aforementioned defects and nonconformities.

92.     Plaintiffs relied on the existence and length of the express warranties in deciding whether to purchase the Vehicle.

93.     Defendant Tesla's breach of the express warranties has deprived Plaintiffs benefit of their bargain.

94.     Tesla has been afforded a reasonable opportunity to cure its breach of the written warranties and/or Plaintiffs were not required to do so because affording Tesla a reasonable opportunity to cure its breach of written warranties would have been futile.

95.     As a direct and proximate cause of Tesla's breach of the written warranties, Plaintiffs sustained damages and other losses in an amount to be determined at trial. Defendant Tesla's conduct damaged Plaintiffs, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1

2

**SIXTH CAUSE OF ACTION**

**STRICT PRODUCT LIABILITY**

3       96.     Plaintiffs incorporate by reference each preceding and succeeding paragraph

4    as though fully set forth at length herein.

5       97.     Plaintiffs Son and K.M.S., individually,  are informed and believe and based

6    thereon allege that Tesla designed, manufactured, researched, tested, assembled,

7    installed, marketed, advertised, distributed, and sold a certain 2016 Tesla Model X,

8    bearing Vehicle Identification Number 5YJXCBE27GF009026 (hereinafter referred to as

9    the "subject vehicle").

10       98.     At all times relevant hereto, Tesla knew that the subject vehicle would be

11    operated and inhabited by consumers without inspection for defects.

12       99.     At the time of the collision described above, the subject vehicle was being

13    used in a manner and fashion that was foreseeable by Tesla, and in a manner in which it

14    was intended to be used.

15       100.   Tesla designed, engineered, developed, manufactured, fabricated,

16    assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired,

17    retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed,

18    supplied, distributed, wholesaled, and sold the subject vehicle and its component parts

19    and constituents, which was intended by Tesla to be used for the purpose of use as a

20    passenger vehicle, and other related activities.

21       101.   The subject vehicle was unsafe for its intended use by reason of defects in its

22    manufacture, design, testing, components and constituents, so that it would not safely

23    serve its purpose, but would instead expose the users of said product, and others, to

24    serious injuries because of the failure of Tesla to properly guard and protect the users of

25    the subject vehicle, and others, from the defective design of said product.

26       102.   Tesla designed the subject vehicle defectively, causing it to fail to perform

27    as safely as an ordinary consumer would expect when used in an intended or reasonably

28    foreseeable manner.

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

103.   The risks inherent in the design of the subject vehicle outweigh significantly any benefits of such design.

104.   Plaintiffs were not aware of the aforementioned defects.

105.   As a legal and proximate result of the aforementioned defects of the subject vehicle, Plaintiffs Son and K.M.S. sustained the injuries and damages set forth herein.

106.   Plaintiffs Son and K.M.S. are, therefore, entitled to damages in an amount to be proven at the time of trial.

**SEVENTH CAUSE OF ACTION**

**NEGLIGENCE**

107.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

108.   At all times herein mentioned, Tesla designed, manufactured, assembled, analyzed, recommended, merchandised, advertised, promoted, distributed, supplied, and sold to distributors and retailers for sale, the subject vehicle and/or its component parts.

109.   Tesla owed Plaintiffs Son and K.M.S. a duty to exercise reasonable care in the design, testing, manufacture, assembly, sale, distribution and servicing of the subject vehicle, including a duty to ensure that the subject vehicle did not cause Plaintiffs Son and K.M.S., other users, bystanders, or the public, unnecessary injuries or deaths.

110.   Tesla knew or should have known that the subject vehicle is defectively designed and inherently dangerous and has a propensity to suddenly accelerate, lose control, and cause injuries.

111.   Tesla knew or should have known that the subject vehicle was defectively designed and/or manufactured and was therefore prone to failure under normal driving conditions, potentially causing injuries and/or deaths.

112.   Tesla failed to exercise ordinary care and breached their duties by, among other things:

a.   Failure to use due care in the manufacture, distribution, design, sale, testing, and servicing of the subject vehicle and its component parts in order to avoid the aforementioned risks to individuals;

b.   Failure to provide adequate warning of the sudden acceleration problem and its propensity to cause and/or contribute to an accident;

c.   Failure to incorporate within the vehicle and its design reasonable safeguards and protections against sudden acceleration and the consequences thereof;

d.   Failure to make timely correction to the design of the subject vehicle to correct the sudden acceleration problems;

e.   Failure to adequately identify and mitigate the hazards associated with sudden unintended acceleration in accordance with good engineering practices and other ways; and,

f.   Were otherwise careless or negligent.

113.   The aforementioned negligent acts and omissions of Tesla were the direct and proximate cause of Plaintiffs' damages.

114.   Plaintiffs Son and K.M.S. are, therefore, entitled to damages in an amount to be proven at trial, together with interest thereon and costs.

## EIGHTH CAUSE OF ACTION

## FAILURE TO WARN

115.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

116.   Tesla knew that the subject vehicle, and its component parts, would be purchased and used without inspection for defects in the design of the vehicle.

117.   The subject vehicle was defective when it left the Tesla's control.

118.   Tesla knew or should have known of the substantial dangers involved in the reasonably foreseeable use of these vehicles, whose defective design, manufacturing, and

33

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1  lack of sufficient warnings caused them to have an unreasonably dangerous propensity to

2  suffer from sudden unintended acceleration and thereby cause injuries.

3      119.   Tesla failed to adequately warn of the substantial dangers known or

4  knowable at the time of the defective vehicles' design, manufacture, and distribution.

5      120.   Tesla failed to provide adequate warnings, instructions, guidelines or

6  admonitions to members of the consuming public, including Plaintiffs Son and K.M.S.,

7  of the defects, which Tesla knew, or in the exercise of reasonable care should have

8  known, to have existed in the subject vehicle, and its component parts.

9      121.   Tesla knew that these substantial dangers are not readily recognizable to an

10  ordinary consumer and that consumers would purchase and use these products without

11  inspection.

12      122.   At the time of Plaintiffs Son's and K.M.S.'s injuries, the subject vehicle was

13  being used in the manner intended by Tesla, and in a manner that was reasonably

14  foreseeable by Tesla as involving substantial danger that was not readily apparent to its

15  users.

16      123.   Plaintiffs Son's and K.M.S.'s damages were the legal and proximate result

17  of the actions and inactions of Tesla, who owed a duty to Plaintiffs in designing,

18  manufacturing, warning about, and distributing the subject vehicle.

19                      **<u>NINTH CAUSE OF ACTION</u>**

20                          **SLANDER PER SE**

21      124.   Plaintiffs incorporate by reference each preceding and succeeding paragraph

22  as though fully set forth at length herein.

23      125.   In or about August 2017, Tesla made the defamatory statements to their

24  customers regarding Plaintiff Son and his character that Mr. Son was paid by other car

25  manufacturers to go after Tesla, and described this lawsuit as "just a crass money play" of

26  Mr. Son.

27      126.   The statements made by Tesla had the tendency to injure Plaintiff Son in his

28  occupation because the statements attack Plaintiff Son's veracity as an esteemed

businessman in the U.S. as well as a well-known celebrity in the Republic of South Korea.  The statements made by Tesla further indicate that Plaintiff Son had created the impression that he was unethically doing business.

127.   Plaintiff is informed and believes and thereon alleges that Tesla's customers in the Republic of Korea and general public understood that the statements were about Plaintiff Son as the statements were made of, concerning, and mentioned Plaintiff Son expressly.

128.   All statements are entirely false as they pertain to Plaintiff, and are defamatory, slanderous on their face, and expose Plaintiff to hatred, contempt, ridicule, and obloquy because Plaintiff did not engage in unethical business, and did not threat Tesla for anything.  These statements were understood by those who heard them in a way that defamed the reputation of Plaintiff Son as a well-respected businessman and celebrity, in that the statements connote Plaintiff's efforts to file a frivolous lawsuit to get money.

129.   Plaintiff is informed and believes and thereon alleges that these statements were made to Tesla's customers in the Republic of Korea.

130.   Upon information and belief, Tesla failed to use reasonable care to determine the truth or falsity of the statements.  Upon information and belief, the wrongful conduct of Tesla was a substantial factor in causing Plaintiff harm, including but not limited to harm to Plaintiff's business, trade, profession, and/or occupation, expenses Plaintiff has to pay as a result of the defamatory statements, and harm to Plaintiff's reputation, in addition to that assumed by law.

131.   As a proximate result of the above-described statements, Plaintiff has suffered loss to his reputation, shame, mortification, and hurt feelings, all to his general damages.

132.   As a further proximate result of the above-described statements, Plaintiff has suffered loss of business, in an amount to be proven at trial.

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

133.   Plaintiff is informed and believes and thereon alleges that, by engaging the above conduct, Tesla acted with malice, oppression, and/or fraud, entitling Plaintiff to exemplary and punitive damages.

134.   Money damages will not make Plaintiff whole for the injury occasioned by these continuing statements.  Unless enjoined by this Court, these false and damaging statements will continue, and Plaintiff will face a serious risk of irreparable harm to his reputation and business.  Despite Tesla's publications, this is a purely private matter, of no public concern, and Tesla's statements should be enjoined.

## TENTH CAUSE OF ACTION
## DEFAMATION

135.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

136.   Tesla made the defamatory statements to the various media outlets regarding Plaintiff and his character.  For example, Tesla unleashed a pubic attack on Plaintiff Son after he filed the instant lawsuit, not only asserting that Plaintiff Son was the cause of the accident, but that Plaintiff Son attempted to use his celebrity status to threaten Tesla in an effort to achieve personal financial gain. Tesla stated in a press release that was widely disseminated in both the United States and South Korea:

> We take the safety of our customers very seriously and conducted a thorough investigation following Mr. Son's claims. The evidence, including data from the car, conclusively shows that the crash was the result of Mr. Son pressing the accelerator pedal all the way to 100%. . . . Before filing his class action lawsuit against Tesla, ***Mr. Son had threatened to use his celebrity status in Korea to hurt Tesla unless we agreed to make a financial payment and acknowledge that the vehicle accelerated on its own***. However, the evidence clearly shows the vehicle was not at fault. Our policy is to stand by the evidence and not to give in to ultimatums.

(Fred Lambert, "Tesla is being sued by a S. Korean celebrity claiming his Model X accelerated on its own into his garage, logs show user mistake," Electrek (online,

December 30, 2016) https://electrek.co/2016/12/30/tesla-sued-model-x-sudden-acceleration/)

137.    Plaintiff Son's reputation has been significantly harmed as a result of Tesla's spurious allegations.  As a result of Tesla's media play which is still being circulated on the internet, Plaintiff Son was portrayed as a greedy liar to the general public and has lost millions of dollar worth of business which he had prior to this incident.

138.    Plaintiff is informed and believes and thereon alleges that Plaintiff has incurred costs for expert services, attorneys' fees, and other expenses relating to Tesla's acts and omissions alleged herein, which costs continue to accrue.  Such publications were outrageous, negligent, reckless, intentional and maliciously published and republished by various media outlets, and each of them.  Plaintiff is informed and believes that the negligent, reckless and intentional publications by Tesla, were and continue to be, foreseeably published and republished by Tesla, their agents and employees and recipients in the community.

139.    Plaintiff is informed and believes and thereon alleges that Tesla did negligently, recklessly, and intentionally cause excessive and unsolicited publication of defamation, of and concerning Plaintiff Son, to third persons, who had no need or desire to know.

140.    The defamatory publications consisted of oral and written, knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal business and professional reputation. These publications included the following false and defamatory statements, in violation of Civil Code § 45, and each of them, expressly and impliedly asserted: that Plaintiff was a greedy liar and that Plaintiff uses the instant action for money.

141.    Plaintiff is informed and believes and fears that these false and defamatory per se statements will continue to be published by Tesla, and will be foreseeably republished by their recipients, all to the ongoing harm and injury to Plaintiff's business, professional and personal reputation. Plaintiff also seeks redress in this action for all

foreseeable republications, including his own self-compelled self-publication of these defamatory statements.

142.   The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced third person recipient's and other members of the community who are known to Tesla, and each of the, but unknown to Plaintiff at this time.

143.   None of Tesla's defamatory publications against Plaintiff Son referenced above are true.

144.   The above defamatory statements were understood as assertions of facts, and not as opinion.  Plaintiff is informed and believes this defamation will continue to be negligently, recklessly and intentionally published and foreseeably republished by Tesla, , foreseeably republished by recipients of Tesla's publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

145.   Each of these false defamatory per se publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Tesla, and each of them, to cause further damage to Plaintiff's professional and personal reputation.

146.   Each of these publications by Tesla, were made with knowledge no investigation supported the unsubstantiated and obviously false statements. Tesla published these statements knowing them to be false, unsubstantiated by any reasonable investigation and the product of hostile witnesses.

147.   These acts of publication were known by Tesla, to be negligent to such a degree as to be reckless. In fact, not only did Tesla have no reasonable basis to believe these statements, but they also had no belief in the truth of these statements, and in fact knew the statements to be false.

148.   As a direct and proximate result of the publication and republication of these defamatory statements by Tesla, Plaintiff Son has suffered injury to his personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, and employability, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

149.   Tesla committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights. All actions of Tesla and each of their agents and employees herein alleged were known, ratified and approved by Tesla. Plaintiff thus is entitled to recover punitive and exemplary damages from Tesla for these wanton, obnoxious, and despicable acts in an amount based on the wealth and ability to pay according to proof at the time of trial.

150.   By engaging in such conduct, Tesla intended to cause, did cause and were in conscious disregard of the probability of causing Plaintiff severe emotional distress of the type alleged above.

151.   As a direct, proximate and consequential result of Tesla's wrongful conduct, Plaintiff has suffered and continues to suffer great and severe emotional distress, embarrassment, anxiety and humiliation all to his great monetary damage the total amount of which is not yet known but will be established according to proof, plus interest thereon at the legal rate.

152.   Money damages will not make Plaintiff whole for the injury occasioned by these continuing statements.  Unless enjoined by this Court, these false and damaging statements will continue, and Plaintiff will face a serious risk of irreparable harm to his reputation and business.  Despite Tesla's publications, this is a purely private matter, of no public concern, and Tesla's statements should be enjoined.

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Ji Chang Son and K.M.S., a minor by and through his *Guardian ad Litem* Yun Soo Oh pray for judgment against Defendant Tesla, Inc. as follows:

1.     For actual, general, special, incidental, statutory, and consequential damages in an amount to be proven at trial;

2.     For pre-judgement interest at the highest legal rate from the date(s) of breach through date of judgment herein in a sum to be determined according to proof;

3.     For costs of suit incurred herein according to proof;

4.     For reasonable attorneys' fees;

5.     For exemplary and punitive damages, in such sum as this court shall determine to be just and proper;

6.     For appropriate injunctive and/or declaratory relief, including, without limitation, an order that prohibits Tesla from publishing the foregoing defamatory statements; and

7.     For such other and further relief as the Court may deem proper.

Respectfully submitted,

Dated:  January 7, 2019          LAW OFFICES OF YOHAN LEE

By:  /s/ *Jake Y. Jung*
   Jake Y. Jung

Attorneys for Plaintiff
JI CHANG SON and
Plaintiff K.M.S., a minor by and through his
*Guardian ad Litem* YUN SOO OH.

40

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

1

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.


Dated:  January 7, 2019                    LAW OFFICES OF YOHAN LEE


                                           By:  /s/ *Jake Y. Jung*
                                               Jake Y. Jung

                                               Attorneys for Plaintiff
                                               JI CHANG SON and
                                               Plaintiff K.M.S., a minor by and
                                               through his
                                               *Guardian ad Litem* YUN SOO OH.

---

41

THIRD AMENDED COMPLAINT
Case No.:  8:16-cv-02282-JVS-KES

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document to be served by email delivery on the party listed below:

Attorneys for Defendant
Tesla, Inc.

PENELOPE A. PREOVOLOS (CA SBN 87607)
PPreovolos@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

BRIAN L. HAZEN (CA SBN 309212)
BHazen@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, California 92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125

SEAN GATES (CA SBN 186247)
SGates@charislex.com
CHARIS LEX, P.C.
16 N. Marengo Avenue, Suite 300
Pasadena, California 91101
Telephone: 626.508.1717

Executed on January 7, 2019, at Buena Park, California.

Dated: January 7, 2019         By: */s/Jake Y. Jung*
                               _____
                               Jake Y. Jung